Received & Filed 10/29/2025 12:20 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Mercedes C. Reyes
Envelope# - 107428568

CAUSE NO. _____

25-003074-CV-85

| | | |
|---|---|---|
| **SATTERFIELD & PONTIKES CONSTRUCTION, INC.,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **BRAZOS COUNTY, TEXAS** |
| **RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, VANTAGE BANK TEXAS, and SAMUEL TENORIO, individually,** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

---

**PLAINTIFF'S ORIGINAL PETITION AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND DECLARATORY RELIEF AND WRITTEN DISCOVERY**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Satterfield & Pontikes Construction, Inc. ("S&P" or "Plaintiff"), files this Original Petition and Verified Application for Temporary Restraining Order and Temporary Injunction against Defendants RELLIS Campus Data and Research Center, LLC ("RELLIS" or "Developer"), Vantage Bank Texas ("Vantage" or "Lender"), and Samuel Tenorio ("Tenorio"), individually (collectively "Defendants"), and would respectfully show the Court as follows.

## I.  DISCOVERY CONTROL PLAN AND LEVEL

Plaintiff intends that discovery be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190.4 and will submit a proposed Scheduling Order.

## II.  RULE 47 STATEMENT

Plaintiff seeks monetary relief over $1,000,000 and non-monetary relief. The maximum amount sought by Plaintiff is $10,000,000 as of the date of this filing and is subject to further amendment.

### III.   PARTIES

Plaintiff Satterfield & Pontikes Construction, Inc. is a Texas corporation with its principal place of business in Harris County, Texas and may be served through undersigned counsel.

Defendant RELLIS Campus Data and Research Center, LLC is a Texas limited liability company that may be served by serving its registered agent Registered Agents Inc., 5900 Balcones Dr., Suite 100, Austin, Texas 78731, or wherever it may be found.

Defendant Vantage Bank Texas is a Texas state banking association that may be served by serving its registered agent, VBT Services Corporation, 601 NW Loop 410, Suite 100, San Antonio, Texas 78216, or wherever it may be found.

Defendant Samuel Tenorio is an individual resident of Texas who served as Chief Executive Officer of RELLIS at all relevant times and exercised control or direction over construction trust funds.  He may be served at 5250 McCormick Mountain Dr., Austin, Texas 78734, or wherever he may be found.

### IV.   JURISDICTION AND VENUE

This Court has subject-matter jurisdiction because the amount in controversy exceeds the jurisdictional minimum of the district court and Plaintiff seeks injunctive and declaratory relief concerning real property situated in Brazos County, Texas.  Jurisdiction over Defendants is also proper in that they are residents of the state of Texas.  Venue is mandatory and proper in Brazos County pursuant to Texas Civil Practice and Remedies Code § 15.011 because this action seeks to enjoin a foreclosure sale under a deed of trust and affects an interest in real property located in Brazos County, Texas, commonly known as the RELLIS Data and Research Center project in College Station, Texas (the "Property").  Venue is also proper under § 15.002 because a substantial part of the events giving rise to the claims occurred in Brazos County and the Property is situated here.

## V.   FACTUAL BACKGROUND

1.      On or about June 7, 2023, S&P and RELLIS entered into a construction agreement using AIA Document A133–2019 with incorporated A201–2017 General Conditions (the "Contract"), under which S&P agreed to furnish labor and materials to construct the RELLIS Data and Research Center (the "Project") located in Brazos County, Texas, for the benefit of RELLIS.[1]

2.      The Project was to be financed in material part by a construction loan from Vantage to RELLIS.  On or about October 31, 2023, RELLIS and Vantage closed a construction loan in the approximate amount of $16.56 million, later increased by $1 million,  (the "Loan").  In September 2023, in response to S&P's request for proof of funds, Vantage provided a letter representing, among other things, that the equity requirement had been satisfied, that remaining equity would be funded from cash balances, and that cash equity would be used to advance construction costs prior to loan draws, after which loan funds would be disbursed accordingly.[2] It is important to note, Vantage's loan schedule of values was created from S&P's construction cost estimate. Vantage was fully aware the entirety of the loan proceeds were allocated to S&P's construction costs and that S&P was relying on those funds to pay for the construction of the Project.

3.      RELLIS subsequently issued multiple Guaranteed Maximum Price ("GMP") amendments and S&P commenced work.  S&P timely submitted monthly payment applications that were initially paid; however, payments ceased as of March 2025, leaving significant sums past due and owing despite S&P's continued performance and protective measures to safeguard and preserve the partially completed improvements.

---

[1] Ex. "A"
[2] Ex. "B"

4.     After S&P issued a notice of intent to suspend work under Texas Property Code § 28.009 and subsequently suspended work due to nonpayment,[3] S&P obtained and reviewed RELLIS's draw request materials and discovered that shortly after closing the Loan, RELLIS – without notice to S&P and contrary to the Contract's requirement not to materially vary financial arrangements without notice – reallocated the Loan's schedule of values and drew substantial funds for non-project or non-construction purposes up front, leaving a deficit for actual construction costs.  The reallocation increased the "Contingency Hard Costs" line from the original $1,992,000 to approximately $2,925,795.31 and reflected advances of $2,175,795.31 in Draws 1-27 and $750,000 thru Draw 35, creating a corresponding $2,925,795.31 shortfall in loan funds available for construction.[4]

5.     The revised draw materials also added significant new scope items – including leasing commissions ($420,000), administration ($170,000), network design ($2,158,490.50), and network hardware ($653,528.85) – that were not included in the original contract documents or original loan documents.  The revised draws further showed advances for items that could not have been on site at the time, including "Physical Security" ($722,644.50) and "Fiber" ($1,000,000.00), when the Project remained in early earthwork with no vertical construction in place.  In short, Defendants were short funding construction in violation of material financial statements made to S&P.

6.     The Draw Request Form removed the $1,000,000 "2nd lien" SOV line item, yet the Source of Funds Summary shows $1,000,000 advanced in Draws 42, 43, 45, and 46.  At that point, all loan funds were expended.  These funds were earmarked for S&P's construction costs, as

---

[3] Ex. "C"
[4] Ex. "D"

reflected in contractor subordination and consent documents provided to Vantage in connection with the Loan, and at Vantage's request.

7.    Notwithstanding the funding depletion and shortfall, RELLIS executed further GMP amendments, committing itself to tens of millions of dollars in additional construction costs while knowing it lacked the means or intent to pay S&P.

8.    S&P has properly perfected its constitutional and statutory mechanic's and materialman's lien rights by timely filing and serving its lien affidavits against the Property and related leasehold/leasehold improvements, including all fixtures and appurtenances.[5]   S&P seeks declaratory relief concerning the validity, extent, and priority of its lien rights in competition with Vantage's deed of trust.

9.    Vantage has noticed a nonjudicial foreclosure sale of the Property under its deed of trust for November 4, 2025 at the Brazos County Courthouse (the "Foreclosure Sale").[6]  If the Foreclosure Sale proceeds, S&P's lien rights will be impaired or extinguished, the status quo will be irreparably altered, and S&P will suffer harm that cannot be adequately compensated by money damages, including loss of lien priority claims, clouding of title, impairment of the security for lien foreclosure, and interference with the arbitral forum designated in the Contract for resolution of the merits, and Vantage should not benefit when it knew it participated in depleting S&P's funding.

10.    Samuel Tenorio, as Chief Executive Officer of RELLIS, exercised control or direction over construction trust funds, including draw requests and reallocations, and participated in or directed the misapplication of trust funds by diverting trust funds to non-project or non-construction purposes while S&P and its subcontractors and suppliers remained unpaid.

---

[5] Ex. "E"
[6] Ex. "F"

11.     Based upon information and belief, S&P has also become aware that Tenorio previously banked at Texas Capital Bank where his account was serviced by Senior Vice President, Cody Cannon. In 2022, Tenorio moved his business to Vantage where his account was serviced by Executive Vice President, Cody Cannon.

12.     RELLIS and Tenorio could not have accomplished this scheme without the cooperation of Vantage. Based upon information and belief, Vantage (and specifically Cody Cannon) was well aware of, if not complicit in, Tenorio's conduct and misapplication in the construction funds.

13.     S&P has commenced or is concurrently commencing arbitration against RELLIS pursuant to the Contract.  Vantage is not a party to the Contract's arbitration clause; therefore, S&P seeks provisional and final judicial relief against Vantage, along with provisional relief against RELLIS and Samuel Tenorio, to prevent further misapplication of trust funds and to preserve the status quo pending adjudication.

## VI.   CAUSES OF ACTION

### A.     Texas Construction Trust Fund Act – Misapplication of Trust Funds (Tex. Prop. Code Ch. 162) (Against Tenario, individually)

1.     S&P incorporates the foregoing factual allegations.

2.     Loan proceeds and owner funds disbursed to or for RELLIS for the improvement of the Property are "trust funds" under Chapter 162.  RELLIS and its officers, directors, managers, agents, or employees who controlled or directed the use of trust funds – including Samuel Tenorio – are statutory trustees.  Defendant misapplied trust funds by diverting draws and other trust funds to non-project or non-construction purposes and by failing to pay S&P and its subcontractors and suppliers for labor and materials furnished.  S&P, as a beneficiary, seeks actual damages, exemplary

damages for misapplication with intent to defraud, attorneys' fees, and equitable relief, including tracing and constructive trust over diverted funds and any assets acquired with those funds.

**B.      Fraud by Nondisclosure/Fraudulent Inducement (Against Vantage)**

1. S&P incorporates the foregoing factual allegations.

2. Vantage had a duty to disclose material facts concerning its use and reallocation of the Loan schedule of values and its intent and ability to pay S&P, particularly after partially disclosing financing representations and soliciting additional GMP amendments and continued performance. Vantage concealed these facts to induce S&P's continued performance and agreement to additional GMP amendments. S&P relied to its detriment and suffered damages.  Vantage deliberately or negligently remained silent and did not disclose the information to S&P when it had a duty to speak.  By deliberately or negligently remaining silent, Vantage intended for S&P to refrain from acting to protect its interests without this information.   S&P seeks economic and exemplary damages, and/or rescission of the subordination agreement for failure to pay S&P in accordance with the construction contract as agreed therein, and failure of consideration by Vantage due to non-payment.

**C.      Unjust Enrichment/Money Had and Received; Constructive Trust (Against Vantage)**

1. S&P incorporates the foregoing factual allegations.

2. In the alternative, Vantage has been unjustly enriched by retaining benefits derived from S&P's labor and materials and by misapplying funds intended for the Project.  Vantage wrongfully secured benefits which it would be unconscionable to retain.  Vantage accepted, used, and enjoyed the benefit of S&P's payments. Equity requires restitution and the imposition of a constructive trust over identifiable proceeds.

**D.      Negligent Misrepresentation (Against Vantage)**

1. S&P incorporates the foregoing factual allegations.

2.      In the course of its business, Vantage supplied information to S&P to induce reliance regarding the availability and sequencing of equity and loan funds to pay construction costs.  Vantage failed to exercise reasonable care or competence in obtaining or communicating this information.  S&P justifiably relied and suffered pecuniary loss proximately caused by the misrepresentations.

**E.      Knowing Participation in Breach of Fiduciary Duty and Aiding and Abetting Misapplication (Against Vantage)**

1.      S&P incorporates the foregoing factual allegations.

2.      RELLIS (and Samuel Tenorio) owed fiduciary duties as statutory trustees of construction trust funds. Vantage knew or, through its direct dealings, certifications, and control of draw disbursements, became aware of misapplication and, nonetheless substantially assisted or enabled continued misapplication, including by approving discretionary draws for non-project purposes while S&P remained unpaid.  Vantage knowingly participated in breaches of fiduciary duty and/or aided and abetted misapplication of trust funds.  S&P seeks damages and equitable relief as detailed below.

3.      As a result of Vantage's false and inequitable conduct, Vantage conferred an unfair advantage to itself and, correspondingly, injured S&P by elevating itself into a superior lien position to that of S&P. As a result, S&P seeks to have Vantage's deed of trust lien equitably subordinated to S&P's lien against the Property.

**F.      Tortious Interference with Contract and Lien Rights (Against Vantage)**

1.      S&P incorporates the foregoing factual allegations.

2.      Vantage's actions and directives related to the disbursement and conditioning of construction funds wrongfully interfered with S&P's Contract and statutory lien rights.  S&P seeks damages and equitable relief proximately caused by such interference.

**G.      Civil Conspiracy (Against Samuel Tenorio and Vantage)**

1.      S&P incorporates the foregoing factual allegations.

2.      Defendants combined and conspired to accomplish the unlawful misapplication of construction trust funds and to wrongfully interfere with S&P's contractual and statutory lien rights through coordinated reallocation of the Loan schedule of values, diversion of soft-cost and non-project items, and draw approvals inconsistent with the original budget and Project needs. One or more overt acts were committed in furtherance of the conspiracy, proximately causing damages to S&P. Each conspirator is jointly and severally liable for all damages caused by the conspiracy.

**H.      Declaratory Judgment (Against All Defendants)**

1.      S&P incorporates the foregoing factual allegations.

2.      An actual controversy exists regarding: (a) S&P's lien validity, extent, and priority relative to Vantage's deed of trust; (b) the status and proper application of trust funds; and (c) S&P's rights to undisbursed loan proceeds and/or segregation of funds pending adjudication. S&P seeks declarations under the Texas Uniform Declaratory Judgments Act, including costs and attorneys' fees.

## VII.   REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND TEMPORARY INJUNCTION AGAINST VANTAGE, RELLIS, AND TENORIO

S&P seeks a Temporary Restraining Order ("TRO") and, after notice and hearing, a Temporary Injunction to preserve the status quo and prevent irreparable harm pending final disposition.  Immediate and irreparable injury will occur before notice can be served and a hearing can be held because the Foreclosure Sale is scheduled for November 4, 2025 and, absent immediate relief, Defendants' actions will impair or extinguish S&P's lien rights, cloud title, and frustrate the arbitral forum.

S&P further requests that the Court order expedited discovery and specify: (a) responses due within ten (10) days of service; (b) production of core documents and ESI relevant to the temporary-injunction hearing topics identified above; (c) authorization for short-notice corporate representative depositions under Rules 199 and 205 limited to Draws, SOV revisions, disbursements, and foreclosure actions; and (d) a privilege log due within the response deadline for any withheld materials.

1.      **Probable Right to Relief.** As set forth above and in the attached Verification and exhibits, S&P has a probable right to relief on its claims, including breach of contract, violations of the Texas Construction Trust Fund Act (against RELLIS and Samuel Tenorio), fraud by nondisclosure, negligent misrepresentation, civil conspiracy, and declaratory judgment concerning lien validity and priority.

2.      **Probable, Imminent, and Irreparable Injury; No Adequate Remedy at Law.** The Foreclosure Sale would irreversibly alter title, risk extinguishment of S&P's lien rights, and hinder S&P's ability to obtain effective relief and specific recovery of trust funds.  Money damages are not an adequate remedy for the loss of lien priority, impairment of the security, and disruption of the arbitral process.

3.      **Status Quo and Balance of Equities.** The requested injunction preserves the status quo.  Any potential prejudice to Defendants is mitigated by the posting of a bond and S&P's willingness to have undisbursed proceeds and project-related funds, if any, placed into escrow pending adjudication.

4.      **Legal Standard.** The Court is authorized to issue TROs and temporary injunctions under Texas Rule of Civil Procedure 680 *et seq.* and Texas Civil Practice and Remedies Code § 65.011 *et seq.* The Court may grant provisional remedies in aid of arbitration to preserve the subject matter of the dispute.

## VIII.   SPECIFIC TEMPORARY RELIEF REQUESTED

S&P respectfully requests that the Court issue an immediate ex parte TRO, and after hearing a Temporary Injunction, enjoining Defendants and their officers, agents, employees, representatives, and all persons acting in concert with them from:

a.   Conducting, posting, noticing, or proceeding with any nonjudicial foreclosure sale under any deed of trust, assignment of rents, or other instrument encumbering the Property, including the sale set for November 4, 2025;

b.   Recording any substitute trustee's deed, appointment, or other foreclosure-related documents affecting title to the Property;

c.   Transferring, encumbering, or otherwise disposing of any interest in the Property, or any collateral securing the Loan, other than in the ordinary course for security and preservation of the Property;

d.   Disbursing or permitting the disbursement of any undisbursed Loan proceeds or other project funds, except into a mutually agreeable escrow pending further order;

e.   Misapplying, diverting, or dissipating any construction trust funds under Texas Property Code chapter 162, including but not limited to past or future draw proceeds, retainage, and any funds received in connection with the Project; and

f.   Destroying, altering, concealing, or failing to preserve books, records, communications, and electronically stored information relating to the Loan, draw requests, disbursements, payment applications, lien rights, and the Project.

S&P further requests the Court set a prompt hearing on a temporary injunction before the TRO expires; approve a bond in an amount the Court deems proper under Rule 684; and, after hearing, continue the injunctive relief pending final adjudication.

## IX.   ATTORNEYS' FEES

S&P seeks recovery of attorneys' fees and costs under Texas Civil Practice and Remedies Code §§ 37.009 and 38.001, Texas Property Code § 28.005, and as otherwise provided by law.

## X.   CONDITIONS PRECEDENT

All conditions precedent to S&P's claims have occurred, been performed, or have been waived or excused.

## XI.   REQUEST FOR EXPEDITED AND LIMITED EARLY DISCOVERY

To prepare for the temporary injunction hearing, S&P requests leave for expedited discovery, including document requests and limited depositions under Rules 199 and 205 directed to Defendants' custodians of records regarding draw requests, disbursements, and foreclosure actions. Attached hereto is discovery that S&P asks the Court to order answered within five (5) days of service hereof.

## XII.   PROCEDURAL REQUIREMENTS AND LOCAL PRACTICE

S&P will e-file this Petition and Application via eFile Texas with the Brazos County District Clerk.  S&P submits a proposed Temporary Restraining Order and Order Setting Hearing on Temporary Injunctions as required by Rule 680 and is prepared to post a bond under Rule 684. To the extent the Court requires, S&P includes a certificate regarding efforts to provide notice for purposes of any ex parte relief and will promptly serve Defendants with all pleadings and orders.

## XIII.   CONDITIONS FOR EX PARTE TRO

Because the foreclosure sale is scheduled for November 4, 2025, and because Defendants can act immediately to alter the status quo, S&P requests ex parte relief.  The immediate and irreparable injury, loss, or damage will occur before notice can be served and a hearing can be held.  S&P's counsel certifies that immediate and diligent efforts will be made to notify Defendants promptly upon filing and to provide courtesy copies of any orders entered.

## XIV.   PRAYER

S&P prays that citation issue and be served on Defendants; that the Court grant the TRO and set a temporary injunction hearing; that, after hearing, the Court grant a temporary injunction; and that upon final hearing the Court award S&P:

1. Actual damages, plus pre- and post-judgment interest;

2. Declare S&P's mechanic's and constitutional lien(s) are valid and enforceable, and determining their extent and priority relative to Vantage's deed of trust and any other encumbrances, including equitable subordination;

3. Impose a constructive trust over misapplied trust funds and any traceable proceeds or assets acquired with such funds, and ordering restitution/disgorgement;

4. Exemplary and punitive damages as permitted by law;

5. Reasonable and necessary attorneys' fees, costs, and expenses under the UDJA and other applicable law; and

6. Grant all other relief, at law or in equity, by statute or otherwise to which S&P shows itself justly entitled.

Respectfully submitted,

COKINOS | YOUNG

/s/ *Gregory M. Cokinos*
GREGORY M. COKINOS
Texas Bar No. 04527250
CRAIG H. CLENDENIN
Texas Bar No. 04375000
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5500
Facsimile: (713) 535-5533
gcokinos@cokinoslaw.com
cclendenin@cokinoslaw.com

**Attorneys for Satterfield & Pontikes Construction, Inc.**

CAUSE NO. _____

| | | |
|---|---|---|
| **SATTERFIELD & PONTIKES** | § | **IN THE DISTRICT COURT OF** |
| **CONSTRUCTION, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **BRAZOS COUNTY, TEXAS** |
| **RELLIS CAMPUS DATA AND** | § | |
| **RESEARCH CENTER, LLC,** | § | |
| **VANTAGE BANK TEXAS, and** | § | |
| **SAMUEL TENORIO, individually,** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BRAZOS | § |

My name is Jim Muska. I am the General Counsel of Satterfield & Pontikes Construction, Inc., the Plaintiff in this case. I have read the foregoing Plaintiff's Original Petition and Verified Application for Temporary Restraining Order and Temporary Injunction, and the facts stated therein in Section V is within my personal knowledge and are true and correct.

_____
Jim Muska, General Counsel
Satterfield & Pontikes Construction, Inc.

SUBSCRIBED AND SWORN TO before me on this the <u>28th</u> day of October 2025, to certify which witness my hand and seal of office.



DANIA ESTRADA
Notary Public, State of Texas
Comm. Expires 05-02-2028
Notary ID 132455788

_____
Notary Public in and for
the State of Texas

My Commission Expires: <u>05-02-2028</u>



# Document A133® – 2019

**Standard Form of Agreement Between Owner and Construction Manager as Constructor** *where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the 7th day of June in the year 2023

**BETWEEN** the Owner:

RELLIS Campus Data and Research Center, LLC
5010 Doss Road
Austin, Texas 78734

and the Construction Manager:

Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079

for the following Project:

RELLIS Data and Research Center
College Station, Texas

The Architect:

TBD

The Owner and Construction Manager agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2017, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

# Exhibit A

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                            (1213356149)

**1**

TABLE OF ARTICLES

1    INITIAL INFORMATION

2    GENERAL PROVISIONS

3    CONSTRUCTION MANAGER'S RESPONSIBILITIES

4    OWNER'S RESPONSIBILITIES

5    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

6    COMPENSATION FOR CONSTRUCTION PHASE SERVICES

7    COST OF THE WORK FOR CONSTRUCTION PHASE

8    DISCOUNTS, REBATES, AND REFUNDS

9    SUBCONTRACTS AND OTHER AGREEMENTS

10   ACCOUNTING RECORDS

11   PAYMENTS FOR CONSTRUCTION PHASE SERVICES

12   DISPUTE RESOLUTION

13   TERMINATION OR SUSPENSION

14   MISCELLANEOUS PROVISIONS

15   SCOPE OF THE AGREEMENT

EXHIBIT A   GUARANTEED MAXIMUM PRICE AMENDMENT
EXHIBIT B   INSURANCE AND BONDS

ARTICLE 1    INITIAL INFORMATION
§ 1.1 This Agreement is based on the Initial Information set forth in this Section 1.1.
*(Paragraph deleted)*
§ 1.1.1 The Owner's program for the Project, as described in Section 4.1.1:

See Exhibit C – Developer Project Guidelines, The Texas A&M University System dated February 28, 2019

§ 1.1.2 The Project's physical characteristics:
*(Paragraph deleted)*
The project will consist of the first phase of a multi-phased data center at the TAMU RELLIS Campus. Building 1 will consist of a two-story building consisting of approximately 10,000 sf of data center and 40,000 sf of office areas. This includes the interior fit-out of the office areas.

§ 1.1.3 The Owner's budget for the Guaranteed Maximum Price, as defined in Article 6:

See Exhibit A (once executed)

In the event of significant delay or price increase of material, equipment, or energy occurring during the performance of this Agreement through no fault of the Construction Manager, the Contract Time and Sum shall be equitably adjusted by Change Order in accordance with the procedures of this Agreement. A change in price of an item of material, equipment or energy will be considered significant when the price of an item increases 10% between the date of the Guaranteed Maximum Price Amendment and the date of delivery of the material, equipment or energy.

Init.

/

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                              (1213356149)

2

**§ 1.1.4** The Owner's anticipated design and construction milestone dates:
*(Paragraphs deleted)*
See Exhibit A

**§ 1.1.5**
*(Paragraphs deleted)*
Not Used

**§ 1.1.6**
*(Paragraphs deleted)*
Not Used

*(Paragraph deleted)*
**§ 1.1.7**
*(Paragraphs deleted)*
Not Used

**§ 1.1.8** The Owner identifies the following representative in accordance with Section 4.2:

Sam Tenorio
RELLIS Campus Data Research Center, LLC
5010 Doss Rd
Austin, Texas 78734
(512) 650-6228
sam@rellisdrc.com

**§ 1.1.9**
*(Paragraphs deleted)*
Not Used

**§ 1.1.10** The Owner shall retain the following consultants and contractors:
*(Paragraph deleted)*
   .1   Geotechnical Engineer:

        Terracon
        6198 Imperial Loop
        College Station, Texas 77845
        (979) 846-3767

   .2   Civil Engineer:

*(Paragraphs deleted)*
        TBD

**§ 1.1.11** The Architect's representative:

TBD

**§ 1.1.12** The Construction Manager identifies the following representative in accordance with Article 3:

Charlie Fote, Executive Vice President
Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079
(713) 996-1312
charlie@satpon.com

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                  (1213356149)

**3**

and

Jim Muska, General Counsel
Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079
(713) 996-1304
jmuska@satpon.com

**§ 1.1.13**
*(Paragraphs deleted)*
Not Used

**§ 1.1.14** The Owner's requirements for subcontractor procurement for the performance of the Work:

See Exhibit C – Developer Project Guidelines, The Texas A&M University System dated February 28, 2019

**§ 1.1.15** Not Used

**§ 1.2** The Owner and Construction Manager may rely on the Initial Information. Both parties, however, recognize that such information may materially change and, in that event, the Owner and the Construction Manager shall appropriately adjust the Project schedule, the Construction Manager's services, and the Construction Manager's compensation. The Owner shall adjust the Owner's budget for the Guaranteed Maximum Price and the Owner's anticipated design and construction milestones, as necessary, to accommodate material changes in the Initial Information.

**§ 1.3** Neither the Owner's nor the Construction Manager's representative shall be changed without ten days' prior notice to the other party.

## ARTICLE 2   GENERAL PROVISIONS
### § 2.1 The Contract Documents
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, all of which form the Contract and are as fully a part of the Contract as if attached to this Agreement or repeated herein. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, the Contract Documents will also include the documents described in Section 3.2.3 and identified in the Guaranteed Maximum Price Amendment and revisions prepared by the Architect and furnished by the Owner as described in Section 3.2.8. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. An enumeration of the Contract Documents, other than a Modification, appears in Article 15.

### § 2.2 Relationship of the Parties
The Construction Manager covenants with the Owner to cooperate with the Architect and exercise the Construction Manager's skill and judgment in furthering the interests of the Owner to furnish efficient construction administration, management services, and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish or approve, in a timely manner, information required by the Construction Manager and to make payments to the Construction Manager in accordance with the requirements of the Contract Documents.

### § 2.3 General Conditions
**§ 2.3.1** For the Preconstruction Phase, AIA Document A201™–2017, General Conditions of the Contract for Construction, shall apply as follows: Section 1.5, Ownership and Use of Documents; Section 1.7, Digital Data Use and Transmission; Section 1.8, Building Information Model Use and Reliance; Section 2.2.4, Confidential Information; Section 3.12.10, Professional Services; Section 10.3, Hazardous Materials; Section 13.1, Governing Law. The term "Contractor" as used in A201–2017 shall mean the Construction Manager.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                          (1213356149)

**§ 2.3.2** For the Construction Phase, the general conditions of the contract shall be as set forth in A201–2017, which document is incorporated herein by reference. The term "Contractor" as used in A201–2017 shall mean the Construction Manager.

## ARTICLE 3   CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager's Preconstruction Phase responsibilities are set forth in Sections 3.1 and 3.2, and in the applicable provisions of A201-2017 referenced in Section 2.3.1. The Construction Manager's Construction Phase responsibilities are set forth in Section 3.3. The Owner and Construction Manager may agree, in consultation with the Architect, for the Construction Phase to commence prior to completion of the Preconstruction Phase, in which case, both phases will proceed concurrently. The Construction Manager shall identify a representative authorized to act on behalf of the Construction Manager with respect to the Project.

### § 3.1 Preconstruction Phase
### § 3.1.1 Extent of Responsibility
The Construction Manager shall exercise reasonable care in performing its Preconstruction Services. The Owner and Architect shall be entitled to rely on, and shall not be responsible for, the accuracy, completeness, and timeliness of services and information furnished by the Construction Manager. The Construction Manager, however, does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The Construction Manager is not required to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Construction Manager shall promptly report to the Architect and Owner any nonconformity discovered by or made known to the Construction Manager as a request for information in such form as the Architect may require.

**§ 3.1.2** The Construction Manager shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other.

### § 3.1.3 Consultation
**§ 3.1.3.1** The Construction Manager shall schedule and conduct meetings with the Architect and Owner to discuss such matters as procedures, progress, coordination, and scheduling of the Work.

**§ 3.1.3.2** The Construction Manager shall advise the Owner and Architect on proposed site use and improvements, selection of materials, building systems, and equipment. The Construction Manager shall also provide recommendations to the Owner and Architect, consistent with the Project requirements, on constructability; availability of materials and labor; time requirements for procurement, installation and construction; prefabrication; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and possible cost reductions. The Construction Manager shall consult with the Architect regarding professional services to be provided by the Construction Manager during the Construction Phase.

**§ 3.1.3.3** The Construction Manager shall assist the Owner and Architect in establishing building information modeling and digital data protocols for the Project, using AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, to establish the protocols for the development, use, transmission, and exchange of digital data.

### § 3.1.4 Project Schedule
When Project requirements in Section 4.1.1 have been sufficiently identified, the Construction Manager shall prepare and periodically update a Project schedule for the Architect's review and the Owner's acceptance. The Construction Manager shall obtain the Architect's approval for the portion of the Project schedule relating to the performance of the Architect's services. The Project schedule shall coordinate and integrate the Construction Manager's services, the Architect's services, other Owner consultants' services, and the Owner's responsibilities; and identify items that affect the Project's timely completion. The updated Project schedule shall include the following: submission of the Guaranteed Maximum Price proposal; components of the Work; times of commencement and completion required of each Subcontractor; ordering and delivery of products, including those that must be ordered in advance of construction; and the occupancy requirements of the Owner.

### § 3.1.5 Phased Construction
The Construction Manager, in consultation with the Architect, shall provide recommendations with regard to accelerated or fast-track scheduling, procurement, and sequencing for phased construction. The Construction Manager shall take into

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                                     (1213356149)

**5**

consideration cost reductions, cost information, constructability, provisions for temporary facilities, and procurement and construction scheduling issues.

### § 3.1.6 Cost Estimates

**§ 3.1.6.1** Based on the preliminary design and other design criteria prepared by the Architect, the Construction Manager shall prepare, for the Architect's review and the Owner's approval, preliminary estimates of the Cost of the Work or the cost of program requirements using area, volume, or similar conceptual estimating techniques. If the Architect or Construction Manager suggests alternative materials and systems, the Construction Manager shall provide cost evaluations of those alternative materials and systems.

**§ 3.1.6.2** As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall prepare and update, at appropriate intervals agreed to by the Owner, Construction Manager and Architect, an estimate of the Cost of the Work with increasing detail and refinement. The Construction Manager shall include in the estimate those costs to allow for the further development of the design, price escalation, and market conditions, until such time as the Owner and Construction Manager agree on a Guaranteed Maximum Price for the Work. The estimate shall be provided for the Architect's review and the Owner's approval. The Construction Manager shall inform the Owner and Architect in the event that the estimate of the Cost of the Work exceeds the latest approved Project budget, and make recommendations for corrective action.

**§ 3.1.6.3** If the Architect is providing cost estimating services as a Supplemental Service, and a discrepancy exists between the Construction Manager's cost estimates and the Architect's cost estimates, the Construction Manager and the Architect shall work together to reconcile the cost estimates.

**§ 3.1.7** As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall consult with the Owner and Architect and make recommendations regarding constructability and schedules, for the Architect's review and the Owner's approval.

**§ 3.1.8** The Construction Manager shall provide recommendations and information to the Owner and Architect regarding equipment, materials, services, and temporary Project facilities.

**§ 3.1.9** The Construction Manager shall provide a staffing plan for Preconstruction Phase services for the Owner's review and approval.

**§ 3.1.10** If the Owner identified a Sustainable Objective in Article 1, the Construction Manager shall fulfill its Preconstruction Phase responsibilities as required in AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, attached to this Agreement.

### § 3.1.11 Subcontractors and Suppliers

**§ 3.1.11.1** If the Owner has provided requirements for subcontractor procurement in section 1.1.14, the Construction Manager shall provide a subcontracting plan, addressing the Owner's requirements, for the Owner's review and approval.

**§ 3.1.11.2** The Construction Manager shall develop bidders' interest in the Project.

**§ 3.1.11.3** The processes described in Article 9 shall apply if bid packages will be issued during the Preconstruction Phase.

### § 3.1.12 Procurement

The Construction Manager shall prepare, for the Architect's review and the Owner's acceptance, a procurement schedule for items that must be ordered in advance of construction. The Construction Manager shall expedite and coordinate the ordering and delivery of materials that must be ordered in advance of construction. If the Owner agrees to procure any items prior to the establishment of the Guaranteed Maximum Price, the Owner shall procure the items on terms and conditions acceptable to the Construction Manager. Upon the establishment of the Guaranteed Maximum Price, the Owner shall assign all contracts for these items to the Construction Manager and the Construction Manager shall thereafter accept responsibility for them.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 08/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                    (1213356149)

### § 3.1.13 Compliance with Laws

The Construction Manager shall comply with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to its performance under this Contract, and with equal employment opportunity programs, and other programs as may be required by governmental and quasi-governmental authorities.

### § 3.1.14
*(Paragraphs deleted)*
**Not Used**

### § 3.2 Guaranteed Maximum Price Proposal

**§ 3.2.1** At a time to be mutually agreed upon by the Owner and the Construction Manager, the Construction Manager shall prepare a Guaranteed Maximum Price proposal for the Owner's and Architect's review, and the Owner's acceptance. The Guaranteed Maximum Price in the proposal shall be the sum of the Construction Manager's estimate of the Cost of the Work, the Construction Manager's contingency described in Section 3.2.4, and the Construction Manager's Fee described in Section 6.1.2.

**§ 3.2.2** To the extent that the Contract Documents are anticipated to require further development, the Guaranteed Maximum Price includes the costs attributable to such further development consistent with and reasonably inferable therefrom the Contract Documents. Such further development does not include changes in scope, systems, kinds and quality of materials, finishes, or equipment, all of which, if required, shall be incorporated by Change Order.

**§ 3.2.3** The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include the following:

.1  A list of the Drawings and Specifications, including all Addenda thereto, and the Conditions of the Contract;

.2  A list of the clarifications and assumptions made by the Construction Manager in the preparation of the Guaranteed Maximum Price proposal, including assumptions under Section 3.2.2;

.3  A statement of the proposed Guaranteed Maximum Price, including a statement of the estimated Cost of the Work organized by trade categories or systems, including allowances; the Construction Manager's contingency set forth in Section 3.2.4; and the Construction Manager's Fee;

.4  The anticipated date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based; and

.5  A date by which the Owner must accept the Guaranteed Maximum Price.

**§ 3.2.4** In preparing the Construction Manager's Guaranteed Maximum Price proposal, the Construction Manager shall include a contingency for the Construction Manager's exclusive use to cover those costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order.

**§ 3.2.5** The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal. In the event that the Owner or Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

**§ 3.2.6** If the Owner notifies the Construction Manager that the Owner has accepted the Guaranteed Maximum Price proposal in writing before the date specified in the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price proposal shall be deemed effective without further acceptance from the Construction Manager. Following acceptance of a Guaranteed Maximum Price, the Owner and Construction Manager shall execute the Guaranteed Maximum Price Amendment amending this Agreement, a copy of which the Owner shall provide to the Architect. The Guaranteed Maximum Price Amendment shall set forth the agreed upon Guaranteed Maximum Price with the information and assumptions upon which it is based.

**§ 3.2.7** The Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work prior to the execution of the Guaranteed Maximum Price Amendment, unless the Owner provides prior written authorization for such costs.

**§ 3.2.8** The Owner shall authorize preparation of revisions to the Contract Documents that incorporate the agreed-upon assumptions and clarifications contained in the Guaranteed Maximum Price Amendment. The Owner shall promptly

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                    (1213356149)

furnish such revised Contract Documents to the Construction Manager. The Construction Manager shall notify the Owner and Architect of any inconsistencies between the agreed-upon assumptions and clarifications contained in the Guaranteed Maximum Price Amendment and the revised Contract Documents.

**§ 3.2.9** The Construction Manager shall include in the Guaranteed Maximum Price all sales, consumer, use and similar taxes for the Work provided by the Construction Manager that are legally enacted, whether or not yet effective, at the time the Guaranteed Maximum Price Amendment is executed.

### § 3.3 Construction Phase
### § 3.3.1 General
**§ 3.3.1.1** For purposes of Section 8.1.2 of A201–2017, the date of commencement of the Work shall mean the date of commencement of the Construction Phase.

**§ 3.3.1.2** The Construction Phase shall commence upon the Owner's execution of the Guaranteed Maximum Price Amendment or, prior to acceptance of the Guaranteed Maximum Price proposal, by written agreement of the parties. The written agreement shall set forth a description of the Work to be performed by the Construction Manager, and any insurance and bond requirements for Work performed prior to execution of the Guaranteed Maximum Price Amendment.

### § 3.3.2 Administration
**§ 3.3.2.1** The Construction Manager shall schedule and conduct meetings to discuss such matters as procedures, progress, coordination, scheduling, and status of the Work. The Construction Manager shall prepare and promptly distribute minutes of the meetings to the Owner and Architect.

**§ 3.3.2.2** Upon the execution of the Guaranteed Maximum Price Amendment, the Construction Manager shall prepare and submit to the Owner and Architect a construction schedule for the Work and a submittal schedule in accordance with Section 3.10 of A201–2017.

### § 3.3.2.3 Monthly Report
The Construction Manager shall record the progress of the Project. On a monthly basis, or otherwise as agreed to by the Owner, the Construction Manager shall submit written progress reports to the Owner and Architect, showing percentages of completion and other information required by the Owner.

### § 3.3.2.4 Daily Logs
The Construction Manager shall keep, and make available to the Owner and Architect, a daily log containing a record for each day of weather, portions of the Work in progress, number of workers on site, identification of equipment on site, problems that might affect progress of the work, accidents, injuries, and other information required by the Owner.

### § 3.3.2.5 Cost Control
The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect, and shall provide this information in its monthly reports to the Owner and Architect, in accordance with Section 3.3.2.3 above.

### ARTICLE 4   OWNER'S RESPONSIBILITIES
### § 4.1 Information and Services Required of the Owner
**§ 4.1.1** The Owner shall provide information with reasonable promptness, regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, constraints, and criteria, including schedule, space requirements and relationships, flexibility and expandability, special equipment, systems, sustainability and site requirements.

**§ 4.1.2** The Construction Manager may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. After execution of the Guaranteed Maximum Price Amendment, the Construction Manager may request such information as set forth in A201-2017 Section 2.2.

**§ 4.1.3** The Owner shall establish and periodically update the Owner's budget for the Project, including (1) the budget for the Cost of the Work as defined in Article 7, (2) the Owner's other costs, and (3) reasonable contingencies related to all of

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                    (1213356149)

these costs. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Construction Manager and Architect. The Owner and the Architect, in consultation with the Construction Manager, shall thereafter agree to a corresponding change in the Project's scope and quality.

**§ 4.1.4 Structural and Environmental Tests, Surveys and Reports.** During the Preconstruction Phase, the Owner shall furnish the following information or services with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services. The Construction Manager shall be entitled to rely on the accuracy of information and services furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 4.1.4.1** The Owner shall furnish tests, inspections, and reports, required by law and as otherwise agreed to by the parties, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

**§ 4.1.4.2** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; designated wetlands; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and other necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

**§ 4.1.4.3** The Owner, when such services are requested, shall furnish services of geotechnical engineers, which may include test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.

**§ 4.1.5** During the Construction Phase, the Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Construction Manager's performance of the Work with reasonable promptness after receiving the Construction Manager's written request for such information or services.

**§ 4.1.6** If the Owner identified a Sustainable Objective in Article 1, the Owner shall fulfill its responsibilities as required in AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, attached to this Agreement.

**§ 4.2 Owner's Designated Representative**
The Owner shall identify a representative authorized to act on behalf of the Owner with respect to the Project. The Owner's representative shall render decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201–2017, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 4.2.1 Legal Requirements.** The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

**§ 4.3 Architect**
The Owner shall retain an Architect to provide services, duties and responsibilities as described in AIA Document B133™–2019, Standard Form of Agreement Between Owner and Architect, Construction Manager as Constructor Edition, including any additional services requested by the Construction Manager that are necessary for the Preconstruction and Construction Phase services under this Agreement. The Owner shall provide the Construction Manager with a copy of the scope of services in the executed agreement between the Owner and the Architect, and any further modifications to the Architect's scope of services in the agreement.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                                           (1213356149)

## ARTICLE 5   COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
### § 5.1 Compensation
**§ 5.1.1** For the Construction Manager's Preconstruction Phase services described in Sections 3.1 and 3.2, the Owner shall compensate the Construction Manager as follows:
*(Paragraph deleted)*
$20,000.00 per month.   Upon execution of the Guaranteed Maximum Price Amendment, these payments for Preconstruction Phase Services shall be credited against the Construction Manager's fee for Construction Phase Services.

**§ 5.1.2** The hourly billing rates for Preconstruction Phase services of the Construction Manager and the Construction Manager's Consultants and Subcontractors, if any, are set forth below.

See Exhibit D (rate sheet)
*(Table deleted)*
**§ 5.1.2.1** Hourly billing rates for Preconstruction Phase services include all costs to be paid or incurred by the Construction Manager, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, and shall remain unchanged unless the parties execute a Modification.

**§ 5.1.3** If the Preconstruction Phase services covered by this Agreement have not been completed within five (5) months of the date of this Agreement, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

### § 5.2 Payments
**§ 5.2.1** Unless otherwise agreed, payments for services shall be made monthly in proportion to services performed.

**§ 5.2.2** Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid thirty (30) days after the invoice date shall bear interest at the rate
*(Paragraphs deleted)*
of one and one-half percent per month in accordance with § 28.004 of the Texas Property Code. .

## ARTICLE 6   COMPENSATION FOR CONSTRUCTION PHASE SERVICES
### § 6.1 Contract Sum
**§ 6.1.1** The Owner shall pay the Construction Manager the Contract Sum in current funds for the Construction Manager's performance of the Contract after execution of the Guaranteed Maximum Price Amendment. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Construction Manager's Fee.

**§ 6.1.2** The Construction Manager's Fee:
*(Paragraph deleted)*
4.0 % of the Cost of the Work

**§ 6.1.3** The method of adjustment of the Construction Manager's Fee for changes in the Work:

5.00 % of the Cost of the Work

**§ 6.1.4** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

15.00 % of the Cost of the Work

**§ 6.1.5** Rental rates for Construction Manager-owned equipment shall not exceed one hundred percent (100%) of the standard rental rate paid at the place of the Project.

**§ 6.1.6** Liquidated damages, if any:
*(Paragraph deleted)*
As Owner's sole and exclusive remedy for all delay-related damages, if Substantial Completion of the Work is not achieved within the time provided by this Agreement, subject to a 30-day grace period, Owner shall be entitled to collect

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                 (1213356149)

**10**

from Contractor liquidated damages in the amount of $750.00 per day for each day of delay in the Achievement of Substantial Completion.

*(Paragraphs deleted)*
## § 6.2 Guaranteed Maximum Price
The Construction Manager guarantees that the Contract Sum shall not exceed the Guaranteed Maximum Price set forth in the Guaranteed Maximum Price Amendment, subject to additions and deductions by Change Order as provided in the Contract Documents. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

## § 6.3 Changes in the Work
§ 6.3.1 The Owner may, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions. The Owner shall issue such changes in writing. The Construction Manager may be entitled to an equitable adjustment in the Contract Time as a result of changes in the Work.

§ 6.3.1.1 The Architect may order minor changes in the Work as provided in Article 7 of AIA Document A201–2017, General Conditions of the Contract for Construction.

§ 6.3.2 Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of the Guaranteed Maximum Price Amendment may be determined by any of the methods listed in Article 7 of AIA Document A201–2017, General Conditions of the Contract for Construction.

§ 6.3.3 Adjustments to subcontracts awarded on the basis of a stipulated sum shall be determined in accordance with Article 7 of A201–2017, as they refer to "cost" and "fee," and not by Articles 6 and 7 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior written consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3.4 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in Article 7 of AIA Document A201–2017 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Construction Manager's Fee as defined in Section 6.1.2 of this Agreement.

§ 6.3.5 If no specific provision is made in Section 6.1.3 for adjustment of the Construction Manager's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Section 6.1.3 will cause substantial inequity to the Owner or Construction Manager, the Construction Manager's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 7   COST OF THE WORK FOR CONSTRUCTION PHASE
## § 7.1 Costs to Be Reimbursed
§ 7.1.1 The term Cost of the Work shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. The Cost of the Work shall include only the items set forth in Sections 7.1 through 7.7.

§ 7.1.2 Where, pursuant to the Contract Documents, any cost is subject to the Owner's prior approval, the Construction Manager shall obtain such approval in writing prior to incurring the cost.

§ 7.1.3 Costs shall be at rates not higher than the standard rates paid at the place of the Project, except with prior approval of the Owner.

## § 7.2 Labor Costs
§ 7.2.1 Wages or salaries of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, at off-site workshops.

§ 7.2.2 Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site and performing Work.

§ 7.2.2.1 Wages or salaries of the Construction Manager's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                              (1213356149)

*(Paragraphs deleted)*
Work.

**§ 7.2.3** Wages and salaries of the Construction Manager's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

**§ 7.2.4** Costs paid or incurred by the Construction Manager, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

**§ 7.2.5** If agreed rates for labor costs, in lieu of actual costs, are provided in this Agreement, the rates shall remain unchanged throughout the duration of this Agreement, unless the parties execute a Modification.

**§ 7.3 Subcontract Costs**
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts and this Agreement.

**§ 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction**
**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated, in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items**
**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Construction Manager shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. The total rental cost of any such equipment may not exceed the purchase price of any comparable item.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Construction Manager's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

**§ 7.6 Miscellaneous Costs**
**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Construction Manager.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                          (1213356149)

**12**

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Construction Manager is liable.

**§ 7.6.3** Fees and assessments for the building permit, and for other permits, licenses, and inspections, for which the Construction Manager is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents; except those related to defective or nonconforming Work for which reimbursement is excluded under Article 13 of AIA Document A201–2017 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.

**§ 7.6.5.1** The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims, and payments of settlements made with the Owner's consent, unless the Construction Manager had reason to believe that the required design, process, or product was an infringement of a copyright or a patent, and the Construction Manager failed to promptly furnish such information to the Architect as required by Article 3 of AIA Document A201–2017. The costs of legal defenses, judgments, and settlements shall not be included in the Cost of the Work used to calculate the Construction Manager's Fee or subject to the Guaranteed Maximum Price.

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site.

**§ 7.6.7** Costs of document reproductions and delivery charges.

**§ 7.6.8** Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.9** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager after the execution of this Agreement in the performance of the Work.

**§ 7.6.10** Expenses incurred in accordance with the Construction Manager's standard written personnel policy for relocation and temporary living allowances of the Construction Manager's personnel required for the Work.

**§ 7.6.11** That portion of the reasonable expenses of the Construction Manager's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.7 Other Costs and Emergencies**
**§ 7.7.1** Other costs incurred in the performance of the Work.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property, as provided in Article 10 of AIA Document A201–2017.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Construction Manager, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence of, or failure to fulfill a specific responsibility by, the Construction Manager, and only to the extent that the cost of repair or correction is not recovered by the Construction Manager from insurance, sureties, Subcontractors, suppliers, or others.

**§ 7.7.4** The costs described in Sections 7.1 through 7.7 shall be included in the Cost of the Work, notwithstanding any provision of AIA Document A201–2017 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 7.9.

**§ 7.8 Not Used**

*(Paragraphs deleted)*

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                (1213356149)

Init.

/

13

**§ 7.9 Costs Not To Be Reimbursed**
**§ 7.9.1** The Cost of the Work shall not include the items listed below:

.1     Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 14;

.2     Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone hired by the Construction Manager or paid to any Subcontractor or vendor, unless the Owner has provided prior approval;

.3     Expenses of the Construction Manager's principal office and offices other than the site office;

.4     Overhead and general expenses, except as may be expressly included in Sections 7.1 to 7.7;

.5     The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work;

.6     Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract by, the Construction Manager, Subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable;

.7     Any cost not specifically and expressly described in Sections 7.1 to 7.7;

.8     Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded; and

.9     Costs for services incurred during the Preconstruction Phase.

## ARTICLE 8   DISCOUNTS, REBATES, AND REFUNDS
**§ 8.1** Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before making the payment, the Construction Manager included the amount to be paid, less such discount, in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Construction Manager with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts, rebates, refunds, and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Construction Manager shall make provisions so that they can be obtained.

**§ 8.2** Amounts that accrue to the Owner in accordance with the provisions of Section 8.1 shall be credited to the Owner as a deduction from the Cost of the Work.

## ARTICLE 9   SUBCONTRACTS AND OTHER AGREEMENTS
**§ 9.1** Those portions of the Work that the Construction Manager does not customarily perform with the Construction Manager's own personnel shall be performed under subcontracts or other appropriate agreements with the Construction Manager. The Owner may designate specific persons from whom, or entities from which, the Construction Manager shall obtain bids. The Construction Manager shall obtain bids from Subcontractors, and from suppliers of materials or equipment fabricated especially for the Work, who are qualified to perform that portion of the Work in accordance with the requirements of the Contract Documents. The Construction Manager shall deliver such bids to the Architect and Owner with an indication as to which bids the Construction Manager intends to accept. The Owner then has the right to review the Construction Manager's list of proposed subcontractors and suppliers in consultation with the Architect and, subject to Section 9.1.1, to object to any subcontractor or supplier. Any advice of the Architect, or approval or objection by the Owner, shall not relieve the Construction Manager of its responsibility to perform the Work in accordance with the Contract Documents. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

**§ 9.1.1** When a specific subcontractor or supplier (1) is recommended to the Owner by the Construction Manager; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 9.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the Owner's prior written approval. If a subcontract is awarded on the basis of cost plus a fee, the Construction Manager shall provide in the subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Construction Manager in Article 10.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                             (1213356149)

**14**

## ARTICLE 10   ACCOUNTING RECORDS

The Construction Manager shall keep full and detailed records and accounts related to the Cost of the Work, and exercise such controls, as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Construction Manager's records and accounts, including complete documentation supporting accounting entries, books, job cost reports, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, Subcontractor's invoices, purchase orders, vouchers, memoranda, and other data relating to this Contract. The Construction Manager shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 11   PAYMENTS FOR CONSTRUCTION PHASE SERVICES
### § 11.1 Progress Payments

§ 11.1.1 Based upon Applications for Payment submitted to the Architect by the Construction Manager, and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum, to the Construction Manager, as provided below and elsewhere in the Contract Documents.

§ 11.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

§ 11.1.3 Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the amount certified to the Construction Manager not later than the last day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment of the amount certified shall be made by the Owner not later than thirty (30) days after the Architect receives the Application for Payment.

§ 11.1.4 With each Application for Payment, the Construction Manager shall submit a statutory Conditional Waiver and Release on Progress Payment for the period covered by the present Application for Payment, as well as unconditional waivers from Construction Manager and all subcontractors and suppliers for amounts previously paid.

§ 11.1.5 Each Application for Payment shall be based on the most recent schedule of values submitted by the Construction Manager in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among: (1) the various portions of the Work; (2) any contingency for costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order; and (3) the Construction Manager's Fee.

§ 11.1.5.1 The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. The schedule of values shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

§ 11.1.5.2 The allocation of the Guaranteed Maximum Price under this Section 11.1.5 shall not constitute a separate guaranteed maximum price for the Cost of the Work of each individual line item in the schedule of values.

§ 11.1.5.3 When the Construction Manager allocates costs from a contingency to another line item in the schedule of values, the Construction Manager shall submit supporting documentation to the Architect.

§ 11.1.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed, or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Construction Manager on account of that portion of the Work and for which the Construction Manager has made payment or intends to make payment prior to the next Application for Payment, by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 11.1.7 In accordance with AIA Document A201–2017 and subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

§ 11.1.7.1 The amount of each progress payment shall first include:

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:   (1213356149)

.1    That portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the most recent schedule of values;

.2    That portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction or, if approved in writing in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3    That portion of Construction Change Directives that the Architect determines, in the Architect's professional judgment, to be reasonably justified; and

.4    The Construction Manager's Fee, computed upon the Cost of the Work described in the preceding Sections 11.1.7.1.1 and 11.1.7.1.2 at the rate stated in Section 6.1.2 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work included in Sections 11.1.7.1.1 and 11.1.7.1.2 bears to a reasonable estimate of the probable Cost of the Work upon its completion.

**§ 11.1.7.2** The amount of each progress payment shall then be reduced by:

.1    The aggregate of any amounts previously paid by the Owner;

.2    The amount, if any, for Work that remains uncorrected and for which the Architect has previously withheld a Certificate for Payment as provided in Article 9 of AIA Document A201–2017;

.3    Any amount for which the Construction Manager does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Construction Manager intends to pay;

.4    For Work performed or defects discovered since the last payment application, any amount for which the Architect may withhold payment, or nullify a Certificate of Payment in whole or in part, as provided in Article 9 of AIA Document A201–2017;

.5    The shortfall, if any, indicated by the Construction Manager in the documentation required by Section 11.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.6    Retainage withheld pursuant to Section 11.1.8.

### § 11.1.8 Retainage

**§ 11.1.8.1** For each progress payment made prior to Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due:

10.00 %

*(Paragraphs deleted)*
**§ 11.1.8.2**
*(Paragraphs deleted)*
Upon Substantial Completion of the Work, the Construction Manager may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 11.1.8.

*(Paragraphs deleted)*
**§ 11.1.9** If final completion of the Work is materially delayed through no fault of the Construction Manager, the Owner shall pay the Construction Manager any additional amounts in accordance with Article 9 of AIA Document A201–2017.

**§ 11.1.10** Except with the Owner's prior written approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site.

**§ 11.1.11** The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments to Subcontractors, and the percentage of retainage held on Subcontracts, and the Construction Manager shall execute subcontracts in accordance with those agreements.

**§ 11.1.12** In taking action on the Construction Manager's Applications for Payment the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager, and such action shall not be deemed to be a representation that (1) the Architect has made a detailed examination, audit, or arithmetic verification, of the documentation submitted in accordance with Section 11.1.4 or other supporting data; (2) that the Architect has made exhaustive or continuous on-site inspections; or (3) that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations,

Init.

/

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                              (1213356149)

audits, and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

### § 11.2 Final Payment
§ 11.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Construction Manager when

  .1 the Construction Manager has fully performed the Contract, except for the Construction Manager's responsibility to correct Work as provided in Article 12 of AIA Document A201–2017, and to satisfy other requirements, if any, which extend beyond final payment;

  .2 the Construction Manager has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

  .3 a final Certificate for Payment has been issued by the Architect in accordance with Section 11.2.2.2, which shall occur on the date the punch list generated at Substantial Completion is signed off by the Architect or Owner.

§ 11.2.2 Within 30 days of the Owner's receipt of the Construction Manager's final accounting for the Cost of the Work, the Owner shall conduct an audit of the Cost of the Work or notify the Architect that it will not conduct an audit.

§ 11.2.2.1 If the Owner conducts an audit of the Cost of the Work, the Owner shall, within 10 days after completion of the audit, submit a written report based upon the auditors' findings to the Architect.

§ 11.2.2.2 Within seven days after receipt of the written report described in Section 11.2.2.1, or receipt of notice that the Owner will not conduct an audit, and provided that the other conditions of Section 11.2.1 have been met, the Architect will either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager, or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Article 9 of AIA Document A201–2017. The time periods stated in this Section 11.2.2 supersede those stated in Article 9 of AIA Document A201–2017. The Architect is not responsible for verifying the accuracy of the Construction Manager's final accounting.

§ 11.2.2.3 If the Owner's auditors' report concludes that the Cost of the Work, as substantiated by the Construction Manager's final accounting, is less than claimed by the Construction Manager, the Construction Manager shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Article 15 of AIA Document A201–2017. A request for mediation shall be made by the Construction Manager within 30 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

§ 11.2.3 The Owner's final payment to the Construction Manager shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment.

§ 11.2.4 If, subsequent to final payment, and at the Owner's request, the Construction Manager incurs costs, described in Sections 7.1 through 7.7, and not excluded by Section 7.9, to correct defective or nonconforming Work, the Owner shall reimburse the Construction Manager for such costs, and the Construction Manager's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If adjustments to the Contract Sum are provided for in Section 6.1.7, the amount of those adjustments shall be recalculated, taking into account any reimbursements made pursuant to this Section 11.2.4 in determining the net amount to be paid by the Owner to the Construction Manager.

### § 11.3 Interest
Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate
*(Paragraphs deleted)*
of one and one-half percent per month in accordance with § 28.004 of the Texas Property Code.

### ARTICLE 12    DISPUTE RESOLUTION
### § 12.1 Not Used

**Init.**

/

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:** (1213356149)

*(Paragraphs deleted)*
**§ 12.2 Binding Dispute Resolution**
For any Claim subject to, but not resolved by mediation pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be
*(Paragraphs deleted)*
Arbitration pursuant to Article 15 of AIA Document A201–2017

## ARTICLE 13   TERMINATION OR SUSPENSION
**§ 13.1 Termination Prior to Execution of the Guaranteed Maximum Price Amendment**
**§ 13.1.1** If the Owner and the Construction Manager do not reach an agreement on the Guaranteed Maximum Price, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner.

**§ 13.1.2** In the event of termination of this Agreement pursuant to Section 13.1.1, the Construction Manager shall be compensated for Preconstruction Phase services and Work performed prior to receipt of a notice of termination, in accordance with the terms of this Agreement. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 5.1.

**§ 13.1.3** Prior to the execution of the Guaranteed Maximum Price Amendment, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager for the Owner's convenience and without cause, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner, for the reasons set forth in Article 14 of A201–2017.

**§ 13.1.4** In the event of termination of this Agreement pursuant to Section 13.1.3, the Construction Manager shall be equitably compensated for Preconstruction Phase services and Work performed prior to receipt of a notice of termination. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 5.1.

**§ 13.1.5** If the Owner terminates the Contract pursuant to Section 13.1.3 after the commencement of the Construction Phase but prior to the execution of the Guaranteed Maximum Price Amendment, the Owner shall pay to the Construction Manager an amount calculated as follows, which amount shall be in addition to any compensation paid to the Construction Manager under Section 13.1.4:

    .1    Take the Cost of the Work incurred by the Construction Manager to the date of termination;
    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 6.1, as well as reasonable costs of demobilization; and
    .3    Subtract the aggregate of previous payments made by the Owner for Construction Phase services.

**§ 13.1.6** The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.1.5.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders. All Subcontracts, purchase orders and rental agreements entered into by the Construction Manager will contain provisions allowing for assignment to the Owner as described above.

**§ 13.1.6.1** If the Owner accepts assignment of subcontracts, purchase orders or rental agreements as described above, the Owner will reimburse or indemnify the Construction Manager for all costs arising under the subcontract, purchase order or rental agreement, if those costs would have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner chooses not to accept assignment of any subcontract, purchase order or rental agreement that would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager will terminate the subcontract, purchase order or rental agreement and the Owner will pay the Construction Manager the costs necessarily incurred by the Construction Manager because of such termination.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                              (1213356149)

**18**

**§ 13.2 Termination or Suspension Following Execution of the Guaranteed Maximum Price Amendment**
**§ 13.2.1 Termination**
The Contract may be terminated by the Owner or the Construction Manager as provided in Article 14 of AIA Document A201–2017.

**§ 13.2.2 Termination by the Owner for Cause**
**§ 13.2.2.1** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2017, the amount, if any, to be paid to the Construction Manager under Article 14 of AIA Document A201–2017 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

- .1 Take the Cost of the Work incurred by the Construction Manager to the date of termination;
- .2 Add the Construction Manager's Fee, computed upon the Cost of the Work to the date of termination at the rate stated in Section 6.1 or, if the Construction Manager' Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;
- .3 Subtract the aggregate of previous payments made by the Owner; and
- .4 Subtract the costs and damages incurred, or to be incurred, by the Owner under Article 14 of AIA Document A201–2017.

**§ 13.2.2.2** The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.2.2.1.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

**§ 13.2.3**
*(Paragraphs deleted)*
**Not Used**

**§ 13.3 Suspension**
The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2017; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Article 14 of AIA Document A201–2017, except that the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 6.1 and 6.3.5 of this Agreement.

**ARTICLE 14   MISCELLANEOUS PROVISIONS**
**§ 14.1** Terms in this Agreement shall have the same meaning as those in A201–2017. Where reference is made in this Agreement to a provision of AIA Document A201–2017 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 14.2 Successors and Assigns**
**§ 14.2.1** The Owner and Construction Manager, respectively, bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements, and obligations contained in the Contract Documents. Except as provided in Section 14.2.2 of this Agreement, and in Section 13.2.2 of A201–2017, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 14.2.2** The Owner may, without consent of the Construction Manager, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Construction Manager shall execute all consents reasonably required to facilitate the assignment.

**Init.**

**/**

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                    (1213356149)

### § 14.3 Insurance and Bonds
### § 14.3.1 Preconstruction Phase
The Construction Manager shall maintain the following insurance for the duration of the Preconstruction Services performed under this Agreement. If any of the requirements set forth below exceed the types and limits the Construction Manager normally maintains, the Owner shall reimburse the Construction Manager for any additional cost.

§ **14.3.1.1** Commercial General Liability with policy limits of not less than One Million Dollars ($ 1,000,000) for each occurrence and Two Million Dollars ($ 2,000,000) in the aggregate for bodily injury and property damage.

§ **14.3.1.2** Automobile Liability covering vehicles owned, and non-owned vehicles used, by the Construction Manager with policy limits of not less than One Million Dollars ($ 1,000,000) per accident for bodily injury, death of any person, and property damage arising out of the ownership, maintenance and use of those motor vehicles, along with any other statutorily required automobile coverage.

§ **14.3.1.3** The Construction Manager may achieve the required limits and coverage for Commercial General Liability and Automobile Liability through a combination of primary and excess or umbrella liability insurance, provided that such primary and excess or umbrella liability insurance policies result in the same or greater coverage as the coverages required under Sections 14.3.1.1 and 14.3.1.2, and in no event shall any excess or umbrella liability insurance provide narrower coverage than the primary policy. The excess policy shall not require the exhaustion of the underlying limits only through the actual payment by the underlying insurers.

§ **14.3.1.4** Workers' Compensation at statutory limits and Employers Liability with policy limits not less than One Million Dollars ($ 1,000,000).

§ **14.3.1.5** Professional Liability covering negligent acts, errors and omissions in the performance of professional services, with policy limits of not less than One Million Dollars ($ 1,000,000) per claim and Two Million Dollars ($ 2,000,000) in the aggregate.

### § 14.3.1.6
*(Paragraphs deleted)*
**Not Used**
*(Table deleted)*
§ **14.3.1.7 Additional Insured Obligations.** To the fullest extent permitted by law, the Construction Manager shall cause the primary and excess or umbrella polices for Commercial General Liability and Automobile Liability to include the Owner as an additional insured for claims caused in whole or in part by the Construction Manager's negligent acts or omissions. The additional insured coverage shall be primary and non-contributory to any of the Owner's insurance policies and shall apply to both ongoing and completed operations.

§ **14.3.1.8** The Construction Manager shall provide certificates of insurance to the Owner that evidence compliance with the requirements in this Section 14.3.1.

### § 14.3.2 Construction Phase
After execution of the Guaranteed Maximum Price Amendment, the Owner and the Construction Manager shall purchase and maintain insurance as set forth in AIA Document A133™–2019, Standard Form of Agreement Between Owner and Construction Manager as Constructor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, Exhibit B, Insurance and Bonds, and elsewhere in the Contract Documents.

§ **14.3.2.1** The Construction Manager shall provide bonds as set forth in AIA Document A133™–2019 Exhibit B, and elsewhere in the Contract Documents.

*(Paragraphs deleted)*
### ARTICLE 15   SCOPE OF THE AGREEMENT
§ **15.1** This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Construction Manager.

§ **15.2** The following documents comprise the Agreement:

AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                    (1213356149)

**Init.**

**/**

**20**

.1 AIA Document A133™–2019, Standard Form of Agreement Between Owner and Construction Manager as Constructor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price

.2 AIA Document A133™–2019, Exhibit A, Guaranteed Maximum Price Amendment, if executed

.3 AIA Document A133™–2019, Exhibit B, Insurance and Bonds

.4 AIA Document A201™–2017, General Conditions of the Contract for Construction

.5 Exhibit C, Developer Project Guidelines, The Texas A&M University System dated February 28, 2019

*(Paragraphs deleted)*

.6 Exhibit D, Rate Sheet

This Agreement is entered into as of the day and year first written above.

**OWNER** *(Signature)*

Sam Tenorio, Managing Member

*(Row deleted)*

**CONSTRUCTION MANAGER** *(Signature)*

Jim Muska, General Counsel

AIA Document A133 ~ 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                              (1213356149)

21

## Additions and Deletions Report for
## AIA® Document A133® – 2019

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 15:55:46 ET on 06/07/2023.

### PAGE 1

AGREEMENT made as of the day of in the year
(In words, indicate day, month, and year.)7th day of June in the year 2023

...

(Name, legal status, address, and other information)
RELLIS Campus Data and Research Center, LLC
5010 Doss Road
Austin, Texas 78734

...

(Name, legal status, address, and other information)
Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079

...

(Name, location, and detailed description)
RELLIS Data and Research Center
College Station, Texas

The Architect:
(Name, legal status, address, and other information)

TBD
### PAGE 2

(For each item in this section, insert the information or a statement such as "not applicable" or "unknown at time of execution.")

...

(Insert the Owner's program, identify documentation that establishes the Owner's program, or state the manner in which the program will be developed.)
See Exhibit C – Developer Project Guidelines, The Texas A&M University System dated February 28, 2019

...

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                          (1213356149)

*(Identify or describe pertinent information about the Project's physical characteristics, such as size; location; dimensions; geotechnical reports; site boundaries; topographic surveys; traffic and utility studies; availability of public and private utilities and services; legal description of the site, etc.)*

The project will consist of the first phase of a multi-phased data center at the TAMU RELLIS Campus. Building 1 will consist of a two-story building consisting of approximately 10,000 sf of data center and 40,000 sf of office areas. This includes the interior fit-out of the office areas.

...

*(Provide total and, if known, a line item breakdown.)*
See Exhibit A (once executed)

In the event of significant delay or price increase of material, equipment, or energy occurring during the performance of this Agreement through no fault of the Construction Manager, the Contract Time and Sum shall be equitably adjusted by Change Order in accordance with the procedures of this Agreement.  A change in price of an item of material, equipment or energy will be considered significant when the price of an item increases 10% between the date of the Guaranteed Maximum Price Amendment and the date of delivery of the material, equipment or energy.

**§ 1.1.4** The Owner's anticipated design and construction milestone dates:

.1   Design phase milestone dates, if any:

.2   Construction commencement date:

.3   Substantial Completion date or dates:

.4   Other milestone dates:

See Exhibit A

**§ 1.1.5** The Owner's requirements for accelerated or fast-track scheduling, or phased construction, are set forth below:
*(Identify any requirements for fast-track scheduling or phased construction.)*

Not Used

**§ 1.1.6** The Owner's anticipated Sustainable Objective for the Project:
*(Identify and describe the Owner's Sustainable Objective for the Project, if any.)*

Not Used

**§ 1.1.6.1** If the Owner identifies a Sustainable Objective, the Owner and Construction Manager shall complete and incorporate AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, into this Agreement to define the terms, conditions and services related to the Owner's Sustainable Objective. If E234–2019 is incorporated into this agreement, the Owner and Construction Manager shall incorporate the completed E234–2019 into the agreements with the consultants and contractors performing services or Work in any way associated with the Sustainable Objective.

**§ 1.1.7** Other Project information:
*(Identify special characteristics or needs of the Project not provided elsewhere.)*

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                           (1213356149)

Not Used
**PAGE 3**

(List name, address, and other contact information.)
Sam Tenorio
RELLIS Campus Data Research Center, LLC
5010 Doss Rd
Austin, Texas 78734
(512) 650-6228

...

**§ 1.1.9** The persons or entities, in addition to the Owner's representative, who are required to review the Construction Manager's submittals to the Owner are as follows:
*(List name, address and other contact information.)*

Not Used

...

*(List name, legal status, address, and other contact information.)*

...

                Terracon
                6198 Imperial Loop
                College Station, Texas 77845
                (979) 846-3767

...

        **.3** Other, if any:
                *(List any other consultants retained by the Owner, such as a Project or Program Manager.)*

                TBD

...

(List name, address, and other contact information.)
TBD

...

(List name, address, and other contact information.)
Charlie Fote, Executive Vice President
Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079
(713) 996-1312

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                    (1213356149)

charlie@satpon.com

and

Jim Muska, General Counsel
Satterfield & Pontikes Construction, Inc.
11750 Katy Freeway, Suite 500
Houston, Texas 77079
(713) 996-1304
**PAGE 4**

§ 1.1.13 ~~The Owner's requirements for the Construction Manager's staffing plan~~ for Preconstruction Services, as
required under Section 3.1.9:
*(List any Owner-specific requirements to be included in the staffing plan.)*

Not Used

...

~~(List any Owner-specific requirements for subcontractor procurement.)~~
See Exhibit C – Developer Project Guidelines, The Texas A&M University System dated February 28, 2019

§ 1.1.15 ~~Other Initial Information on which this Agreement is based:~~

Not Used

...

The Construction Manager ~~accepts the relationship of trust and confidence established by this Agreement and~~
covenants with the Owner to cooperate with the Architect and exercise the Construction Manager's skill and judgment
in furthering the interests of the Owner to furnish efficient construction administration, management services, and
supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an
expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish or approve, in
a timely manner, information required by the Construction Manager and to make payments to the Construction
Manager in accordance with the requirements of the Contract Documents.
**PAGE 7**

§ 3.1.14 ~~Other Preconstruction Services~~
~~Insert a description of any other Preconstruction Phase services to be provided by the Construction Manager, or~~
~~reference an exhibit attached to this document~~
*~~(Describe any other Preconstruction Phase services, such as providing cash flow projections, development of a~~*
*~~project information management system, early selection or procurement of subcontractors, etc.)~~*

**Not Used**

...

§ 3.2.2 To the extent that the Contract Documents are anticipated to require further development, the Guaranteed
Maximum Price includes the costs attributable to such further development consistent with ~~the Contract Documents~~
and reasonably inferable ~~therefrom.~~ therefrom the Contract Documents. Such further development does not include
changes in scope, systems, kinds and quality of materials, finishes, or equipment, all of which, if required, shall be
incorporated by Change Order.
**PAGE 8**

§ 4.1.2 ~~Prior to the execution of the Guaranteed Maximum Price Amendment, the~~ The Construction Manager may
request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of
Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft
was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may
only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                  (1213356149)

**4**

fulfill the Owner's obligations under the Contract. After execution of the Guaranteed Maximum Price Amendment, the Construction Manager may request such information as set forth in A201-2017 Section 2.2.
**PAGE 10**

~~(Insert amount of, or basis for, compensation and include a list of reimbursable cost items, as applicable.)~~

$20,000.00 per month.   Upon execution of the Guaranteed Maximum Price Amendment, these payments for Preconstruction Phase Services shall be credited against the Construction Manager's fee for Construction Phase Services.

...

~~(If applicable, attach an exhibit of hourly billing rates or insert them below.)~~
See Exhibit D (rate sheet)
  ~~Individual or Position~~        **Rate**

...

**§ 5.1.3** If the Preconstruction Phase services covered by this Agreement have not been completed within ~~( )~~ five (5) months of the date of this Agreement, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

...

**§ 5.2.2** Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid ~~( )~~ thirty (30) days after the invoice date shall bear interest at the rate ~~entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.~~
~~(Insert rate of monthly or annual interest agreed upon.)~~

~~%~~ of one and one-half percent per month in accordance with § 28.004 of the Texas Property Code. .

...

~~(State a lump sum, percentage of Cost of the Work or other provision for determining the Construction Manager's Fee.)~~

4.0 % of the Cost of the Work

...

5.00 % of the Cost of the Work

...

15.00 % of the Cost of the Work

...

**§ 6.1.5** Rental rates for Construction Manager-owned equipment shall not exceed ~~percent ( %)~~ one hundred percent (100%) of the standard rental rate paid at the place of the Project.

...

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                           (1213356149)

(Insert terms and conditions for liquidated damages, if any.)

As Owner's sole and exclusive remedy for all delay-related damages, if Substantial Completion of the Work is not achieved within the time provided by this Agreement, subject to a 30-day grace period, Owner shall be entitled to collect from Contractor liquidated damages in the amount of $750.00 per day for each day of delay in the Achievement of Substantial Completion.

**§ 6.1.7** Other:
(Insert provisions for bonus, cost savings or other incentives, if any, that might result in a change to the Contract Sum.)

**PAGE 11**

**§ 7.2.1** Wages or salaries of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops.

**§ 7.2.2** Wages or salaries of the Construction Manager's supervisory and administrative personnel when stationed at the site and performing Work, with the Owner's prior approval.Work.

**§ 7.2.2.1** Wages or salaries of the Construction Manager's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the Work, and limited to the personnel and activities listed below:
(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)

Work.
**PAGE 12**

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Construction Manager, or a related party as defined in Section 7.8, shall be subject to the Owner's prior approval. The total rental cost of any such equipment may not exceed the purchase price of any comparable item.

...

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.Documents.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Construction Manager, with the Owner's prior approval.Manager.
**PAGE 13**

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site, with the Owner's prior approval.site.

...

**§ 7.6.9** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.Work.

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                (1213356149)

**§ 7.6.10** Expenses incurred in accordance with the Construction Manager's standard written personnel policy for relocation and temporary living allowances of the Construction Manager's personnel required for the ~~Work, with the Owner's prior approval.~~Work.

...

**§ 7.7.1** Other costs incurred in the performance of the ~~Work, with the Owner's prior approval.~~Work.

...

**§ 7.8 ~~Related  Party  Transactions~~Not Used**
~~§ 7.8.1 For purposes of this Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other entity having common ownership of, or sharing common management with, the Construction Manager; (2) any entity in which any stockholder in, or management employee of, the Construction Manager holds an equity interest in excess of ten percent in the aggregate; (3) any entity which has the right to control the business or affairs of the Construction Manager; or (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Construction Manager.~~

~~§ 7.8.2 If any of the costs to be reimbursed arise from a transaction between the Construction Manager and a related party, the Construction Manager shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction in writing, then the cost incurred shall be included as a cost to be reimbursed, and the Construction Manager shall procure the Work, equipment, goods, or service, from the related party, as a Subcontractor, according to the terms of Article 9. If the Owner fails to authorize the transaction in writing, the Construction Manager shall procure the Work, equipment, goods, or service from some person or entity other than a related party according to the terms of Article 9.~~


**PAGE 15**

**§ 11.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the ~~month, or as follows:~~

month.

**§ 11.1.3** Provided that an Application for Payment is received by the Architect not later than the last day of a month, the Owner shall make payment of the amount certified to the Construction Manager not later than the last day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment of the amount certified shall be made by the Owner not later than ~~(   )~~thirty (30) days after the Architect receives the Application for Payment.
~~(Federal, state or local laws may require payment within a certain period of time.)~~

**§ 11.1.4** With each Application for Payment, the Construction Manager shall submit ~~payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that payments already made by the Construction Manager on account of the Cost of the Work equal or exceed progress payments already received by the Construction Manager, plus payrolls~~a statutory Conditional Waiver and Release on Progress Payment for the period covered by the present Application for Payment, ~~less that portion of the progress payments attributable to the Construction Manager's Fee.~~as well as unconditional waivers from Construction Manager and all subcontractors and suppliers for amounts previously paid.
**PAGE 16**

~~(Insert a percentage or amount to be withheld as retainage from each Application for Payment. The amount of retainage may be limited by governing law.)~~
10.00 %

**§ ~~11.1.8.1.1 The following items are not subject to retainage:~~**

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                          (1213356149)

*(Insert any items not subject to the withholding of retainage, such as general conditions, insurance, etc.)*

§ 11.1.8.2 ~~Reduction or limitation of retainage, if any, shall be as follows:~~
*~~(If the retainage established in Section 11.1.8.1 is to be modified prior to Substantial Completion of the entire Work, insert provisions for such modification.)~~*

Upon Substantial Completion of the Work, the Construction Manager may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 11.1.8.

§ ~~11.1.8.3 Except as set forth in this Section 11.1.8.3, upon Substantial Completion of the Work, the Construction Manager may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 11.1.8. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:~~
*~~(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)~~*

**PAGE 17**

  .3 a final Certificate for Payment has been issued by the Architect in accordance with Section ~~11.2.2.2,~~11.2.2.2, which shall occur on the date the punch list generated at Substantial Completion is signed off by the Architect or Owner.

...

§ 11.2.3 The Owner's final payment to the Construction Manager shall be made no later than 30 days after the issuance of the Architect's final Certificate for ~~Payment, or as follows:~~

Payment.

...

Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate ~~stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~
*~~(Insert rate of interest agreed upon, if any.)~~*

~~%~~ of one and one-half percent per month in accordance with § 28.004 of the Texas Property Code.

...

§ 12.1 ~~Initial Decision Maker~~Not Used
§ ~~12.1.1 Any Claim between the Owner and Construction Manager shall be resolved in accordance with the provisions set forth in this Article 12 and Article 15 of A201–2017. However, for Claims arising from or relating to the Construction Manager's Preconstruction Phase services, no decision by the Initial Decision Maker shall be required as a condition precedent to mediation or binding dispute resolution, and Section 12.1.2 of this Agreement shall not apply.~~

§ ~~12.1.2 The Architect will serve as the Initial Decision Maker pursuant to Article 15 of AIA Document A201–2017 for Claims arising from or relating to the Construction Manager's Construction Phase services, unless the parties appoint below another individual, not a party to the Agreement, to serve as the Initial Decision Maker.~~
*~~(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)~~*

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1213356149)

For any Claim subject to, but not resolved by mediation pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be ~~as follows:~~
~~*(Check the appropriate box.)*~~

    ~~[ – ]~~   ~~Arbitration pursuant to Article 15 of AIA Document A201–2017~~

    ~~[ – ]~~   ~~Litigation in a court of competent jurisdiction~~

    ~~[ – ]~~   ~~Other: *(Specify)*~~


~~If the Owner and Construction Manager do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.~~

**PAGE 18**

    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section ~~6.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;~~ 6.1, as well as reasonable costs of demobilization; and

**PAGE 19**

**§ 13.2.3 ~~Termination by the Owner for Convenience~~**
~~If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201–2017, then the Owner shall pay the Construction Manager a termination fee as follows:~~
~~*(Insert the amount of or method for determining the fee, if any, payable to the Construction Manager following a termination for the Owner's convenience.)*~~

<u>Not Used</u>
**PAGE 20**

**§ 14.3.1.1** Commercial General Liability with policy limits of not less than ~~($   ) for each occurrence and   ($   )~~ One Million Dollars ($ 1,000,000) for each occurrence and Two Million Dollars ($ 2,000,000) in the aggregate for bodily injury and property damage.

**§ 14.3.1.2** Automobile Liability covering vehicles owned, and non-owned vehicles used, by the Construction Manager with policy limits of not less than ~~($   )~~ One Million Dollars ($ 1,000,000) per accident for bodily injury, death of any person, and property damage arising out of the ownership, maintenance and use of those motor vehicles, along with any other statutorily required automobile coverage.

...

**§ 14.3.1.4** Workers' Compensation at statutory limits and Employers Liability with policy limits not less than ~~($   ) each accident,   ($   ) each employee, and   ($   ) policy limit.~~ One Million Dollars ($ 1,000,000).

**§ 14.3.1.5** Professional Liability covering negligent acts, errors and omissions in the performance of professional services, with policy limits of not less than ~~($   ) per claim and   ($   )~~ One Million Dollars ($ 1,000,000) per claim and Two Million Dollars ($ 2,000,000) in the aggregate.

**§ 14.3.1.6 ~~Other Insurance~~**

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**           (1213356149)

~~(List below any other insurance coverage to be provided by the Construction Manager and any applicable limits.)~~
**Not Used**
~~**Coverage**~~                                                  ~~**Limits**~~

...

~~§ 14.4 Notice in electronic format, pursuant to Article 1 of AIA Document A201-2017, may be given in accordance with AIA Document E203™-2013, Building Information Modeling and Digital Data Exhibit, if completed, or as otherwise set forth below:~~
~~(If other than in accordance with AIA Document E203-2013, insert requirements for delivering notice in electronic format such as name, title, and email address of the recipient and whether and how the system will be required to generate a read receipt for the transmission.)~~

~~§ 14.5 Other provisions:~~

**PAGE 21**

.5    ~~AIA Document E203™-2013, Building Information Modeling and Digital Data Exhibit, dated as indicated below:~~Exhibit C, Developer Project Guidelines, The Texas A&M University System dated February 28, 2019
~~(Insert the date of the E203-2013 incorporated into this Agreement.)~~

~~.6    Other Exhibits:~~
~~(Check all boxes that apply.)~~

~~[   ]    AIA Document E234™-2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, dated as indicated below:~~
~~(Insert the date of the E234-2019 incorporated into this Agreement.)~~

——————

~~[   ]    Supplementary and other Conditions of the Contract:~~

~~**Document**~~                  ~~**Title**~~              ~~**Date**~~        ~~**Pages**~~

~~.7    Other documents, if any, listed below:~~
~~(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-2017 provides that the advertisement or invitation to bid, Instructions to Bidders, sample forms, the Construction Manager's bid or proposal, portions of Addenda relating to bidding or proposal requirements, and other information furnished by the Owner in anticipation of receiving bids or proposals, are not part of the Contract Documents unless enumerated in this Agreement. Any such documents should be listed here only if intended to be part of the Contract Documents.)~~

.6    Exhibit D, Rate Sheet

...

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com,
User Notes:                                                                                          (1213356149)

Sam Tenorio, Managing Member                    Jim Muska, General Counsel

*(Printed name and title)*                      *(Printed name and title)*

Additions and Deletions Report for AIA Document A133 – 2019. Copyright © 1991, 2003, 2009, and 2019>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                              (1213356149)

# *Certification of Document's Authenticity*
## *AIA® Document D401™ – 2003*

I,   , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 15:55:46 ET on 06/07/2023 under Order No. 2114323359 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A133™ – 2019, Standard Form of Agreement Between Owner and Construction Manager as Constructor  where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401 – 2003. Copyright © 1992 and 2003. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 15:55:46 ET on 06/07/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                            (1213356149)

# ▲AIA® Document A201® – 2017

## *General Conditions of the Contract for Construction*

**for the following PROJECT:**

RELLIS Data and Research Center
College Station, Texas

**THE OWNER:**

RELLIS Campus Data and Research Center, LLC
5010 Doss Road
Austin, Texas 78734

**THE ARCHITECT:**

TBD

**TABLE OF ARTICLES**

1       GENERAL PROVISIONS

2       OWNER

3       CONTRACTOR

4       ARCHITECT

5       SUBCONTRACTORS

6       CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7       CHANGES IN THE WORK

8       TIME

9       PAYMENTS AND COMPLETION

10      PROTECTION OF PERSONS AND PROPERTY

11      INSURANCE AND BONDS

12      UNCOVERING AND CORRECTION OF WORK

13      MISCELLANEOUS PROVISIONS

14      TERMINATION OR SUSPENSION OF THE CONTRACT

15      CLAIMS AND DISPUTES

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

For guidance in modifying this document to include supplementary conditions, see AIA Document A503™, Guide for Supplementary Conditions.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**Init.**

**/**

**1**

User Notes:                                                                                                                          (1949262673)

**INDEX**
(Topics and numbers in bold are Section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.3.2, 14.1, 15.1.2, 15.2
Addenda
1.1.1
Additional Costs, Claims for
3.7.4, 3.7.5, 10.3.2, 15.1.5
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.4**
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.6**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.5.4, 9.6.3, 9.7, 9.10
Approvals
2.1.1,  2.3.1,  2.5,  3.1.3,  3.10.2,  3.12.8,  3.12.9,
3.12.10.1, 4.2.7, 9.3.2, 13.4.1
**Arbitration**
8.3.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.5, 3.12.7, 4.1.2, 4.2, 5.2, 6.3, 7.1.2, 7.3.4, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.4.1, 13.4.2, 14.2.2, 14.2.4, 15.1.4, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3,
4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2,
9.5.4, 9.6.4, 15.1.4, 15.2
Architect's Additional Services and Expenses
2.5, 12.2.1, 13.4.2, 13.4.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.5, 3.1.3, 3.5, 3.10.2, 4.2.7

Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.4.2, 15.2
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.4
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.4.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2,
3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16,
3.18, 4.1.2, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.3.2, 13.4, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.6.8, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for**
**Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1
Binding Dispute Resolution
8.3.1, 9.7, 11.5, 13.1, 15.1.2, 15.1.3, 15.2.1, 15.2.5,
15.2.6.1, 15.3.1, 15.3.2, 15.3.3, 15.4.1
Bonds, Lien
7.3.4.4, 9.6.8, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**, 11.1.3, **11.5**
**Building Information Models Use and Reliance**
**1.8**
Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights
reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of
The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not
for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations,
e-mail docinfo@aiacontracts.com.

Init.

/

User Notes:

(1949262673)

**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.4
Certificates of Inspection, Testing or Approval
13.4.4
Certificates of Insurance
9.10.2
**Change Orders**
1.1.1, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.7, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.2, 11.5, 12.1.2
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.2, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.5
**Claims**, Definition of
**15.1.1**
Claims, Notice of
1.6.2, 15.1.3
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.3.1, 3.7.4, 7.3.9, 9.5.2, 10.2.5, 10.3.2, **15.1.5**
**Claims for Additional Time**
3.2.4, 3.3.1, 3.7.4, 6.1.1, 8.3.2, 9.5.2, 10.3.2, **15.1.6**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 8.3.3, 9.5.1, 9.6.7, 10.2.5, 10.3.3, 11.3, 11.3.2, 14.2.4, 15.1.7
Claims Subject to Arbitration
15.4.1
**Cleaning Up**
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.2, **15.1.5**
**Commencement of the Work**, Definition of
**8.1.2**
**Communications**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 14.1.2, 15.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
3.10.1, 4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 15.1.2
Compliance with Laws
2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3

Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.14.2, 4.1.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 13.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.11, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.11, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.4**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 5.4.2, 11.5, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.3.6, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
2.2.2, 2.2.4, 3.7.4, 3.7.5, 3.8, 3.10.2, 5.2.3, 7.3, 7.4, **9.1**, 9.2, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.5, 12.1.2, 12.3, 14.2.4, 14.3.2, 15.1.4.2, **15.1.5, 15.2.5**
**Contract Sum**, Definition of
**9.1**
Contract Time
1.1.4, 2.2.1, 2.2.2, 3.7.4, 3.7.5, 3.10.2, 5.2.3, 6.1.5, 7.2.1.3, 7.3.1, 7.3.5, 7.3.6, 7, 7, 7.3.10, 7.4, 8.1.1, 8.2.1, 8.2.3, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 12.1.2, 14.3.2, 15.1.4.2, 15.1.6.1, 15.2.5
**Contract Time**, Definition of
8.1.1
**CONTRACTOR**
**3**
Contractor, Definition of
**3.1, 6.1.2**
**Contractor's Construction and Submittal Schedules**
**3.10**, 3.12.1, 3.12.2, 4.2.3, 6.1.3, 15.1.6.2

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                           (1949262673)

Contractor's Employees
2.2.4, 3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.3, 14.1, 14.2.1.1

**Contractor's Liability Insurance**
**11.1**

Contractor's Relationship with Separate Contractors and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3, 12.2.4

Contractor's Relationship with Subcontractors
1.2.2, 2.2.4, 3.3.2, 3.18.1, 3.18.2, 4.2.4, 5, 9.6.2, 9.6.7, 9.10.2, 11.2, 11.3, 11.4

Contractor's Relationship with the Architect
1.1.2, 1.5, 2.3.3, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5.1, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3, 12, 13.4, 15.1.3, 15.2.1

Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8

Contractor's Review of Contract Documents
3.2

Contractor's Right to Stop the Work
2.2.2, 9.7

Contractor's Right to Terminate the Contract
14.1

Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3

Contractor's Superintendent
3.9, 10.2.6

Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 7.3.6, 8.2, 10, 12, 14, 15.1.4

Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1

Copies Furnished of Drawings and Specifications
1.5, 2.3.6, 3.11

Copyrights
1.5, **3.17**

Correction of Work
2.5, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, **12.2**, 12.3, 15.1.3.1, 15.1.3.2, 15.2.1

**Correlation and Intent of the Contract Documents**
**1.2**

**Cost**, Definition of
**7.3.4**

Costs
2.5, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.4, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.2, 12.1.2, 12.2.1, 12.2.4, 13.4, 14

**Cutting and Patching**
**3.14**, 6.2.5

Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 12.2.4

Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 12.2.4

Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.3.2, 11.3, 14.2.4, 15.1.7

Damages for Delay
6.2.3, 8.3.3, 9.5.1.6, 9.7, 10.3.2, 14.3.2

**Date of Commencement of the Work**, Definition of
**8.1.2**

**Date of Substantial Completion**, Definition of
**8.1.3**

**Day**, Definition of
**8.1.4**

Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 6.3, 7.3.4, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.4.2, 14.2.2, 14.2.4, 15.1, 15.2

**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3

Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.5, 3.5, 4.2.6, 6.2.3, 9.5.1, 9.5.3, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1

Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1, 15.1.1

**Delays and Extensions of Time**
**3.2**, **3.7.4**, 5.2.3, 7.2.1, 7.3.1, **7.4**, **8.3**, 9.5.1, **9.7**, 10.3.2, **10.4**, 14.3.2, **15.1.6**, 15.2.5

**Digital Data Use and Transmission**
**1.7**

Disputes
6.3, 7.3.9, 15.1, 15.2

**Documents and Samples at the Site**
**3.11**

**Drawings**, Definition of
**1.1.5**

Drawings and Specifications, Use and Ownership of
3.11

Effective Date of Insurance
8.2.2

**Emergencies**
**10.4**, 14.1.1.2, **15.1.5**

Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3.3, 11.3, 14.1, 14.2.1.1

Equipment, Labor, or Materials
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2

Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.3.4, 2.3.6, 3.1, 3.3.1, 3.4.1, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.6, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.1, 12.2, 14.2, 14.3.1, 15.1.4

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                    (1949262673)

Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2, 10.4, 14.3, 15.1.6, **15.2.5**
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**
Guarantees (See Warranty)
**Hazardous Materials and Substances**
10.2.4, **10.3**
Identification of Subcontractors and Suppliers
5.2.1
**Indemnification**
3.17, **3.18**, 9.6.8, 9.10.2, 10.3.3, 11.3
**Information and Services Required of the Owner**
2.1.2, **2.2**, 2.3, 3.2.2, 3.12.10.1, 6.1.3, 6.1.4, 6.2.5, 9.6.1, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2, 14.1.1.4, 14.1.4, 15.1.4
**Initial Decision**
**15.2**
**Initial Decision Maker, Definition of**
1.1.8
Initial Decision Maker, Decisions
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.4, 15.1.4.2, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
**Injury or Damage to Person or Property**
**10.2.8**, 10.4
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.4
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.4.2
**Instruments of Service**, Definition of
**1.1.7**
Insurance
6.1.1, 7.3.4, 8.2.2, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 10.2.5, **11**
Insurance, Notice of Cancellation or Expiration
11.1.4, 11.2.3
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
8.2.2, 14.4.2
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
**10.2.5**, 11.2, 11.4, 11.5

Insurance, Stored Materials
9.3.2
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.9.1
Insured loss, Adjustment and Settlement of
11.5
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13
**Interest**
**13.5**
**Interpretation**
1.1.8, 1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12
Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 2.3.2, 3.2.3, 3.2.4, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 9.9.1, 10.2.2, 13.1, 13.3.1, 13.4.2, 13.5, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 15.1.2, 15.4.1.1
Limitations of Liability
3.2.2, 3.5, 3.12.10, 3.12.10.1, 3.17, 3.18.1, 4.2.6, 4.2.7, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.6.8, 10.2.5, 10.3.3, 11.3, 12.2.5, 13.3.1
Limitations of Time
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15, 15.1.2, 15.1.3, 15.1.5
**Materials, Hazardous**
10.2.4, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 5.2.1, 6.2.1, 7.3.4, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 9.3.1, 9.3.3, 9.6.8, 9.10.2, 9.10.4, 15.2.8
**Mediation**
8.3.1, 15.1.3.2, 15.2.1, 15.2.5, 15.2.6, **15.3**, 15.4.1, 15.4.1.1
**Minor Changes in the Work**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1, **7.4**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                    (1949262673)

Init.

/

**5**

**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 2.5, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.4, 2.5, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2
**Notice**
**1.6**, 1.6.1, 1.6.2, 2.1.2, 2.2.2., 2.2.3, 2.2.4, 2.5, 3.2.4, 3.3.1, 3.7.4, 3.7.5, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 7.4, 8.2.2 9.6.8, 9.7, 9.10.1, 10.2.8, 10.3.2, 11.5, 12.2.2.1, 13.4.1, 13.4.2, 14.1, 14.2.2, 14.4.2, 15.1.3, 15.1.5, 15.1.6, 15.4.1
Notice of Cancellation or Expiration of Insurance
11.1.4, 11.2.3
**Notice of Claims**
1.6.2, 2.1.2, 3.7.4, 9.6.8, 10.2.8, **15.1.3**, 15.1.5, 15.1.6, 15.2.8, 15.3.2, 15.4.1
Notice of Testing and Inspections
13.4.1, 13.4.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.3.1, 9.6.6, 9.8
Orders, Written
1.1.1, 2.4, 3.9.2, 7, 8.2.2, 11.5, 12.1, 12.2.2.1, 13.4.2, 14.3.1
**OWNER**
**2**
**Owner**, Definition of
**2.1.1**
**Owner, Evidence of Financial Arrangements**
**2.2**, 13.2.2, 14.1.1.4
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 2.3, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 13.4.1, 13.4.2, 14.1.1.4, 14.1.4, 15.1.4
Owner's Authority
1.5, 2.1.1, 2.3.32.4, 2.5, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.4, 11.5, 12.2.2, 12.3, 13.2.2, 14.3, 14.4, 15.2.7
**Owner's Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.5**, 14.2.2

**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.4**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2, 14.4
**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.3.6, 3.2.2, 3.11, 3.17, 4.2.12, 5.3
**Partial Occupancy or Use**
9.6.6, **9.9**
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.5, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, **9.10**, 12.3, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 14.2.3, 15.1.4
**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.4.4, 9.6.7, 9.10.3, **11.1.2**
**Permits, Fees, Notices and Compliance with Laws**
2.3.1, **3.7**, 3.13, 7.3.4.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.4
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 14.2.3, 15.1.4

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                                         (1949262673)

**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.2**
**Proposal Requirements**
1.1.1
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 2.3.2, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 9.6.4, 9.9.1,
10.2.2, 13.1, 13.3, 13.4.1, 13.4.2, 13.5, 14, 15.2.8, 15.4
Rejection of Work
4.2.6, 12.2.1
Releases and Waivers of Liens
9.3.1, 9.10.2
Representations
3.2.1, 3.5, 3.12.6, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.10, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.2, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field**
**Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples
by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.4, 2.5, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.1, 12.2.2,
12.2.4, **13.3**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1
**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.6.2

Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Separate Contractors**, Definition of
**6.1.1**
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.9.2, 9.4.2, 9.10.1, 13.4
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.4
Special Inspections and Testing
4.2.6, 12.2.1, 13.4
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.12.10, 3.17, 4.2.14
Statute of Limitations
15.1.2, 15.4.1.1
Stopping the Work
2.2.2, 2.4, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 3.18, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.4, 9.2, 9.3, 9.8,
9.9.1, 9.10.2, 9.10.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3**
**Substances, Hazardous**
**10.3**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2,
15.1.2
**Substantial Completion**, Definition of
**9.8.1**
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
2.3.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**
(1949262673)

Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.4
Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.5.4, 9.6, 9.10.5, 14.2.1
Surety
5.4.1.2, 9.6.8, 9.8.5, 9.10.2, 9.10.3, 11.1.2, 14.2.2, 15.2.7
Surety, Consent of
9.8.5, 9.10.2, 9.10.3
Surveys
1.1.7, 2.3.4
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
3.7.5, 5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.4.4
**Termination by the Contractor**
**14.1**, 15.1.7
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.7
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
2.3.3
Termination of the Contractor Employment
14.2.2

**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 12.2.1, **13.4**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.6, 15.2.5

Time Limits
2.1.2, 2.2, 2.5, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 12.2, 13.4, 14, 15.1.2, 15.1.3, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, 15.1.2, 15.1.3
Title to Work
9.3.2, 9.3.3
**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 9.1.2
Use of Documents
1.1.1, 1.5, 2.3.6, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.3.2
Waiver of Claims by the Contractor
9.10.5, 13.3.2, **15.1.7**
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.3.2, 14.2.4, **15.1.7**
Waiver of Consequential Damages
14.2.4, 15.1.7
Waiver of Liens
9.3, 9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3**
**Warranty**
**3.5**, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.2, 9.10.4, 12.2.2, 15.1.2
Weather Delays
8.3, 15.1.6.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.10.3, 13.2, 13.3.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Orders
1.1.1, 2.4, 3.9, 7, 8.2.2, 12.1, 12.2, 13.4.2, 14.3.1

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**
(1949262673)

# ARTICLE 1    GENERAL PROVISIONS
## § 1.1 Basic Definitions
### § 1.1.1 The Contract Documents

The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement, and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive, or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding or proposal requirements.

### § 1.1.2 The Contract

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants, or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 The Work

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment, and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

### § 1.1.4 The Project

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by Separate Contractors.

### § 1.1.5 The Drawings

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules, and diagrams.

### § 1.1.6 The Specifications

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 Instruments of Service

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

*(Paragraphs deleted)*
## § 1.2 Correlation and Intent of the Contract Documents

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**§ 1.2.1.1** The invalidity of any provision of the Contract Documents shall not invalidate the Contract or its remaining provisions. If it is determined that any provision of the Contract Documents violates any law, or is otherwise invalid or unenforceable, then that provision shall be revised to the extent necessary to make that provision legal and

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                                    (1949262673)

Init.

/

enforceable. In such case the Contract Documents shall be construed, to the fullest extent permitted by law, to give effect to the parties' intentions and purposes in executing the Contract.

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**§ 1.3 Capitalization**
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles, or (3) the titles of other documents published by the American Institute of Architects.

**§ 1.4 Interpretation**
In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**§ 1.5 Ownership and Use of Drawings, Specifications, and Other Instruments of Service**
**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and retain all common law, statutory, and other reserved rights in their Instruments of Service, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors, and suppliers are authorized to use and reproduce the Instruments of Service provided to them, subject to any protocols established pursuant to Sections 1.7 and 1.8, solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and suppliers may not use the Instruments of Service on other projects or for additions to the Project outside the scope of the Work without the specific written consent of the Owner, Architect, and the Architect's consultants.

**§ 1.6 Notice**
**§ 1.6.1** Except as otherwise provided in Section 1.6.2, where the Contract Documents require one party to notify or give notice to the other party, such notice shall be provided in writing to the designated representative of the party to whom the notice is addressed and shall be deemed to have been duly served if delivered in person, by mail, by courier, or by electronic transmission if a method for electronic transmission is set forth in the Agreement.

**§ 1.6.2** Notice of Claims as provided in Section 15.1.3 shall be provided in writing and shall be deemed to have been duly served only if delivered to the designated representative of the party to whom the notice is addressed by certified or registered mail, or by courier providing proof of delivery.

**§ 1.7 Digital Data Use and Transmission**
The parties shall agree upon protocols governing the transmission and use of Instruments of Service or any other information or documentation in digital form. The parties will use AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, to establish the protocols for the development, use, transmission, and exchange of digital data.

**§ 1.8 Building Information Models Use and Reliance**
Any use of, or reliance on, all or a portion of a building information model without agreement to protocols governing the use of, and reliance on, the information contained in the model and without having those protocols set forth in AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, and the requisite AIA Document G202™–2013, Project Building Information Modeling Protocol Form, shall be at the using or relying party's sole risk and without liability to the other party and its contractors or consultants, the authors of, or contributors to, the building information model, and each of their agents and employees.

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**

(1949262673)

## ARTICLE 2    OWNER

### § 2.1 General

**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor, within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of, or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

### § 2.2 Evidence of the Owner's Financial Arrangements

**§ 2.2.1** Upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. The Contractor shall have no obligation to commence the Work until the Owner provides such evidence. If commencement of the Work is delayed under this Section 2.2.1, the Contract Time shall be extended appropriately.

**§ 2.2.2** Following commencement of the Work and upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract only if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due; or (3) a change in the Work materially changes the Contract Sum. If the Owner fails to provide such evidence, as required, within fourteen days of the Contractor's request, the Contractor may immediately stop the Work and, in that event, shall notify the Owner that the Work has stopped. However, if the request is made because a change in the Work materially changes the Contract Sum under (3) above, the Contractor may immediately stop only that portion of the Work affected by the change until reasonable evidence is provided. If the Work is stopped under this Section 2.2.2, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided in the Contract Documents.

**§ 2.2.3** After the Owner furnishes evidence of financial arrangements under this Section 2.2, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**§ 2.2.4** Where the Owner has designated information furnished under this Section 2.2 as "confidential," the Contractor shall keep the information confidential and shall not disclose it to any other person. However, the Contractor may disclose "confidential" information, after seven (7) days' notice to the Owner, where disclosure is required by law, including a subpoena or other form of compulsory legal process issued by a court or governmental entity, or by court or arbitrator(s) order. The Contractor may also disclose "confidential" information to its employees, consultants, sureties, Subcontractors and their employees, Sub-subcontractors, and others who need to know the content of such information solely and exclusively for the Project and who agree to maintain the confidentiality of such information.

### § 2.3 Information and Services Required of the Owner

**§ 2.3.1** Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.3.2** The Owner shall retain an architect lawfully licensed to practice architecture, or an entity lawfully practicing architecture, in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 2.3.3** If the employment of the Architect terminates, the Owner shall employ a successor to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                (1949262673)

**§ 2.3.4** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.3.5** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.3.6** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

**§ 2.4 Owner's Right to Stop the Work**
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

**§ 2.5 Owner's Right to Carry Out the Work**
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such default or neglect. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect and the Architect may, pursuant to Section 9.5.1, withhold or nullify a Certificate for Payment in whole or in part, to the extent reasonably necessary to reimburse the Owner for the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect, or failure. If current and future payments are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner. If the Contractor disagrees with the actions of the Owner or the Architect, or the amounts claimed as costs to the Owner, the Contractor may file a Claim pursuant to Article 15.

**ARTICLE 3   CONTRACTOR**
**§ 3.1 General**
**§ 3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**§ 3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

**§ 3.1.3** The Contractor shall not be relieved of its obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

**§ 3.2 Review of Contract Documents and Field Conditions by Contractor**
**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed, and correlated personal observations with requirements of the Contract Documents.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.3.4, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                    (1949262673)

**12**

obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall submit Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner, subject to Section 15.1.7, as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

### § 3.3 Supervision and Construction Procedures
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work under the Contract. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences, or procedures, the Contractor shall evaluate the jobsite safety thereof and shall be solely responsible for the jobsite safety of such means, methods, techniques, sequences, or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely notice to the Owner and Architect, and shall propose alternative means, methods, techniques, sequences, or procedures. The Architect shall evaluate the proposed alternative solely for conformance with the design intent for the completed construction. Unless the Architect objects to the Contractor's proposed alternative, the Contractor shall perform the Work using its alternative means, methods, techniques, sequences, or procedures.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

### § 3.4 Labor and Materials
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**§ 3.4.2** Except in the case of minor changes in the Work approved by the Architect in accordance with Section 3.12.8 or ordered by the Architect in accordance with Section 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order or Construction Change Directive.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                      (1949262673)

**13**

**§ 3.4.4** In the event of significant delay or price increase of material, equipment, or energy occurring during the performance of this Contract through no fault of the Contractor, and which could not be avoided through reasonable methods, the Contract Time and Sum shall be equitably adjusted by Change Order in accordance with the procedures of the Contract. A change in price of an item of material, equipment or energy will be considered significant when the price of an item increases 10% between the date of this Contract and the date of delivery of the material.

### § 3.5 Warranty

**§ 3.5.1** The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§ 3.5.2** All material, equipment, or other special warranties required by the Contract Documents shall be issued in the name of the Owner, or shall be transferable to the Owner, and shall commence in accordance with Section 9.8.4.

### § 3.6 Taxes

The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

### § 3.7 Permits, Fees, Notices and Compliance with Laws

**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

### § 3.7.4 Concealed or Unknown Conditions

If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than 14 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend that an equitable adjustment be made in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may submit a Claim as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                     (1949262673)

continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

### § 3.8 Allowances
**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,

.1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit, and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3    whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

### § 3.9 Superintendent
**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the name and qualifications of a proposed superintendent. Within 14 days of receipt of the information, the Architect may notify the Contractor, stating whether the Owner or the Architect (1) has reasonable objection to the proposed superintendent or (2) requires additional time for review. Failure of the Architect to provide notice within the 14-day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.

### § 3.10 Contractor's Construction and Submittal Schedules
**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall contain detail appropriate for the Project, including (1) the date of commencement of the Work, interim schedule milestone dates, and the date of Substantial Completion; (2) an apportionment of the Work by construction activity; and (3) the time required for completion of each portion of the Work. The schedule shall provide for the orderly progression of the Work to completion and shall not exceed time limits current under the Contract Documents. The schedule shall be revised at appropriate intervals as required by the conditions of the Work and Project.

**§ 3.10.2** The Contractor, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, shall submit a submittal schedule for the Architect's approval. The Architect's approval shall not be unreasonably delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, or fails to provide submittals in accordance with the approved submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**
(1949262673)

**§ 3.11 Documents and Samples at the Site**
The Contractor shall make available, at the Project site, the Contract Documents, including Change Orders, Construction Change Directives, and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and the approved Shop Drawings, Product Data, Samples, and similar required submittals. These shall be in electronic form or paper copy, available to the Architect and Owner, and delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

**§ 3.12 Shop Drawings, Product Data and Samples**
**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules, and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier, or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams, and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment, or workmanship, and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples, and similar submittals are not Contract Documents. Their purpose is to demonstrate how the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve, and submit to the Architect, Shop Drawings, Product Data, Samples, and similar submittals required by the Contract Documents, in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of Separate Contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples, and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples, or similar submittals, until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from the requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples, or similar submittals, unless the Contractor has specifically notified the Architect of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples, or similar submittals, by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples, or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such notice, the Architect's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

User Notes:                                                                                                                                                                                    (1949262673)

for construction means, methods, techniques, sequences, and procedures. The Contractor shall not be required to provide professional services in violation of applicable law.

§ 3.12.10.1 If professional design services or certifications by a design professional related to systems, materials, or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall be entitled to rely upon the adequacy and accuracy of the performance and design criteria provided in the Contract Documents. The Contractor shall cause such services or certifications to be provided by an appropriately licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings, and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work, designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy and accuracy of the services, certifications, and approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor the performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review and approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.

§ 3.12.10.2 If the Contract Documents require the Contractor's design professional to certify that the Work has been performed in accordance with the design criteria, the Contractor shall furnish such certifications to the Architect at the time and in the form specified by the Architect.

## § 3.13 Use of Site
The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, lawful orders of public authorities, and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

## § 3.14 Cutting and Patching
§ 3.14.1 The Contractor shall be responsible for cutting, fitting, or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting, or patching shall be restored to the condition existing prior to the cutting, fitting, or patching, unless otherwise required by the Contract Documents.

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or Separate Contractors by cutting, patching, or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter construction by the Owner or a Separate Contractor except with written consent of the Owner and of the Separate Contractor. Consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold, from the Owner or a Separate Contractor, its consent to cutting or otherwise altering the Work.

## § 3.15 Cleaning Up
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials and rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery, and surplus materials from and about the Project.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the Owner shall be entitled to reimbursement from the Contractor.

## § 3.16 Access to Work
The Contractor shall provide the Owner and Architect with access to the Work in preparation and progress wherever located.

## § 3.17 Royalties, Patents and Copyrights
The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for defense or loss when a particular design, process, or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings,

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**User Notes:**                                                                                              (1949262673)

**17**

Specifications, or other documents prepared by the Owner or Architect. However, if an infringement of a copyright or patent is discovered by, or made known to, the Contractor, the Contractor shall be responsible for the loss unless the information is promptly furnished to the Architect.

### § 3.18 Indemnification

**§ 3.18.1** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 3.18.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation, or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts, or other employee benefit acts.

## ARTICLE 4    ARCHITECT

### § 4.1 General

**§ 4.1.1** The Architect is the person or entity retained by the Owner pursuant to Section 2.3.2 and identified as such in the Agreement.

**§ 4.1.2** Duties, responsibilities, and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified, or extended without written consent of the Owner, Contractor, and Architect. Consent shall not be unreasonably withheld.

### § 4.2 Administration of the Contract

**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and promptly report to the Owner (1) known deviations from the Contract Documents, (2) known deviations from the most recent construction schedule submitted by the Contractor, and (3) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of, and will not be responsible for acts or omissions of, the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 Communications

The Owner and Contractor shall include the Architect in all communications that relate to or affect the Architect's services or professional responsibilities. The Owner shall promptly notify the Architect of the substance of any direct communications between the Owner and the Contractor otherwise relating to the Project. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**User Notes:**                                                                                                                                                                  (1949262673)

suppliers shall be through the Contractor. Communications by and with Separate Contractors shall be through the Owner. The Contract Documents may specify other communication protocols.

§ **4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ **4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.4.2 and 13.4.3, whether or not the Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ **4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data, and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5, and 3.12. The Architect's review shall not constitute approval of safety precautions or of any construction means, methods, techniques, sequences, or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ **4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may order minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

§ **4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

§ **4.2.10** If the Owner and Architect agree, the Architect will provide one or more Project representatives to assist in carrying out the Architect's responsibilities at the site. The Owner shall notify the Contractor of any change in the duties, responsibilities and limitations of authority of the Project representatives.

§ **4.2.11** The Architect will respond to requests for information regarding the requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ **4.2.12** Interpretations of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such interpretations, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either, and will not be liable for results of interpretations or decisions rendered in good faith.

§ **4.2.13** The Architect's interpretations of matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

§ **4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                    (1949262673)

**ARTICLE 5   SUBCONTRACTORS**
**§ 5.1 Definitions**
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a Separate Contractor or the subcontractors of a Separate Contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 Award of Subcontracts and Other Contracts for Portions of the Work**
**§ 5.2.1** Unless otherwise stated in the Contract Documents, the Contractor, as soon as practicable after award of the Contract, shall notify the Owner and Architect of the persons or entities proposed for each principal portion of the Work, including those who are to furnish materials or equipment fabricated to a special design. Within 14 days of receipt of the information, the Architect may notify the Contractor whether the Owner or the Architect (1) has reasonable objection to any such proposed person or entity or (2) requires additional time for review. Failure of the Architect to provide notice within the 14-day period shall constitute notice of no reasonable objection.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person, or entity for one previously selected if the Owner or Architect makes reasonable objection to such substitution.

**§ 5.3 Subcontractual Relations**
By appropriate written agreement, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work that the Contractor, by these Contract Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies, and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.4 Contingent Assignment of Subcontracts**
**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that
   .1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor; and
   .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                        (1949262673)

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

**§ 5.4.3** Upon assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

## ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 Owner's Right to Perform Construction and to Award Separate Contracts
**§ 6.1.1** The term "Separate Contractor(s)" shall mean other contractors retained by the Owner under separate agreements. The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and with Separate Contractors retained under Conditions of the Contract substantially similar to those of this Contract, including those provisions of the Conditions of the Contract related to insurance and waiver of subrogation.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each Separate Contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with any Separate Contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to its construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, Separate Contractors, and the Owner until subsequently revised.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces or with Separate Contractors, the Owner or its Separate Contractors shall have the same obligations and rights that the Contractor has under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6, and Articles 10, 11, and 12.

### § 6.2 Mutual Responsibility
**§ 6.2.1** The Contractor shall afford the Owner and Separate Contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a Separate Contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly notify the Architect of apparent discrepancies or defects in the construction or operations by the Owner or Separate Contractor that would render it unsuitable for proper execution and results of the Contractor's Work. Failure of the Contractor to notify the Architect of apparent discrepancies or defects prior to proceeding with the Work shall constitute an acknowledgment that the Owner's or Separate Contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work. The Contractor shall not be responsible for discrepancies or defects in the construction or operations by the Owner or Separate Contractor that are not apparent.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a Separate Contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a Separate Contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 6.2.4** The Contractor shall promptly remedy damage that the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or Separate Contractor as provided in Section 10.2.5.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                    (1949262673)

**§ 6.2.5** The Owner and each Separate Contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 Owner's Right to Clean Up
If a dispute arises among the Contractor, Separate Contractors, and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

### ARTICLE 7   CHANGES IN THE WORK
### § 7.1 General
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**§ 7.1.2** A Change Order shall be based upon written agreement among the Owner, Contractor, and Architect. A Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor. An order for a minor change in the Work may be issued by the Architect alone.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents. The Contractor shall proceed promptly with changes in the Work, unless otherwise provided in the Change Order, Construction Change Directive, or order for a minor change in the Work.

### § 7.2 Change Orders
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor, and Architect stating their agreement upon all of the following:
.1      The change in the Work;
.2      The amount of the adjustment, if any, in the Contract Sum; and
.3      The extent of the adjustment, if any, in the Contract Time.

### § 7.3 Construction Change Directives
**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions, or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
.1      Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
.2      Unit prices stated in the Contract Documents or subsequently agreed upon;
.3      Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
.4      As provided in Section 7.3.4.

**§ 7.3.4** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.4 shall be limited to the following:

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**User Notes:**                                                                                                                          (1949262673)

**22**

.1    Costs of labor, including applicable payroll taxes, fringe benefits required by agreement or custom, workers' compensation insurance, and other employee costs approved by the Architect;

.2    Costs of materials, supplies, and equipment, including cost of transportation, whether incorporated or consumed;

.3    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    Costs of premiums for all bonds and insurance, permit fees, and sales, use, or similar taxes, directly related to the change; and

.5    Costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.5** If the Contractor disagrees with the adjustment in the Contract Time, the Contractor may make a Claim in accordance with applicable provisions of Article 15.

**§ 7.3.6** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.  Notwithstanding the forgoing, Contractor shall have no obligation to proceed with any change in the Work pursuant to a Construction Change Directive if the Owner is then delinquent in the payment of any undisputed amounts owed to Contractor or prior Construction Change Directives are then still unresolved.

**§ 7.3.7** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

**§ 7.4 Minor Changes in the Work**
The Architect may order minor changes in the Work that are consistent with the intent of the Contract Documents and do not involve an adjustment in the Contract Sum or an extension of the Contract Time. The Architect's order for minor changes shall be in writing. If the Contractor believes that the proposed minor change in the Work will affect the Contract Sum or Contract Time, the Contractor shall notify the Architect and shall not proceed to implement the change in the Work. If the Contractor performs the Work set forth in the Architect's order for a minor change without prior notice to the Architect that such change will affect the Contract Sum or Contract Time, the Contractor waives any adjustment to the Contract Sum or extension of the Contract Time.

**ARTICLE 8    TIME**
**§ 8.1 Definitions**
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                    (1949262673)

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

**§ 8.2 Progress and Completion**
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement, the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, commence the Work prior to the effective date of insurance required to be furnished by the Contractor and Owner.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**§ 8.3 Delays and Extensions of Time**
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by (1) an act or neglect of the Owner or Architect, of an employee or agent of either, or of a Separate Contractor; (2) by changes ordered in the Work; (3) by labor disputes, fire, unusual delay in deliveries, unavoidable casualties, adverse weather conditions documented in accordance with Section 15.1.6.2, or other causes beyond the Contractor's control and could not be avoided through reasonable measures; (4) by delay authorized by the Owner pending mediation and binding dispute resolution; (5) an act or neglect of public utilities or of local, state or federal governments affecting the Work (provided that Contractor shall continue all possible work at the site not subject to such government action) or (6) by other causes that the Contractor asserts, and the Architect determines, justify delay, then the Contract Time and Sum shall be increased for such reasonable time and amount as the parties shall agree, but only to the extent (1) such delay impacts the critical path of the Project schedule, and/or (2) such delay will prevent the Contractor from achieving Substantial Completion within the Contract Time.

**§ 8.3.1.1** In addition to the delays identified in Section 8.3.1, and except as otherwise set forth herein, if the Contractor is delayed at any time in the commencement or progress of the Work resulting from a pandemic, such as COVID-19, including but not limited to delays caused by material shortages, labor/manpower shortages or restrictions, fabrication and production delays, which delays arise after this Agreement is executed and which could not have been foreseen by the Contractor at the time of execution of the Agreement, the Contractor may be entitled to a Change Order in accordance with Article 7 for an increase in the Contract Time and/or Contract Sum.  Contractor agrees to use all reasonable efforts to shorten and minimize the impacts of any such delays."

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

**ARTICLE 9   PAYMENTS AND COMPLETION**
**§ 9.1 Contract Sum**
**§ 9.1.1** The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

**§ 9.1.2** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed so that application of such unit prices to the actual quantities causes substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 9.2 Schedule of Values**
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit a schedule of values to the Architect before the first Application for Payment, allocating the entire Contract Sum to the various portions of the Work. The schedule of values shall be prepared in the form, and supported by the data to substantiate its accuracy, required by the Architect. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment. Any changes to the schedule of values shall be submitted to the Architect and supported by such data to substantiate its accuracy as the Architect may require, and

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                                    (1949262673)

unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's subsequent Applications for Payment.

### § 9.3 Applications for Payment

**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2, for completed portions of the Work. The application shall be notarized, if required, and supported by all data substantiating the Contractor's right to payment that the Owner or Architect require, such as copies of requisitions, and releases and waivers of liens from Subcontractors and suppliers, and shall reflect retainage if provided for in the Contract Documents.

**§ 9.3.1.1** As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage, and transportation to the site, for such materials and equipment stored off the site.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information, and belief, be free and clear of liens, claims, security interests, or encumbrances, in favor of the Contractor, Subcontractors, suppliers, or other persons or entities that provided labor, materials, and equipment relating to the Work.

### § 9.4 Certificates for Payment

**§ 9.4.1** The Architect will, within seven days after receipt of the Contractor's Application for Payment, either (1) issue to the Owner a Certificate for Payment in the full amount of the Application for Payment, with a copy to the Contractor; or (2) issue to the Owner a Certificate for Payment for such amount as the Architect determines is properly due, and notify the Contractor and Owner of the Architect's reasons for withholding certification in part as provided in Section 9.5.1; or (3) withhold certification of the entire Application for Payment, and notify the Contractor and Owner of the Architect's reason for withholding certification in whole as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data in the Application for Payment, that, to the best of the Architect's knowledge, information, and belief, the Work has progressed to the point indicated, the quality of the Work is in accordance with the Contract Documents, and that the Contractor is entitled to payment in the amount certified. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion, and to specific qualifications expressed by the Architect. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work; (2) reviewed construction means, methods, techniques, sequences, or procedures; (3) reviewed copies of requisitions received from Subcontractors and suppliers and other data requested by the Owner to substantiate the Contractor's right to payment; or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**Init.**

**/**

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**25**

**User Notes:**                                                                                                                              (1949262673)

## § 9.5 Decisions to Withhold Certification

**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of

    .1    defective Work not remedied;
    .2    third party claims filed or reasonable evidence indicating probable filing of such claims, unless security acceptable to the Owner is provided by the Contractor;
    .3    failure of the Contractor to make payments properly to Subcontractors or suppliers for labor, materials or equipment;
    .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;
    .5    damage to the Owner or a Separate Contractor;
    .6    reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
    .7    repeated failure to carry out the Work in accordance with the Contract Documents.

**§ 9.5.2** When either party disputes the Architect's decision regarding a Certificate for Payment under Section 9.5.1, in whole or in part, that party may submit a Claim in accordance with Article 15.

**§ 9.5.3** When the reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.5.4** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or supplier to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Contractor shall reflect such payment on its next Application for Payment.

## § 9.6 Progress Payments

**§ 9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**§ 9.6.2** The Contractor shall pay each Subcontractor, no later than seven days after receipt of payment from the Owner, the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors and suppliers to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay, or to see to the payment of money to, a Subcontractor or supplier, except as may otherwise be required by law.

**§ 9.6.5** The Contractor's payments to suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1949022673)

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors or provided by suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, create any fiduciary liability or tort liability on the part of the Contractor for breach of trust, or entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.6.8** Provided the Owner has fulfilled its payment obligations under the Contract Documents, the Contractor shall defend and indemnify the Owner from all loss, liability, damage or expense, including reasonable attorney's fees and litigation expenses, arising out of any lien claim or other claim for payment by any Subcontractor or supplier of any tier. Upon receipt of notice of a lien claim or other claim for payment, the Owner shall notify the Contractor. If approved by the applicable court, when required, the Contractor may substitute a surety bond for the property against which the lien or other claim for payment has been asserted.

### § 9.7 Failure of Payment
*(Paragraph deleted)*
Payments due pursuant to this Agreement shall be governed by Chapter 28 of the Texas Property Code.
### § 9.8 Substantial Completion
**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion; establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance; and fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in the Certificate. Upon such acceptance, and consent of surety if any, the Owner shall make payment of retainage applying to the Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

### § 9.9 Partial Occupancy or Use
**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                     (1949262673)

portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor, and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

### § 9.10 Final Completion and Final Payment

**§ 9.10.1** Upon receipt of the Contractor's notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection. When the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect, (3) a written statement that the Contractor knows of no reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment, (5) documentation of any special warranties, such as manufacturers' warranties or specific Subcontractor warranties, and (6) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts and releases and waivers of liens, claims, security interests, or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien, claim, security interest, or encumbrance. If a lien, claim, security interest, or encumbrance remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging the lien, claim, security interest, or encumbrance, including all costs and reasonable attorneys' fees.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed, corrected, and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of the surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of Claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
    **.1**    liens, Claims, security interests, or encumbrances arising out of the Contract and unsettled;
    **.2**    failure of the Work to comply with the requirements of the Contract Documents;
    **.3**    terms of special warranties required by the Contract Documents; or
    **.4**    audits performed by the Owner, if permitted by the Contract Documents, after final payment.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor, or a supplier, shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

Init.

/

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:

(1949262673)

## ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY
### § 10.1 Safety Precautions and Programs
The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.

### § 10.2 Safety of Persons and Property
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to

.1      employees on the Work and other persons who may be affected thereby;

.2      the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody, or control of the Contractor, a Subcontractor, or a Sub-subcontractor; and

.3      other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures, and utilities not designated for removal, relocation, or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with, and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities, bearing on safety of persons or property or their protection from damage, injury, or loss.

**§ 10.2.3** The Contractor shall implement, erect, and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards; promulgating safety regulations; and notifying the owners and users of adjacent sites and utilities of the safeguards.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment, or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3. The Contractor may make a Claim for the cost to remedy the damage or loss to the extent such damage or loss is attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

### § 10.2.8 Injury or Damage to Person or Property
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, notice of the injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

### § 10.3 Hazardous Materials and Substances
**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials or substances. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

User Notes:                                                                                         (1949262673)

polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and notify the Owner and Architect of the condition.

**§ 10.3.2** Upon receipt of the Contractor's notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of the material or substance or who are to perform the task of removal or safe containment of the material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable additional costs of shutdown, delay, and start-up.

**§ 10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss, or expense is due to the fault or negligence of the party seeking indemnity.

**§ 10.3.4** The Owner shall not be responsible under this Section 10.3 for hazardous materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for hazardous materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall reimburse the Owner for the cost and expense the Owner incurs (1) for remediation of hazardous materials or substances the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall reimburse the Contractor for all cost and expense thereby incurred.

**§ 10.4 Emergencies**
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury, or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

**ARTICLE 11    INSURANCE**
**§ 11.1 Contractor's Insurance**
**§ 11.1.1** The Contractor shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Contractor shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located. The Owner, Architect, and Architect's consultants shall be named as additional insureds under the Contractor's commercial general liability policy or as otherwise described in the Contract Documents.

**§ 11.1.2** Not Used

**§ 11.1.3 Not Used**

---

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**Init.**

/

**User Notes:**

(1949262673)

**30**

**§ 11.1.4 Notice of Cancellation or Expiration of Contractor's Required Insurance.** Within three (3) business days of the date the Contractor becomes aware of an impending or actual cancellation or expiration of any insurance required by the Contract Documents, the Contractor shall provide notice to the Owner of such impending or actual cancellation or expiration (10 days in the event of nonpayment). Upon receipt of notice from the Contractor, the Owner shall, unless the lapse in coverage arises from an act or omission of the Owner, have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by the Contractor. The furnishing of notice by the Contractor shall not relieve the Contractor of any contractual obligation to provide any required coverage.

**§ 11.2 Owner's Insurance**
**§ 11.2.1** The Owner shall purchase and maintain insurance of the types and limits of liability, containing the endorsements, and subject to the terms and conditions, as described in the Agreement or elsewhere in the Contract Documents. The Owner shall purchase and maintain the required insurance from an insurance company or insurance companies lawfully authorized to issue insurance in the jurisdiction where the Project is located.

**§ 11.2.2 Failure to Purchase Required Property Insurance.** If the Owner fails to purchase and maintain the required property insurance, with all of the coverages and in the amounts described in the Agreement or elsewhere in the Contract Documents, the Owner shall inform the Contractor in writing prior to commencement of the Work. Upon receipt of notice from the Owner, the Contractor may delay commencement of the Work and may obtain insurance that will protect the interests of the Contractor, Subcontractors, and Sub-Subcontractors in the Work. When the failure to provide coverage has been cured or resolved, the Contract Sum and Contract Time shall be equitably adjusted. In the event the Owner fails to procure coverage, the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent the loss to the Owner would have been covered by the insurance to have been procured by the Owner. The cost of the insurance shall be charged to the Owner by a Change Order. If the Owner does not provide written notice, and the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain the required insurance, the Owner shall reimburse the Contractor for all reasonable costs and damages attributable thereto.

**§ 11.2.3 Notice of Cancellation or Expiration of Owner's Required Property Insurance.** Within three (3) business days of the date the Owner becomes aware of an impending or actual cancellation or expiration of any property insurance required by the Contract Documents, the Owner shall provide notice to the Contractor of such impending or actual cancellation or expiration. Unless the lapse in coverage arises from an act or omission of the Contractor: (1) the Contractor, upon receipt of notice from the Owner, shall have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by either the Owner or the Contractor; (2) the Contract Time and Contract Sum shall be equitably adjusted; and (3) the Owner waives all rights against the Contractor, Subcontractors, and Sub-subcontractors to the extent any loss to the Owner would have been covered by the insurance had it not expired or been cancelled. If the Contractor purchases replacement coverage, the cost of the insurance shall be charged to the Owner by an appropriate Change Order. The furnishing of notice by the Owner shall not relieve the Owner of any contractual obligation to provide required insurance.

**§ 11.3 Waivers of Subrogation**
**§ 11.3.1** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents, and employees, each of the other; (2) the Architect and Architect's consultants; and (3) Separate Contractors, if any, and any of their subcontractors, sub-subcontractors, agents, and employees, for damages caused by fire, or other causes of loss, to the extent those losses are covered by property insurance required by the Agreement or other property insurance applicable to the Project, except such rights as they have to proceeds of such insurance. The Owner or Contractor, as appropriate, shall require similar written waivers in favor of the individuals and entities identified above from the Architect, Architect's consultants, Separate Contractors, subcontractors, and sub-subcontractors. The policies of insurance purchased and maintained by each person or entity agreeing to waive claims pursuant to this section 11.3.1 shall not prohibit this waiver of subrogation. This waiver of subrogation shall be effective as to a person or entity (1) even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, (2) even though that person or entity did not pay the insurance premium directly or indirectly, or (3) whether or not the person or entity had an insurable interest in the damaged property.

**§ 11.3.2** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                         (1949262673)

31

Project during the construction period, to the extent permissible by such policies, the Owner waives all rights in accordance with the terms of Section 11.3.1 for damages caused by fire or other causes of loss covered by this separate property insurance.

## § 11.4 Loss of Use, Business Interruption, and Delay in Completion Insurance
The Owner, at the Owner's option, may purchase and maintain insurance that will protect the Owner against loss of use of the Owner's property, or the inability to conduct normal operations, due to fire or other causes of loss. The Owner waives all rights of action against the Contractor and Architect for loss of use of the Owner's property, due to fire or other hazards however caused.

## §11.5 Adjustment and Settlement of Insured Loss
**§ 11.5.1** A loss insured under the property insurance required by the Agreement shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.5.2. The Owner shall pay the Architect and Contractor their just shares of insurance proceeds received by the Owner, and by appropriate agreements the Architect and Contractor shall make payments to their consultants and Subcontractors in similar manner.

**§ 11.5.2** Prior to settlement of an insured loss, the Owner shall notify the Contractor of the terms of the proposed settlement as well as the proposed allocation of the insurance proceeds. The Contractor shall have 14 days from receipt of notice to object to the proposed settlement or allocation of the proceeds. If the Contractor does not object, the Owner shall settle the loss and the Contractor shall be bound by the settlement and allocation. Upon receipt, the Owner shall deposit the insurance proceeds in a separate account and make the appropriate distributions. Thereafter, if no other agreement is made or the Owner does not terminate the Contract for convenience, the Owner and Contractor shall execute a Change Order for reconstruction of the damaged or destroyed Work in the amount allocated for that purpose. If the Contractor timely objects to either the terms of the proposed settlement or the allocation of the proceeds, the Owner may proceed to settle the insured loss, and any dispute between the Owner and Contractor arising out of the settlement or allocation of the proceeds shall be resolved pursuant to Article 15. Pending resolution of any dispute, the Owner may issue a Construction Change Directive for the reconstruction of the damaged or destroyed Work.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 Uncovering of Work
**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, the Contractor shall be entitled to an equitable adjustment to the Contract Sum and Contract Time as may be appropriate. If such Work is not in accordance with the Contract Documents, the costs of uncovering the Work, and the cost of correction, shall be at the Contractor's expense.

### § 12.2 Correction of Work
### § 12.2.1 Before Substantial Completion
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, discovered before Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 After Substantial Completion
**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of any applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of notice from the Owner to do so, unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                                      (1949262673)

During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.5.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction of the Owner or Separate Contractors, whether completed or partially completed, caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

**§ 12.3 Acceptance of Nonconforming Work**
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

**ARTICLE 13    MISCELLANEOUS PROVISIONS**
**§ 13.1 Governing Law**
The Contract shall be governed by the laws of the State of Texas. If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

**§ 13.2 Successors and Assigns**
**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns, and legal representatives to covenants, agreements, and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate the assignment.

**§ 13.3 Rights and Remedies**
**§ 13.3.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights, and remedies otherwise imposed or available by law.

**§ 13.3.2** No action or failure to act by the Owner, Architect, or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed upon in writing.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**Init.**

**/**

User Notes:                                                                                              (1949262673)

## § 13.4 Tests and Inspections

**§ 13.4.1** Tests, inspections, and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules, and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections, and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections, and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections, or approvals that do not become requirements until after bids are received or negotiations concluded. The Owner shall directly arrange and pay for tests, inspections, or approvals where building codes or applicable laws or regulations so require.

**§ 13.4.2** If the Architect, Owner, or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection, or approval not included under Section 13.4.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection, or approval, by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.4.3, shall be at the Owner's expense.

**§ 13.4.3** If procedures for testing, inspection, or approval under Sections 13.4.1 and 13.4.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure, including those of repeated procedures and compensation for the Architect's services and expenses, shall be at the Contractor's expense.

**§ 13.4.4** Required certificates of testing, inspection, or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**§ 13.4.5** If the Architect is to observe tests, inspections, or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**§ 13.4.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

## § 13.5 Interest

Payments due pursuant to this Agreement shall be governed by Chapter 28 of the Texas Property Code.

## ARTICLE 14    TERMINATION OR SUSPENSION OF THE CONTRACT

### § 14.1 Termination by the Contractor

**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, for any of the following reasons:

    **.1**    Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;

    **.2**    An act of government, such as a declaration of national emergency, that requires all Work to be stopped;

    **.3**    Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

    **.4**    The Owner has failed to furnish to the Contractor reasonable evidence as required by Section 2.2.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, their agents or employees, or any other persons or entities performing portions of the Work, repeated suspensions, delays, or interruptions of the entire Work by the Owner as described in Section 14.3, constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                      (1949262673)

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, as well as reasonable overhead and profit on Work not executed, and costs incurred by reason of such termination.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor, a Subcontractor, a Sub-subcontractor, or their agents or employees or any other persons or entities performing portions of the Work because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

### § 14.2 Termination by the Owner for Cause
**§ 14.2.1** The Owner may terminate the Contract if the Contractor

    **.1**    repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    **.2**    fails to make payment to Subcontractors or suppliers in accordance with the respective agreements between the Contractor and the Subcontractors or suppliers;

    **.3**    repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or

    **.4**    otherwise is guilty of material breach of a provision of the Contract Documents.

**§ 14.2.2** When any of the reasons described in Section 14.2.1 exist, and upon certification by the Architect that sufficient cause exists to justify such action, the Owner may, without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

    **.1**    Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

    **.2**    Accept assignment of subcontracts pursuant to Section 5.4; and

    **.3**    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

### § 14.3 Suspension by the Owner for Convenience
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work, in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay, or interruption under Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

    **.1**    that performance is, was, or would have been, so suspended, delayed, or interrupted, by another cause for which the Contractor is responsible; or

    **.2**    that an equitable adjustment is made or denied under another provision of the Contract.

### § 14.4 Termination by the Owner for Convenience
**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**§ 14.4.2** Upon receipt of notice from the Owner of such termination for the Owner's convenience, the Contractor shall

    **.1**    cease operations as directed by the Owner in the notice;

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                                                           (1949262673)

.2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Owner shall pay the Contractor for Work properly executed; costs incurred by reason of the termination, including costs attributable to termination of Subcontracts; and the termination fee, if any, set forth in the Agreement.

## ARTICLE 15   CLAIMS AND DISPUTES
### § 15.1 Claims
### § 15.1.1 Definition
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim. This Section 15.1.1 does not require the Owner to file a Claim in order to impose liquidated damages in accordance with the Contract Documents.

### § 15.1.2 Time Limits on Claims
The Owner and Contractor shall commence all Claims and causes of action against the other and arising out of or related to the Contract, whether in contract, tort, breach of warranty or otherwise, in accordance with the requirements of the binding dispute resolution method selected in the Agreement and within the period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all Claims and causes of action not commenced in accordance with this Section 15.1.2.

### § 15.1.3 Notice of Claims
**§ 15.1.3.1** Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party under this Section 15.1.3.1 shall be initiated within 90 days after occurrence of the event giving rise to such Claim or within 90 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.  However, nothing herein shall be construed to waive each party's duty to mitigate its damages.

**§ 15.1.3.2** Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party. In such event, no decision by the Initial Decision Maker is required.

### § 15.1.4 Continuing Contract Performance
**§ 15.1.4.1** Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**§ 15.1.4.2** The Contract Sum and Contract Time shall be adjusted in accordance with the Initial Decision Maker's decision, subject to the right of either party to proceed in accordance with this Article 15. The Architect will issue Certificates for Payment in accordance with the decision of the Initial Decision Maker.

### § 15.1.5 Claims for Additional Cost
If the Contractor wishes to make a Claim for an increase in the Contract Sum, notice as provided in Section 15.1.3 shall be given before proceeding to execute the portion of the Work that is the subject of the Claim. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

### § 15.1.6 Claims for Additional Time
**§ 15.1.6.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, notice as provided in Section 15.1.3 shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.

**User Notes:**

(1949262673)

**§ 15.1.6.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated, and had an adverse effect on the scheduled construction.

### § 15.1.7 Waiver of Claims for Consequential Damages

The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

.1      damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2      damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit, except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.7 shall be deemed to preclude assessment of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 Not Used.

*(Paragraphs deleted)*

### § 15.3 Mediation

**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.3.3 Not Used.**

**§ 15.3.4** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in Houston, Texas. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### § 15.4 Arbitration

**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. The Arbitration shall be conducted in Houston, Texas. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.4.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                          (1949262673)

**§ 15.4.2** The Arbitrator shall render a written award and, if requested by any party, a reasoned award The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.  The Parties also agree that the rights and obligations set forth in this provision shall survive termination of this Contract by either party, default of this Contract by either party, or substantial completion and payment of the entire cash Contract Price.

**§ 15.4.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement, shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**§ 15.4.4 Consolidation or Joinder**
**§ 15.4.4.1** Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

**§ 15.4.4.2** Subject to the rules of the American Arbitration Association or other applicable arbitration rules, either party may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

**§ 15.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as those of the Owner and Contractor under this Agreement.

AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                                            (1949262673)

# Additions and Deletions Report for

*AIA® Document A201® – 2017*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 12:37:40 ET on 05/26/2023.

**PAGE 1**

(Name and location or address)
RELLIS Data and Research Center
College Station, Texas

...

(Name, legal status and address)RELLIS Campus Data and Research Center, LLC
5010 Doss Road
Austin, Texas 78734

**THE ARCHITECT:**
**(Name, legal status and address)**

TBD
**PAGE 9**

**§  1.1.8  Initial  Decision  Maker**
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2. The Initial Decision Maker shall not show partiality to the Owner or Contractor and shall not be liable for results of interpretations or decisions rendered in good faith.

**PAGE 11**

**§ 2.2.1** Prior to commencement of the Work and upon Upon written request by the Contractor, the Owner shall furnish to the Contractor reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. The Contractor shall have no obligation to commence the Work until the Owner provides such evidence. If commencement of the Work is delayed under this Section 2.2.1, the Contract Time shall be extended appropriately.
**PAGE 14**

**§ 3.4.4** In the event of significant delay or price increase of material, equipment, or energy occurring during the performance of this Contract through no fault of the Contractor, and which could not be avoided through reasonable methods, the Contract Time and Sum shall be equitably adjusted by Change Order in accordance with the procedures of the Contract.  A change in price of an item of material, equipment or energy will be considered significant when the price of an item increases 10% between the date of this Contract and the date of delivery of the material.

**PAGE 19**

**§ 4.2.11** The Architect will interpret and decide matters concerning performance under, and requirements of, respond to requests for information regarding the requirements of the Contract Documents on written request of either the

---

Additions and Deletions Report for AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes: (1949262673)

Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 4.2.12** Interpretations ~~and decisions~~ of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. When making such ~~interpretations and decisions,~~ interpretations, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either, and will not be liable for results of interpretations or decisions rendered in good faith.

**§ 4.2.13** The Architect's ~~decisions on~~ interpretations of matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.
**PAGE 22**

**§ 7.1.2** A Change Order shall be based upon underlined written agreement among the Owner, Contractor, and Architect. A Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor. An order for a minor change in the Work may be issued by the Architect alone.
**PAGE 23**

**§ 7.3.6** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.  Notwithstanding the forgoing, Contractor shall have no obligation to proceed with any change in the Work pursuant to a Construction Change Directive if the Owner is then delinquent in the payment of any undisputed amounts owed to Contractor or prior Construction Change Directives are then still unresolved.
**PAGE 24**

**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by (1) an act or neglect of the Owner or Architect, of an employee or agent of either, or of a Separate Contractor; (2) by changes ordered in the Work; (3) by labor disputes, fire, unusual delay in deliveries, unavoidable casualties, adverse weather conditions documented in accordance with Section 15.1.6.2, or other causes beyond the Contractor's ~~control;~~ control and could not be avoided through reasonable measures; (4) by delay authorized by the Owner pending mediation and binding dispute resolution; ~~or (5)~~ (5) an act or neglect of public utilities or of local, state or federal governments affecting the Work (provided that Contractor shall continue all possible work at the site not subject to such government action) or (6) by other causes that the Contractor asserts, and the Architect determines, justify delay, then the Contract Time ~~shall be extended for such reasonable time as the Architect may determine.~~ and Sum shall be increased for such reasonable time and amount as the parties shall agree, but only to the extent (1) such delay impacts the critical path of the Project schedule, and/or (2) such delay will prevent the Contractor from achieving Substantial Completion within the Contract Time.

**§ 8.3.1.1** In addition to the delays identified in Section 8.3.1, and except as otherwise set forth herein, if the Contractor is delayed at any time in the commencement or progress of the Work resulting from a pandemic, such as COVID-19, including but not limited to delays caused by material shortages, labor/manpower shortages or restrictions, fabrication and production delays, which delays arise after this Agreement is executed and which could not have been foreseen by the Contractor at the time of execution of the Agreement, the Contractor may be entitled to a Change Order in accordance with Article 7 for an increase in the Contract Time and/or Contract Sum.  Contractor agrees to use all reasonable efforts to shorten and minimize the impacts of any such delays."
**PAGE 27**

~~If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents, the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Contract Documents.~~
Payments due pursuant to this Agreement shall be governed by Chapter 28 of the Texas Property Code.
**PAGE 30**

Additions and Deletions Report for AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**

(1949262673)

## ~~ARTICLE 11   INSURANCE AND BONDS~~
## ARTICLE 11   INSURANCE

### § 11.1 Contractor's Insurance ~~and Bonds~~

...

**§ 11.1.2** ~~The Contractor shall provide surety bonds of the types, for such penal sums, and subject to such terms and conditions as required by the Contract Documents. The Contractor shall purchase and maintain the required bonds from a company or companies lawfully authorized to issue surety bonds in the jurisdiction where the Project is located.~~Not Used

**§ 11.1.3** ~~Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.~~**Not Used**

**§ 11.1.4 Notice of Cancellation or Expiration of Contractor's Required Insurance.** Within three (3) business days of the date the Contractor becomes aware of an impending or actual cancellation or expiration of any insurance required by the Contract Documents, the Contractor shall provide notice to the Owner of such impending or actual cancellation or ~~expiration.~~ expiration (10 days in the event of nonpayment). Upon receipt of notice from the Contractor, the Owner shall, unless the lapse in coverage arises from an act or omission of the Owner, have the right to stop the Work until the lapse in coverage has been cured by the procurement of replacement coverage by the Contractor. The furnishing of notice by the Contractor shall not relieve the Contractor of any contractual obligation to provide any required coverage.

PAGE 33

The Contract shall be governed by the ~~law of the place where the Project is located, excluding that jurisdiction's choice of law rules.~~ laws of the State of Texas. If the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.

PAGE 34

Payments due ~~and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate the parties agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~pursuant to this Agreement shall be governed by Chapter 28 of the Texas Property Code.

PAGE 35

.4      otherwise is guilty of ~~substantial~~ material breach of a provision of the Contract Documents.

PAGE 36

**§ 15.1.3.1** Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party under this Section 15.1.3.1 shall be initiated within ~~21~~ 90 days after occurrence of the event giving rise to such Claim or within ~~21~~ 90 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. However, nothing herein shall be construed to waive each party's duty to mitigate its damages.

PAGE 37

### § 15.2 ~~Initial Decision~~Not Used.

**§ 15.2.1** ~~Claims, excluding those where the condition giving rise to the Claim is first discovered after expiration of the period for correction of the Work set forth in Section 12.2.2 or arising under Sections 10.3, 10.4, and 11.5, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim. If an initial decision has not been rendered within 30 days after the Claim has been referred to the Initial Decision Maker, the party asserting the Claim may demand mediation and binding dispute resolution without a decision having been rendered. Unless the Initial Decision Maker~~

Additions and Deletions Report for AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                    (1949262673)

~~and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.~~

~~**§ 15.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.~~

~~**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.~~

~~**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of the request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished, or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.~~

~~**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.~~

~~**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.~~

~~**§ 15.2.6.1** Either party may, within 30 days from the date of receipt of an initial decision, demand in writing that the other party file for mediation. If such a demand is made and the party receiving the demand fails to file for mediation within 30 days after receipt thereof, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.~~

~~**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.~~

~~**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.~~

**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the ~~Contract, except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.7,~~ Contract shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the ~~Contract, and filed with the person or entity administering the mediation.~~ Contract. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

Additions and Deletions Report for AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
User Notes:                                                                                                                    (1949262673)

**§ 15.3.3** ~~Either party may, within 30 days from the date that mediation has been concluded without resolution of the dispute or 60 days after mediation has been demanded without resolution of the dispute, demand in writing that the other party file for binding dispute resolution.  If such a demand is made and the party receiving the demand fails to file for binding dispute resolution within 60 days after receipt thereof, then both parties waive their rights to binding dispute resolution proceedings with respect to the initial decision.~~**Not Used.**

**§ 15.3.4** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in ~~the place where the Project is located, unless another location is mutually agreed upon.~~ Houston, Texas. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

...

**§ 15.4.1** If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. The Arbitration shall be conducted in ~~the place where the Project is located, unless another location is mutually agreed upon.~~ Houston, Texas. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.
**PAGE 38**

**§ 15.4.2** The Arbitrator shall render a written award and, if requested by any party, a reasoned award The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.  The Parties also agree that the rights and obligations set forth in this provision shall survive termination of this Contract by either party, default of this Contract by either party, or substantial    completion    and    payment    of    the    entire    cash    Contract    Price.

Additions and Deletions Report for AIA Document A201 – 2017. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997, 2007 and 2017>. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This draft was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                          (1949262673)

# *Certification of Document's Authenticity*

*AIA® Document D401™ – 2003*

I,   , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 12:37:40 ET on 05/26/2023 under Order No. 2114323359 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2017, General Conditions of the Contract for Construction, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401 – 2003. Copyright © 1992 and 2003. All rights reserved. "The American Institute of Architects," "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are trademarks of The American Institute of Architects. This document was produced at 12:37:40 ET on 05/26/2023 under Order No.2114323359 which expires on 06/11/2023, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail docinfo@aiacontracts.com.
**User Notes:**                                                                                                      (1949262673)

1



September 21, 2023

Pontikes Development
11750 Katy Freeway, Suite 500
Katy, TX 77079

Dear Mr. Arnold,

Per the request of Rellis Data and Research Center LLC ("Borrower"), I would like to provide this letter of support as well as provide additional clarification to our conditional approval.

Vantage Bank Texas (the "Bank") has established the following equity requirements as part of our approval and based on these requirements there is no reservations that the Borrower can currently meet the following:

Upfront Equity
- The Bank has reviewed existing costs and invoices to account for the majority of equity due as already having been paid in advance.
- Remaining equity balance will be funded from cash balances in an existing deposit account with the Bank.
- The cash equity will be used to advance on construction costs prior to loan proceeds being released, until the full equity requirement is met. We will then fund the remaining project costs from loan draws accordingly.

We are pending an updated survey of the property for the original 15 acres but anticipate receiving this by mid-week next week.  Once received we can finalize the loan documents and expect to close in the first couple weeks of October.

Please do not hesitate to contact me with any questions, comments, or concerns.

Regards,

*Cody Cannon*

Cody Cannon
EVP, Houston Market President

**Exhibit B**

**S & P**

# SATTERFIELD & PONTIKES CONSTRUCTION, INC.

GENERAL CONTRACTORS / CONSTRUCTION MANAGEMENT / DESIGN BUILD

JIM MUSKA
GENERAL COUNSEL

(713) 996-1304
jmuska@satpon.com

June 13, 2025

**Via CM|RRR and Email: sam@rellisdrc.com**
RELLIS Campus Data and Research Center, LLC
Attn:  Sam Tenorio
5010 Doss Road
Austin, Texas 78734

Re:   **NOTICE OF INTENT TO SUSPEND WORK**
Contract:         AIA A133-2019 dated June 7, 2023
Contractor:      Satterfield & Pontikes Construction, Inc. (S&P)
Owner:            RELLIS Campus Data and Research Center, LLC
Project:           RELLIS Data and Research Center
                       College Station, Texas

Dear Messrs. Tenorio and Cannon:

I represent S&P.  As you are aware, the Owner has failed and refused to pay S&P for work it performed in the months of March, April and May of 2025. You have further represented you do not intend to pay for this work, and that you expect a subsequent owner of the Project to pay for this work. Neither S&P, nor its subcontractors, suppliers or vendors, agreed to defer payments owed by the Owner. S&P is, therefore, suspending performance due to the Owner's nonpayment effective June 23, 2025. Commencing that date, S&P will suspend supplying further labor, services, or materials until it is paid all amounts owed, plus costs for demobilization and remobilization. S&P will not be responsible for damages resulting from suspending work.

Sincerely,

/s/ Jim Muska
General Counsel

**Exhibit C**

RELLIS Data and Research Center
June 13, 2025
Page 2


cc:     Via CM|RRR and Email: Cody.Cannon@vantage.bank
        Vantage Bank
        Attn: Cody Cannon
        5151 San Felipe Street, Suite 730
        Houston, Texas, 77056

        Charlie Fote              [S&P]
        Sean Crozier             [S&P]
        Eric Blankenship         [S&P]
        Cecil Zachary            [S&P]
        Nic Flannery             [S&P]
        Michelle Barnett         [S&P]
        Brian Dean               [S&P]
        Michelle Hughart         [S&P]

COMPANY: RELLIES   PROJECT:
BANK: VBT   Loan # 85477
DRAW REQUEST FORM   2nd lien 86816
Date: 1/26/2022

## SOURCE OF FUNDS

| DESCRIPTION | BUDGET | REVISIONS | ADJUSTED BUDGET | DRAW #1-27 REQUEST | DRAW #28 REQUEST | DRAW #29 REQUEST | DRAW #30 REQUEST | DRAW #31 REQUEST | DRAW #32 REQUEST | DRAW #33 REQUEST | DRAW #34 REQUEST | DRAW #35 REQUEST | DRAW #36 REQUEST | DRAW #37 REQUEST | DRAW #38 REQUEST | DRAW #39 REQUEST | DRAW #40 REQUEST | DRAW #41 REQUEST | DRAW #42 REQUEST | DRAW #43 REQUEST | DRAW #44 REQUEST | DRAW #45 REQUEST | DRAW #46 REQUEST | BALANCE AVAILABLE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Construction Loan | $ 16,560,000.00 | | $ 16,560,000.00 | 7,783,634.98 | 751,637.80 | 53,758.15 | 17,526.75 | 1,339,180.69 | 1,876,771.48 | 1,232,808.40 | 816,646.86 | 934,168.01 | 78,963.34 | 891,244.21 | 100,675.98 | 92,156.53 | 224,043.40 | 109,169.54 | 149,997.58 | | 107,416.33 | | | $ (0.03) |
| 2nd lien | $ 1,000,000.00 | | $ 1,000,000.00 | | | | | | | | | | | | | | | | 196,478.66 | 352,249.34 | | 11,793.00 | 439,479.00 | |
| Equity | $ 5,400,779.00 | 11,476,437.39 | $ 16,877,216.39 | 5,843,767.55 | | | | | | | | | | | | | | | | | | | | $ 11,033,448.84 |
| TOTAL | $ 22,960,779.00 | 11,476,437.39 | $ 34,437,216.39 | $ 13,627,602.53 | $ 751,637.80 | $ 53,758.15 | $ 17,526.75 | $ 1,339,180.69 | $ 1,876,771.48 | $ 1,232,808.40 | $ 816,646.86 | $ 934,168.01 | $ 78,963.34 | $ 891,244.21 | $ 100,675.98 | $ 92,156.53 | $ 224,043.40 | $ 109,169.54 | $ 346,476.24 | $ 352,249.34 | $ 107,416.33 | $ 11,793.00 | $ 439,479.00 | $ 11,033,448.81 |
| | $ - | $ - | $ - | $ - | | | | | | | | | | | | | | | | | | | | |

## USE OF FUNDS

| DESCRIPTION | BUDGET | REVISIONS | ADJUSTED BUDGET | DRAW #1-28 REQUEST | DRAW #00 REQUEST | DRAW #29 REQUEST | DRAW #30 REQUEST | DRAW #31 REQUEST | DRAW #32 REQUEST | DRAW #33 REQUEST | DRAW #34 REQUEST | pay app#14/15 soft costs | DRAW #36 REQUEST | DRAW #37 REQUEST | DRAW #38 REQUEST | DRAW #39 REQUEST | DRAW #40 REQUEST | DRAW #41 REQUEST | DRAW #42 REQUEST | DRAW #43 REQUEST | DRAW #44 REQUEST | DRAW #44 REQUEST | DRAW #45 REQUEST | Equity needed to complete project |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SOFTCOST** | | | | | | | | | | | | | | | | | | | | | | | | |
| Architectural & Engineering | $ 1,135,530.00 | (29,070.29) | $ 1,106,459.71 | $ 902,858.04 | $ 23,964.15 | $ - | | | $ - | $ 5,849.10 | $ 13,622.26 | $ 68,797.60 | $ - | $ 26,689.97 | $ - | $ - | $ - | $ - | $ 5,585.77 | $ 59,092.82 | $ - | $ - | $ - | $ - |
| Commission Agent | $ 30,000.00 | (30,000.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Development Fee (Tenorio) | $ 450,000.00 | - | $ 450,000.00 | $ 450,000.00 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Development Fee (Wells) | $ 450,000.00 | (450,000.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Leasing Commissions | $ - | 420,000.00 | $ 420,000.00 | $ 420,000.00 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Legal | $ 205,313.00 | 1,317,124.57 | $ 1,522,437.57 | $ 823,644.03 | | $ - | | | $ - | $ 191,924.73 | $ - | $ 282,825.41 | $ - | $ - | $ - | $ - | $ 224,043.40 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Testing | $ 67,500.00 | (67,500.00) | $ - | - | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Permits & Fees | $ 40,500.00 | 35,807.00 | $ 76,307.00 | $ 76,307.00 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| GL & Prop Insurance | $ 50,000.00 | (50,000.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Marketing | $ - | - | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| General Contractors Fee | $ 931,355.00 | (931,355.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Overhead | $ 36,453.00 | (36,453.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Soft Cost Contingency | $ 49,333.00 | 233,212.00 | $ 282,545.00 | $ - | | $ - | | | $ - | $ - | $ - | $ 257,545.00 | $ - | $ 25,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Interest Carry | $ 298,174.00 | 740,808.30 | $ 1,038,982.30 | $ 226,889.10 | | $ 53,758.15 | $ 17,526.75 | | $ 125,534.34 | $ - | $ - | $ - | $ 78,963.34 | $ - | $ 100,675.98 | $ 92,156.53 | $ - | $ 109,169.54 | $ - | $ - | $ 107,416.33 | $ 11,793.00 | $ 115,099.24 | $ - |
| Financing Cost | $ 79,059.00 | (79,059.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Administration | $ - | 170,000.00 | $ 170,000.00 | $ 170,000.00 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Network Design | $ - | 2,158,490.50 | $ 2,158,490.50 | $ 2,158,490.50 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Consulting - HBC | $ - | 550,000.00 | $ 550,000.00 | $ 425,000.00 | | $ - | | | $ - | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 25,000.00 | $ 25,000.00 | $ - | $ - | $ - | $ - |
| **HARDCOST** | | | | | | | | | | | | | | | | | | | | | | | | |
| Phase 1 Shell | $ 9,475,000.00 | (7,779,011.35) | $ 1,695,988.65 | $ 1,695,988.65 | $ - | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| GC - Satterfield & Pontikes | $ 19,664,037.00 | 19,664,037.00 | $ 1,726,456.55 | $ 577,673.65 | $ - | $ - | | $ 1,339,180.69 | $ 1,751,237.14 | $ 860,034.57 | $ 628,024.60 | $ - | $ - | $ 839,554.24 | $ - | $ - | $ - | $ - | $ 315,890.47 | $ 268,156.52 | $ - | $ - | $ 324,379.76 | $ 11,033,448.81 |
| Interiors | $ 3,200,000.00 | (3,200,000.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| FF&E | $ 756,348.00 | (756,348.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Physical Security | $ 1,714,214.00 | (991,569.50) | $ 722,644.50 | $ 722,644.50 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Network Hardware | $ - | 653,528.85 | $ 653,528.85 | $ 653,528.85 | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Contingency Hard Cost | $ 1,992,000.00 | 933,795.31 | $ 2,925,795.31 | $ 2,175,795.31 | $ 150,000.00 | $ - | | | $ - | $ 150,000.00 | $ 150,000.00 | $ 300,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Fiber | $ 1,000,000.00 | - | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 2nd lien | $ 1,000,000.00 | (1,000,000.00) | $ - | | | $ - | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Grand Total** | $ 22,960,779.00 | 11,476,437.39 | $ 34,437,216.39 | $ 13,627,602.53 | $ 751,637.80 | $ 53,758.15 | $ 17,526.75 | $ 1,339,180.69 | $ 1,876,771.48 | $ 1,232,808.40 | $ 816,646.86 | $ 934,168.01 | $ 78,963.34 | $ 891,244.21 | $ 100,675.98 | $ 92,156.53 | $ 224,043.40 | $ 109,169.54 | $ 346,476.24 | $ 352,249.34 | $ 107,416.33 | $ 11,793.00 | $ 439,479.00 | $ 11,033,448.81 |
| | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | | | | | | | | | | $ - | $ - |

**Exhibit D**

## FIRST AMENDED
## AFFIDAVIT CLAIMING MECHANIC'S AND MATERIALMAN'S LIEN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BRAZOS | § |

### (LEASEHOLD INTEREST ONLY)

BEFORE ME, a notary public in and for the State of Texas, on this day personally appeared the undersigned, who being by me duly sworn, on oath states:

1.     My name is Jim Muska. I am the General Counsel of **Satterfield & Pontikes Construction, Inc.** ("Claimant"). I am over 18 years of age. I am competent and authorized to make this affidavit on Claimant's behalf. I have personal knowledge of the facts stated herein.

2.     Claimant's mailing and physical address is <u>11000 Equity Drive, Houston, Texas 77041.</u>

3.     Pursuant to an agreement between Claimant and RELLIS Campus Data and Research Center, LLC ("Leasehold Owner"), Claimant, as an original contractor, furnished labor and materials for improvements to the real property located in in Brazos County, Texas known as:

A FIELD NOTES DESCRIPTION OF 15.00 ACRES IN THE JAMES CURTIS JR. LEAGUE SURVEY, ABSTRACT 12, IN BRYAN, BRAZOS COUNTY, TEXAS, BEING A PORTION OF A CALLED 1991.39 ACRE TRACT OF LAND, DESCRIBED IN A DEED TO THE BOARD OF DIRECTORS OF THE AGRICULTURAL AND MECHANICAL COLLEGE OF TEXAS, RECORDED IN VOLUME 219, PAGE 201 OF THE DEED RECORDS OF BRAZOS COUNTY, TEXAS (DRBCT); SAID 15.00 ACRES BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING, at a 4" by 4" concrete type 1 TxDOT highway monument being the south corner of a called 1.56 acre right of way parcel (referred to as "parcel 3" in Brazos county highway project CSJ 01166-04-073) acquired by the State of Texas, acting through the State Highway and Public Transportation Commission recorded In Volume 1157, Page 889 Official Record of Brazos County, Texas (ORBCT) from which the northeast corner of said 1.56 parcel and the original northwest corner of a said 1991.39 acre tract bears, N 42° 34' 19" E, for a distance of 509.20 feet;

THENCE, continuing with the common line of the current State Highway 21 right of way per said TxDOT plans and the occupied northwest line of said 1991.39 acre remainder N 79° 36' 38" E, for a distance of 304.65 feet to a 4" by 4" concrete Type 1 TxDOT highway monument and N 75° 48' 43" E, for a distance of 1549.55 feet to a 1/2 inch iron rod with a plastic cap stamped "GESSNER" found on the

**Exhibit E**

southeast line of said State Highway 21, being the northeast corner of a called 11.499 acre Substation Ground Lease Site described in Volume 17297, Page 42 (Official Public Records of Brazos County, Texas) and on the occupied northwest line of said 1991.39 acres, for the west corner and POINT OF BEGINNING hereof;

THENCE, continuing with the common line of said current State Highway 21 right of way and said occupied northwest line of said 1991.39 acre remainder, N 75° 48' 43" E, for a distance of 775.30 feet to a 1/2 inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set for the north corner hereof, from which a 1/2 inch iron rod with a plastic cap stamped "GESSNER" found bears N 75° 48' 43" E, a distance of 777.55 feet;

THENCE, departing from the said State Highway 21 and through said 1991.39 acres for the following two (2) courses and distances;

1. S 13° 31' 09" E, for a distance of 641.64 feet to a 1/2 inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set; and

2. With a curve to the left, having a radius of 1,128.21 feet, an arc distance of 603.78 feet, a deft angle of 30° 39' 46", and a chord which bears S 35° 14' 03" W, a distance of 596.60 feet to a 1/2 inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set for the east corner of said 11.499 acre lease site and the south corner hereof;

THENCE, with the east lines of said 11.499 acre lease site for the following two (2) courses and distances:

1. N 65° 55' 48" W, for a distance of 412.26 feet to a 1/2 inch iron rod with a plastic cap stamped "GESSNER" found; and

2. N 13° 31' 09" W, for a distance of 774.45 feet to the POINT OF BEGINNING hereof and containing 15.00 acres, more or less.

and more commonly known as 833 Rellis Parkway, Bryan, Texas 77807, also known as the RELLIS Data and Research Center project (the "Property").

5. Claimant is an original contractor for such improvement, and furnished labor and materials for such improvement of the Property pursuant to a contract between Claimant and RELLIS Campus Data and Research Center, LLC the owner or reputed owner of the leasehold interest sought to be charged with a lien by Claimant. The last known address of RELLIS Campus Data and Research Center, LLC is 5010 Doss Road, Austin, Texas 78734.

6. The dates of Claimant's furnishing of labor and materials in Brazos County, Texas to the Property for which payment is requested are from March, April, and May of 2025.

7.      The amount claimed by Claimant for such materials is **FOUR MILLION, EIGHT HUNDRED SIXTY-NINE THOUSAND, FOUR HUNDRED EIGHT and 37/100 DOLLARS ($4,869,408.37)** (the "Lien Amount"), including 1,349,176.36 in retainage, which the Lien Amount is true, correct, and just, with all just and lawful offsets, payments, and credits known to Claimant allowed.

9.      Claimant claims a lien against the leasehold estate of RELLIS Campus Data and Research Center, LLC in the Property and improvements thereon in the amount shown above pursuant to Chapter 53 of the Property Code of the State of Texas and/or Article 16 Section 37 of the Texas Constitution and makes this sworn statement of claim in support thereof. Claimant also claims a lien on all removables the Claimant supplied. **This lien against the leasehold does not affect the rights of parties other than that of the Leasehold Owner. For avoidance of doubt, no claim is being asserted against any real property owned by The Texas A&M University System.**

10.     One (1) copy of this Affidavit is being sent by Certified Mail, Return Receipt Requested to the Leasehold Owner described above, addressed to the Leasehold Owner's last known address described above.

*[Signature page to follow]*

**SATTERFIELD & PONTIKES
CONSTRUCTION, INC.**

By: _____

JIM MUSKA, General Counsel

STATE OF TEXAS     §
                        §
COUNTY OF HARRIS    §

BEFORE ME, the undersigned authority, on this day personally appeared Jim Muska, General Counsel of Satterfield & Pontikes Construction, Inc. known to me to be the person whose name is subscribed to the foregoing instrument, who after being by me duly sworn acknowledged that the statements contained above are true and correct, that he executed same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of said corporation.

Given under my hand and seal of office, this 10th day of July, 2025.

KELLIE BETH EGGLESTON
Notary Public, State of Texas
Comm. Expires 06-27-2026
Notary ID 129854317

_____
Notary Public in and for the
STATE OF TEXAS
My commission expires: 6.27.26

AFTER RECORDING RETURN TO:
Ian P. Faria
Bradley Arant Boult Cummings LLP
600 Travis Street, Ste 5600
Houston, Texas 77002

**Brazos County**
**Karen McQueen**
**County Clerk**

**Instrument Number:**  1561884
Volume : 19974

ERecordings – Real Property

Recorded On: July 10, 2025 12:57 PM

Number of Pages: 5

**" Examined and Charged as Follows: "**

Total Recording: $41.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 1561884 |
| Receipt Number: | 20250710000087 |
| Recorded Date/Time: | July 10, 2025 12:57 PM |
| User: | Victoria L |
| Station: | Victoria Limon |

**Record and Return To:**

CSC Global

OPTION 3 ON PHONE



**STATE OF TEXAS**
**COUNTY OF BRAZOS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Public Records of Brazos County, Texas.

Karen McQueen
County Clerk
Brazos County, TX

## NOTICE OF FORECLOSURE SALE

Notice is hereby given of a public nonjudicial foreclosure sale.

<u>Property To Be Sold</u>.  The property to be sold is described as follows:

All the real property described in the below described recorded Deed of Trust, including but not necessarily limited to:

A FIELD NOTES DESCRIPTION OF 15.00 ACRES IN THE JAMES CURTIS JR. LEAGUE SURVEY, ABSTRACT 12, IN BRYAN, BRAZOS COUNTY, TEXAS, BEING A PORTION OF A CALLED 1991.39 ACRE TRACT OF LAND, DESCRIBED IN A DEED TO THE BOARD OF DIRECTORS OF THE AGRICULTURAL AND MECHANICAL COLLEGE OF TEXAS, RECORDED IN VOLUME 219, PAGE 201 OF THE DEED RECORDS FOF BRAZOS COUNTY, TEXAS (DRBCT); SAID 15.00 ACRES BEING MORE PARTICULARLY DESCRIBED BE METES AND BOUND AS FOLLOWS:

COMMENCING, at a 4" by 4" concrete Type 1 TxDOT highway monument being the south corner of a called 1.56 acre right of way of a parcel (referred to and "parcel 3" in Brazos County highway project CSJ 01166-04-073) acquired by the State of Texas, acting through the State Highway and Public Transportatio0n Commission recorded in Volume 1157, Page 889 Official Record of Brazos County, Texas (ORBCT), from which the northeast corner of said 1991.339 acre tract bears, N 42° 34' 19" E, for a distance of 509.20 feet;

THENCE, continuing with the common line of the current State Highway 21 right of way per said TxDOT plans and the occupied northwest line of said 1991.39 acre remainder N 79° 38' 38" E, for a distance of 304.65 feet to a 4" by 4" concrete Type 1 TxDOT highway monument and N 75° 48' 43" E, for a distance of 1549.55 feet to a ½ inch iron rod with a plastic cap stamped "GE55NER" found on the southeast line of said State Highway 21, being the northeast corner of a called 11.499 acre Substation Ground Lease Site described un Volume 17297, Page 42 (Official Public Records of Brazos County, Texas) and on the occupied northwest line of said 1991.39 acres, for the west corner and POINT OF BEGINNING hereof;

THENCE, continuing with the common line of said current State Highway 21 right of way and said occupied northwest line of said 1991.39 acre remainder, N 75° 48' 43" E, for distance of 775.30 feet to a ½ inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set for the north corner hereof, from which a ½ inch iron rods with a plastic cap stamped "GE55NER" found bears N 75° 48'43" E a distance of 777.55 feet;

THENCE, departing from the said State Highway 21 and through said 1991.39 acres for the following two (2) courses and distances:

1.  S 13°31'09" E, for a distance of 641.64 feet to a ½ inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set; and

2.  With a curve to the left, having radius of 1,128.21 feet, an arc distance of 603.78 feet, a delta angle of 30°39'46", and a chord which bears S 35°14'03" W, a distance of 596.60 feet to a ½ inch iron rod with a blue plastic cap stamped "KERR SURVEYING" set for the east corner of said 11.499 acre lease site and the south corner hereof;

THENCE, with the east lines of said 11.499 acre lease site for the following two (2) courses and distances:

1.  N 65°55'48" W, for a distance of 412.26 feet to a ½ inch iron rod with a plastic cup stamped "GESSNER" found; and

**Exhibit F**

2.  N 13°31'09" W, for a distance of 774.45 feet to the POINT OF BEGINNING hereof and containing 15.00 acres, more or less.

2.    Date, Time, and Place of Sale.        The sale is scheduled to be held at the following date, time, and place:

Date:  November 4, 2025

Time:  The sale shall begin no earlier than 11 A.M.   or no later than three hours thereafter. The sale shall be completed by no later than 2:00 P.M.

Place:  THE ATRIUM ON THE FIRST FLOOR OF THE ADMINISTRATION BUILDING AT 200 SOUTH TEXAS AVENUE, BRYAN, TEXAS 77803 or as designated by the County Commissioner's Office.

The deed of trust permits the beneficiary to postpone, withdraw, or reschedule the sale for another day.   In that case, the trustee or substitute trustee under the deed of trust need not appear at the date, time, and place of a scheduled sale to announce the postponement, withdrawal, or rescheduling. Notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code.   Such reposting or refiling may be after the date originally scheduled for this sale.

3.    Appointment of Substitute Trustee. The sale will be conducted by any of one of the following Substitute Trustees:

D. Wade Hayden, Michael W. Bitter,
Donald T. Brennan or David L. Cunningham
7750 Broadway
San Antonio, Bexar County, Texas 78209

James L. Hollerbach, Pete Florez, Zachary Florez,
Orlando Rosas or Bobby Brown
6700 N. New Braunfels Avenue
San Antonio, Bexar County, Texas 78209

4.    Terms of Sale. The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the deed of trust permitting the beneficiary thereunder to have the bid credited to the note up to the amount of the unpaid debt secured by the deed of trust at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the deed of trust, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust.   Prospective bidders are strongly urged

to examine the applicable property records to determine the nature and extent of such matters, if any.

5.     Type of Sale.  The sale is a nonjudicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by the Deed Of Trust, Security Agreement, Assignment of Rents and Leases and Financing Statement (as to Leasehold Interest) ("Deed of Trust"), dated October 31, 2023, executed by RELLIS CAMPUS DATA AND RESEARCH CENTER LLC, a Texas limited liability company and recorded in the office of the County Clerk of  Brazos County, Texas, on November 21, 2023, under Clerk's File No. 1516288. The sale is "As Is", and pursuant to the Texas Property Code § 51.009.

6.     Obligations Secured.  The deeds of trust provide that it secures the payment of the indebtedness and obligations therein described (collectively the "Obligations") including but not limited to the promissory note in the original principal amount of $16,560,000.00, executed by RELLIS CAMPUS DATA AND RESEARCH CENTER LLC, a Texas limited liability company and payable to the order of VANTAGE BANK and all other sums of indebtedness permitted by the deed of trust. VANTAGE BANK is the current owner and holder of the Obligations and the beneficiary under the deed of trust.

7.     Default and Request To Act. Default has occurred under the deed of trust, and the beneficiary has requested me, as one of the Substitute Trustees, to conduct this sale.   Notice is given that before the sale the beneficiary may appoint another person substitute trustee to conduct the sale.

## ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES.

**If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

DATED:     October 9, 2025

D. Wade Hayden, Substitute Trustee

STATE OF TEXAS                    §
COUNTY OF BEXAR                §

Before me, the undersigned Notary Public, on this day personally appeared D. Wade Hayden, Substitute Trustee, known to me to be the person whose name is subscribed to the

foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

YVONNE WAINWRIGHT
Notary Public, State of Texas
Comm. Expires 04-24-2029
Notary ID 135508445

Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Hayden & Cunningham, PLLC
Attn: D. Wade Hayden
7750 Broadway
San Antonio, Texas 78209