Received & Filed 10/29/2025 2:42 PM
Gabriel García, District Clerk
Brazos County, Texas
Lauren Lackey
Envelope# - 107439843

CAUSE NO. ___25-003074-CV-85___

| | | |
|---|---|---|
| SATTERFIELD & PONTIKES CONSTRUCTION, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | BRAZOS COUNTY, TEXAS |
| RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, VANTAGE BANK TEXAS, and SAMUEL TENORIO, individually, | § | |
| *Defendants.* | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S EXPEDITED DISCOVERY REQUESTS TO DEFENDANT RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC

To:   RELLIS Campus Data and Research Center, LLC, by serving its registered agent Registered Agents Inc., 5900 Balcones Dr., Suite 100, Austin, Texas 78731, or wherever it may be found.

Plaintiff Satterfield & Pontikes Construction, Inc. ("Plaintiff" or "S&P") serves the following expedited discovery pursuant to Texas Rules of Civil Procedure 190.4, 192–199, 196–198, and 205, and as authorized by the Court in connection with Plaintiff's Verified Application for Temporary Restraining Order and Temporary Injunction.  Given the imminent temporary-injunction hearing, Plaintiff requests responses and production on an expedited basis within five (5) days of service, or as otherwise ordered by the Court.

Defendant shall answer separately and fully, under oath as required, and shall produce responsive documents and electronically stored information ("ESI") as instructed below. Defendant shall verify answers to interrogatories under oath in compliance with Texas law. A business-records affidavit should accompany document productions intended for use at the temporary-injunction hearing.

Respectfully submitted,

COKINOS | YOUNG

/s/ *Gregory M. Cokinos*
GREGORY M. COKINOS
Texas Bar No. 04527250
CRAIG H. CLENDENIN
Texas Bar No. 04375000
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5500
Facsimile: (713) 535-5533
gcokinos@cokinoslaw.com
cclendenin@cokinoslaw.com

**Attorneys for Satterfield & Pontikes Construction, Inc.**

## DEFINITIONS AND INSTRUCTIONS

### A. DEFINITIONS

1. "You," "Your," and "Defendant" mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

2. "Project" means the RELLIS Data and Research Center project located in Brazos County, Texas, as described in Plaintiff's petition.

3. "S & P" means the Satterfield & Pontikes Construction, Inc., its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

4. "TAMU" means The Texas A&M University System, its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

5. "Contract" means the parties' AIA A133–2019 with incorporated A201–2017 General Conditions, together with all GMP Amendments, change orders, directives, addenda, and modifications.

6. "Loan" means any construction financing provided or committed by Vantage to or for RELLIS related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related notes, deeds of trust, assignments, guaranties, subordination agreements, consents, loan agreements, budgets, schedules of values, escrow agreements, and amendments, or any other agreements between Vantage and RELLIS or Tenorio.

7. "Draw," "Draw Request," or "Disbursement" means any request for, approval of, or release of Loan proceeds or owner funds related to the Project, including any revisions to the schedule of values ("SOV"), soft-cost allocations, or changes to budget categories.

8. "Trust Funds" means funds defined as trust funds under Chapter 162 of the Texas Property Code, including loan proceeds and owner funds paid to or for the benefit of Rellis for the improvement of the Project.

9. "SOV" means any schedule of values used for the Loan or the Project, including original and revised schedules and any allocations or re-allocations of Loan proceeds.

10. "Soft Costs" is defined as indirect expenses not directly tied to the physical construction of the Project, including fees for services, permits, and insurance, among others.

11. "Communications" means every manner of transmitting or receiving information, including oral conversations, telephone calls, meetings, emails, text messages, chats, collaboration tools, letters, memoranda, or notes.

12. "Documents" and "ESI" have the broadest meaning under Rules 192.3 and 196, including emails, native files, spreadsheets, databases, text messages, chats, and metadata.

13. "Foreclosure" means any posting, noticing, scheduling, or conduct of a foreclosure sale under any deed of trust, assignment of leases and rents, or other security instrument encumbering the Project.

14. "Subordination Agreements and Consents" means the Contractor's Affidavit and Subordination Agreements (including those dated October 9, 2023 and May 2025) and the Contractor's Consent and Agreement (2023), and any related negotiations, drafts, or correspondence.

15. "Tenorio" means Samuel Tenorio and any manner in which he conducts business, either individually or through an entity over which he has influence, control, or discretion to act.

## B. INSTRUCTIONS

1. Time Period. Unless otherwise specified, respond for the period June 1, 2023 to the present.

2. ESI Protocol. Produce ESI in reasonably usable form. Emails and electronic documents should be produced with metadata fields (at minimum: custodian, sent/received dates and times, from/to/cc/bcc, subject, file name, file path, file type, and hash) and with family relationships preserved. Spreadsheets and databases shall be produced in native format with a corresponding placeholder image.

3. Privilege. If any document is withheld on a claim of privilege, produce a privilege log compliant with Rule 193.3 identifying authors, recipients, date, general subject matter, privilege asserted, and the basis for the claim.

4. Continuing Duty. This discovery is continuing. Supplement pursuant to Rule 193.5.

5. Definitions Construed Broadly. The singular includes the plural and vice versa; "including" means "including without limitation."

6. Authentication. Where a document is maintained in the ordinary course of business, produce a business-records affidavit under Rules 803(6), 902(10), and 902(11) sufficient for hearing use.

7. Expedited Schedule. Given the imminent hearing, Plaintiff requests rolling production beginning within five (5) days and completion within ten (10) days, and deposition availability for key custodians immediately following document production as permitted by the Court's Order.

## <u>INTERROGATORIES TO DEFENDANT RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC</u>

1.      Identify all persons with knowledge relevant to the allegations or defenses concerning the Loan, SOV, Draws, disbursements, nonpayment of S&P, trust funds, and any planned or noticed Foreclosure, including each person's role, employer, and topics of knowledge.

2.      Describe in detail Your financial arrangements for the Project from June 2023 to present, including equity sources, cash balances, bridge financing, and any changes after Loan closing, and state when and how S&P was informed of any material variation.

3.      For each Draw, state the date submitted, the amounts requested and approved, the categories funded, the date and amount of each disbursement, and identify the recipients and the accounts to which funds were paid.

4.      Explain all revisions to the SOV after Loan closing, including who proposed and approved each revision, the reasons for reallocations, and the impact on funds available for construction costs payable to S&P.

5.      Identify all items categorized as "soft costs," "network design," "network hardware," "physical security," "fiber," "leasing commissions," "administration," or similar categories in any Draw or SOV, and for each, state the vendor, contract, invoice date/number, delivery status, and whether the goods/services were on-site or incorporated into the Project at the time of payment.

6.      State all facts supporting any contention that You were not required to notify S&P of material changes in the Project's financial arrangements, including identification of all Contract provisions and communications on which You rely.

7.      State the current outstanding amount owed to S&P and its subcontractors/suppliers for labor and materials furnished to the Project, and identify any disputes as to specific pay applications, including the basis for each dispute.

8.      Describe Your handling of Trust Funds received for the Project, including the accounts used, signatories, internal controls, and safeguards to ensure compliance with Chapter 162, and identify any transfers to related parties or for non-project purposes.

9.      Identify all communications with Vantage concerning Draws, budget reallocations, SOV revisions, holdbacks, or conditions to disbursement, including dates, participants, and topics.

10.     Identify all persons who approved, authorized, or directed any Draw or disbursement after March 1, 2025, including the basis for their authority.

11.     Identify all bank accounts (by institution, account title, last four digits) used to receive or disburse Loan proceeds or Trust Funds for the Project, and the signatories for each account.

## REQUESTS FOR PRODUCTION TO DEFENDANT RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC

1.      The complete Contract file, including all AIA forms, GMP Amendments, change orders, directives, pay applications, certifications, and notices.

2.      All documents and ESI concerning the Loan, including loan agreements, notes, deeds of trust, SOVs, budgets, escrow agreements, conditions precedent, and all amendments.

3.      All Draw Requests and supporting documentation, including cost breakdowns, lien waivers, invoices, shipping documents, delivery tickets, payables ledgers, wire confirmations, bank statements, and reconciliation reports.

4.      All documents reflecting SOV revisions, reallocations, or category changes, including drafts, redlines, approvals, and internal/external communications concerning the reasons for and effects of such changes.

5.      All communications with Vantage regarding the Project including, but not limited to, Draws, disbursements, soft-cost allocations, conditions to funding, holdbacks, retainage, and any denials or deferrals of funding.

6.      All documents reflecting payments to vendors or recipients for items categorized as network design, network hardware, physical security, fiber, leasing commissions, and administration, including contracts, invoices, proof of delivery, and proof of payment.

7.      All documents detailing any disbursement of Loan funds from Rellis to any person or entity from January 1, 2022 until the present.

8.      All bank statements, credit memorandum, wire confirmations, general ledger detail, and cash disbursement journals for any account that received or disbursed Loan proceeds or Trust Funds for the Project.

9.      All communications with S&P concerning financing assurances, proof of funds, payment timing, and any notice of material changes in financial arrangements.

10.     All internal policies, procedures, or guidelines regarding handling of Trust Funds or construction project disbursements.

11.     All documents relating to liens or lien-waiver requests, including S&P's constitutional or statutory liens, notices, affidavits, and Your responses.

12.     All documents relating to any planned or noticed Foreclosure, including notices of sale, postings, substitute trustee documents, and communications with Vantage or trustees.

13.     All communications and/or documentation between Rellis and Vantage concerning the Contractor's Subordination Agreements and Contractor's Consent and Agreement, including drafts, negotiations, and related approvals.

14.     All communications and/or documentation between Rellis and TAMU concerning the Contractor's Subordination Agreements and Contractor's Consent and Agreement, including drafts, negotiations, and related approvals.

15.     All communications and /or documentation between Rellis and S&P concerning the Contractor's Subordination Agreements and Contractor's Consent and Agreement, including drafts, negotiations, and related approvals.

16.     All documents supporting any defense that S&P breached, waived, or is estopped from asserting claims, including project schedules, deficiency notices, and cure communications.

17.     All insurance policies and communications in which You are the Named Insured, Additional Insured, or maintain any interest with insurers regarding the claims asserted herein.

18.     Organization charts, signatory authorities, and delegations of authority for individuals who approved Draws or disbursements.

## <u>REQUESTS FOR ADMISSION TO DEFENDANT RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC</u>

1.     Admit that S&P furnished labor and materials to the Project.

2.     Admit that S&P submitted pay applications that included undisputed amounts.

3.     Admit that You failed to pay S&P all amounts due for work performed through March 2025.

4.     Admit that after Loan closing, the SOV was revised or reallocated.

5.     Admit that Loan funds were disbursed for items categorized as soft costs not included in the original SOV provided to S&P.

6.     Admit that funds were disbursed for "network design" and "network hardware" not included in the original loan documents for the Project.

7.     Admit that funds were disbursed for "physical security" and "fiber" at a time when the Project had no vertical construction in place.

8.      Admit that the reallocation of the SOV reduced funds available to pay S&P's construction costs.

9.      Admit that Loan proceeds and owner funds disbursed for the Project constitute Trust Funds under Chapter 162 of the Texas Property Code.

10.     Admit that Trust Funds were not used first to pay S&P and its subcontractors/suppliers for labor and materials furnished to the Project.

11.     Admit that a Foreclosure sale was noticed or scheduled for November 4, 2025.

12.     Admit that You did not provide S&P written notice of material changes to financial arrangements affecting payments for S&P's work prior to S&P's execution of the Subordination Agreement.

13.     Admit that You did not provide S&P written notice of material changes to financial arrangements affecting payments for S&P's work subsequent to S&P's execution of the Subordination Agreement.

14.     Admit that, to Your knowledge, Vantage provided S&P with no written notice of material changes to financial arrangements affecting payments for S&P's work prior to S&P's execution of the Subordination Agreement.

15.     Admit that, to Your knowledge, Vantage provided S&P with no written notice of material changes to financial arrangements affecting payments for S&P's work subsequent to S&P's execution of the Subordination Agreement.

Received & Filed 10/29/2025 2:42 PM
Gabriel Garcia, District Clerk
Brazos County, Texas
Lauren Lackey
Envelope# - 107439843

CAUSE NO. 25-003074-CV-85

| | | |
|---|---|---|
| SATTERFIELD & PONTIKES CONSTRUCTION, INC., | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | BRAZOS COUNTY, TEXAS |
| RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, VANTAGE BANK TEXAS, and SAMUEL TENORIO, individually, | § § § § § | |
| *Defendants.* | § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S EXPEDITED DISCOVERY REQUESTS TO DEFENDANT SAMUEL TENORIO

To:     Samuel Tenorio, 5250 McCormick Mountain Dr., Austin, Texas 78734, or wherever he may be found.

Plaintiff Satterfield & Pontikes Construction, Inc. ("Plaintiff" or "S&P") serves the following expedited discovery pursuant to Texas Rules of Civil Procedure 190.4, 192–199, 196–198, and 205, and as authorized by the Court in connection with Plaintiff's Verified Application for Temporary Restraining Order and Temporary Injunction.  Given the imminent temporary-injunction hearing, Plaintiff requests responses and production on an expedited basis within ten (10) days of service, or as otherwise ordered by the Court.

Defendant shall answer separately and fully, under oath as required, and shall produce responsive documents and electronically stored information ("ESI") as instructed below. Defendant shall verify answers to interrogatories under oath in compliance with Texas law. A business-records affidavit should accompany document productions intended for use at the temporary-injunction hearing.

Respectfully submitted,

COKINOS | YOUNG

/s/ *Gregory M. Cokinos*
GREGORY M. COKINOS
Texas Bar No. 04527250
CRAIG H. CLENDENIN
Texas Bar No. 04375000
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5500
Facsimile: (713) 535-5533
gcokinos@cokinoslaw.com
cclendenin@cokinoslaw.com

**Attorneys for Satterfield & Pontikes Construction, Inc.**

## DEFINITIONS AND INSTRUCTIONS

### A. DEFINITIONS

1. "You," "Your," "Tenorio" or "Defendant" means Samuel Tenorio in any manner in which he conducts business, either individually or through an entity over which he has influence, control, or discretion to act. mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

2. "Project" means the RELLIS Data and Research Center project located in Brazos County, Texas, as described in Plaintiff's petition.

3. "S & P" means the Satterfield & Pontikes Construction, Inc., its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

4. "TAMU" means The Texas A&M University System, its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

5. "Contract" means the parties' AIA A133–2019 with incorporated A201–2017 General Conditions, together with all GMP Amendments, change orders, directives, addenda, and modifications.

6. "Loan" means any construction financing provided or committed by Vantage to or for RELLIS related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related notes, deeds of trust, assignments, guaranties, subordination agreements, consents, loan agreements, budgets, schedules of values, escrow agreements, and amendments, or any other agreements between Vantage and RELLIS or Tenorio.

7. "Draw," "Draw Request," or "Disbursement" means any request for, approval of, or release of Loan proceeds or owner funds related to the Project, including any revisions to the schedule of values ("SOV"), soft-cost allocations, or changes to budget categories.

8. "Trust Funds" means funds defined as trust funds under Chapter 162 of the Texas Property Code, including loan proceeds and owner funds paid to or for the benefit of Rellis for the improvement of the Project.

9. "SOV" means any schedule of values used for the Loan or the Project, including original and revised schedules and any allocations or re-allocations of Loan proceeds.

10. "Communications" means every manner of transmitting or receiving information, including oral conversations, telephone calls, meetings, emails, text messages, chats, collaboration tools, letters, memoranda, or notes.

11. "Documents" and "ESI" have the broadest meaning under Rules 192.3 and 196, including emails, native files, spreadsheets, databases, text messages, chats, and metadata.

12. "Foreclosure" means any posting, noticing, scheduling, or conduct of a foreclosure sale under any deed of trust, assignment of leases and rents, or other security instrument encumbering the Project.

13. "Subordination Agreements and Consents" means the Contractor's Affidavit and Subordination Agreements (including those dated October 9, 2023 and May 2025) and the Contractor's Consent and Agreement (2023), and any related negotiations, drafts, or correspondence.

14. "Soft Costs" is defined as indirect expenses not directly tied to the physical construction of the Project, including fees for services, permits, and insurance, among others.

## B.  INSTRUCTIONS

1. Time Period. Unless otherwise specified, respond for the period June 1, 2023 to the present.

2. ESI Protocol. Produce ESI in reasonably usable form. Emails and electronic documents should be produced with metadata fields (at minimum: custodian, sent/received dates and times, from/to/cc/bcc, subject, file name, file path, file type, and hash) and with family relationships preserved. Spreadsheets and databases shall be produced in native format with a corresponding placeholder image.

3. Privilege. If any document is withheld on a claim of privilege, produce a privilege log compliant with Rule 193.3 identifying authors, recipients, date, general subject matter, privilege asserted, and the basis for the claim.

4. Continuing Duty. This discovery is continuing. Supplement pursuant to Rule 193.5.

5. Definitions Construed Broadly. The singular includes the plural and vice versa; "including" means "including without limitation."

6. Authentication. Where a document is maintained in the ordinary course of business, produce a business-records affidavit under Rules 803(6), 902(10), and 902(11) sufficient for hearing use.

7. Expedited Schedule. Given the imminent hearing, Plaintiff requests rolling production beginning within five (5) days and completion within ten (10) days, and deposition availability for key custodians immediately following document production as permitted by the Court's Order.

## INTERROGATORIES TO DEFENDANT SAMUEL TENORIO

1.      Identify Your positions, titles, and responsibilities with respect to RELLIS and the Project, including duties related to the Loan, Draws, and disbursements.

2.      Describe Your role in preparing, approving, or directing Draws and SOV revisions, including communications with Rellis personnel, Vantage, and third parties.

3.      Identify each account to which any Loan proceeds or Trust Funds were disbursed over which You had signatory authority or control, and state the purpose of each disbursement.

4.      State all facts supporting any contention that funds categorized as network design, network hardware, physical security, fiber, leasing commissions, or administration were properly payable from construction funds at the time they were disbursed.

5.      Identify all communications You had with Vantage concerning Draws, SOV revisions, or conditions to funding, including dates, participants, and topics.

6.      Describe any notices received from S&P regarding nonpayment, § 28.009 notices, or suspension, and Your actions in response.

7.      State all facts supporting any contention that S&P's unpaid balances resulted from causes other than the diversion or misapplication of Trust Funds.

8.      Describe any involvement You had in planning or discussing Foreclosure activity and communications with trustees or Vantage regarding same.

9.      Identify all personal or business devices, email accounts, and messaging applications You used for Project-related Communications.


## REQUESTS FOR PRODUCTION TO DEFENDANT SAMUEL TENORIO

1.      For each device, email account, and messaging application identified in Your response to Interrogatory No. 10:
    (a)     documents sufficient to identify the device/account (including make, model, operating system/version, telephone number, user ID/handle, service provider, and ownership/custodian);
    (b)     documents sufficient to show any retention, auto-delete, disappearing-message, or archival settings in effect during the Time Period specified in the Instructions;
    (c)     all Project-related Communications and attachments sent or received during the Time Period specified in the Instructions, including emails, SMS/iMessage, WhatsApp, Signal, Microsoft Teams, Slack, and similar platforms, produced in reasonably usable form with associated metadata and with family relationships preserved;

(d)      device or application logs reflecting installation or removal of messaging applications, factory resets, device replacements, or loss/theft events during the Time Period; and

(e)      any litigation hold, preservation notice, or collection instruction You received concerning such devices/accounts.

2.     All Communications and documents related to Draws, SOV revisions, disbursements, or the use of Trust Funds.

3.     All Communications with Vantage concerning the Loan, Draws, or Foreclosure.

4.     All bank statements, wire confirmations, or financial records reflecting receipt or transfer of Loan proceeds or Trust Funds for the Project over which You had control.

5.     All documents reflecting payments for network design, network hardware, physical security, fiber, leasing commissions, or administration, including contracts, invoices, delivery records, and proof of payment.

6.     All Communications with S&P concerning payment assurances, nonpayment notices, suspension, or requests for proof of funds.

7.     All documents reflecting internal approvals, delegations of authority, or directives You issued concerning Draws or disbursements.

8.     All devices or account inventories identifying the locations and media on which You maintained Project-related ESI (to be followed by a protocol for targeted collection if needed).

9.     All documents You will rely upon to support any defense or to negate the misapplication of Trust Funds.


## REQUESTS FOR ADMISSION TO DEFENDANT SAMUEL TENORIO

1.     Admit that You exercised control or direction over Trust Funds for the Project.

2.     Admit that funds were disbursed for non-project or non-construction items while S&P remained unpaid for labor and materials furnished.

3.     Admit that the SOV was reallocated after Loan closing to increase "contingency" and soft-cost categories.

4.     Admit that funds were disbursed for "network design," "network hardware," "physical security," and "fiber" prior to their on-site delivery or incorporation into the Project.

5.     Admit that You did not provide S&P written notice of a material variation in financial arrangements for the Project.

6.      Admit that S&P submitted proper pay applications that were not fully paid.

7.      Admit that a foreclosure sale was noticed or scheduled for November 4, 2025.

CAUSE NO. 25-003074-CV-85

| | | |
|---|---|---|
| **SATTERFIELD & PONTIKES CONSTRUCTION, INC.,**<br>    *Plaintiff,* | §<br>§<br>§<br>§ | **IN THE DISTRICT COURT OF** |
| **v.** | §<br>§ | |
| | § | **BRAZOS COUNTY, TEXAS** |
| **RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, VANTAGE BANK TEXAS, and SAMUEL TENORIO, individually,**<br>    *Defendants.* | §<br>§<br>§<br>§<br>§ | |
| | § | **85th  JUDICIAL DISTRICT** |

---

**PLAINTIFF'S FIRST AMENDED EXPEDITED DISCOVERY REQUESTS
TO DEFENDANT VANTAGE BANK TEXAS**

---

To:    Vantage Bank Texas, by serving its registered agent, VBT Services Corporation, 601 NW Loop 410, Suite 100, San Antonio, Texas 78216, or wherever it may be found.

Plaintiff Satterfield & Pontikes Construction, Inc. ("Plaintiff" or "S&P") serves the following expedited discovery pursuant to Texas Rules of Civil Procedure 190.4, 192–199, 196–198, and 205, and as authorized by the Court in connection with Plaintiff's Verified Application for Temporary Restraining Order and Temporary Injunction.  Given the imminent temporary-injunction hearing, Plaintiff requests responses and production on an expedited basis consistent with that certain Rule 11 Agreement by and between Plaintiff Satterfield & Pontikes Construction, Inc. and Vantage Bank Texas, or as otherwise ordered by the Court.

Defendant shall answer separately and fully, under oath as required, and shall produce responsive documents and electronically stored information ("ESI") as instructed below. Defendant shall verify answers to interrogatories under oath in compliance with Texas law. A business-records affidavit should accompany document productions intended for use at the temporary-injunction hearing.

Respectfully submitted,

COKINOS | YOUNG

/s/ *Gregory M. Cokinos*        -
GREGORY M. COKINOS
Texas Bar No. 04527250
CRAIG H. CLENDENIN
Texas Bar No. 04375000
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5500
Facsimile: (713) 535-5533
gcokinos@cokinoslaw.com
cclendenin@cokinoslaw.com

***Attorneys for Satterfield & Pontikes***
***Construction, Inc.***

## DEFINITIONS AND INSTRUCTIONS

### A. DEFINITIONS

1. "You," "Your," and "Defendant" mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

2. "Project" means the RELLIS Data and Research Center project located in Brazos County, Texas, as described in Plaintiff's petition.

3. "S & P" means the Satterfield & Pontikes Construction, Inc., its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

4. "TAMU" means The Texas A&M University System, its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

5. "Contract" means the parties' AIA A133–2019 with incorporated A201–2017 General Conditions, together with all GMP Amendments, change orders, directives, addenda, and modifications.

6. "Loan" means any construction financing provided or committed by Vantage to or for RELLIS related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related notes, deeds of trust, assignments, guaranties, subordination agreements, consents, loan agreements, budgets, schedules of values, escrow agreements, and amendments, or any other agreements between Vantage and RELLIS or Tenorio.

7. "Loan Proceeds" means any construction financing provided by Vantage related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related financing.

8. "Draw," "Draw Request," or "Disbursement" means any request for, approval of, or release of Loan proceeds or owner funds related to the Project, including any revisions to the schedule of values ("SOV"), soft-cost allocations, or changes to budget categories.

9. "Trust Funds" means funds defined as trust funds under Chapter 162 of the Texas Property Code, including loan proceeds and owner funds paid to or for the benefit of Rellis for the improvement of the Project.

10. "SOV" means any schedule of values used for the Loan or the Project, including original and revised schedules and any allocations or re-allocations of Loan proceeds.

11. "Soft Costs" is defined as indirect expenses not directly tied to the physical construction of the Project, including fees for services, permits, and insurance, among others.

12. "Communications" means every manner of transmitting or receiving information, including oral conversations, telephone calls, meetings, emails, text messages, chats, collaboration tools, letters, memoranda, or notes.

13. "Documents" and "ESI" have the broadest meaning under Rules 192.3 and 196, including emails, native files, spreadsheets, databases, text messages, chats, and metadata.

14. "Foreclosure" means any posting, noticing, scheduling, or conduct of a foreclosure sale under any deed of trust, assignment of leases and rents, or other security instrument encumbering the Project.

15. "Subordination Agreements and Consents" means the Contractor's Affidavit and Subordination Agreements (including those dated October 9, 2023 and May 2025) and the Contractor's Consent and Agreement (2023), and any related negotiations, drafts, or correspondence.

16. "Tenorio" means Samuel Tenorio, III and any manner in which he conducts business, either individually or through an entity over which he has influence, control, or discretion to act.

17. "RELLIS" means RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, as well as its Administrative Manager TENTECH-3 HOLDINGS, LLC, a Nevada limited liability company, in any manner in which either conducts business, either individually or through an entity over which it has influence, control, or discretion to act. mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf including, but not limited to: Tenorio, TenTech-3 Holdings, LLC, Seamless Advanced Solutions LLC, SAS-US, LLC, OPTIMUS TECHSERVICES, LLC, and/or Optimus Communications, LLC

18. "Guarantors" means any guarantors to that certain promissory note(s) from Vantage Bank Texas to RELLIS, including Samuel Tenorio, III, OPTIMUS DATACENTERS, LLC, a Delaware limited liability company, and/or TENTECH-3 HOLDINGS, LLC, in any manner in which any guarantor conducts business, either individually or through an entity over which it has influence, control, or discretion to act. mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

## B.  INSTRUCTIONS

1. Time Period. Unless otherwise specified, respond for the period June 1, 2023 to the present.

2.  ESI Protocol. Produce ESI in reasonably usable form. Emails and electronic documents should be produced with metadata fields (at minimum: custodian, sent/received dates and times, from/to/cc/bcc, subject, file name, file path, file type, and hash) and with family relationships preserved. Spreadsheets and databases shall be produced in native format with a corresponding placeholder image.

3.  Privilege. If any document is withheld on a claim of privilege, produce a privilege log compliant with Rule 193.3 identifying authors, recipients, date, general subject matter, privilege asserted, and the basis for the claim.

4.  Continuing Duty. This discovery is continuing. Supplement pursuant to Rule 193.5.

5.  Definitions Construed Broadly. The singular includes the plural and vice versa; "including" means "including without limitation."

6.  Authentication. Where a document is maintained in the ordinary course of business, produce a business-records affidavit under Rules 803(6), 902(10), and 902(11) sufficient for hearing use.

7.  Expedited Schedule. Given the imminent hearing, Plaintiff requests rolling production beginning within five (5) days and completion within ten (10) days, and deposition availability for key custodians immediately following document production as permitted by the Court's Order.

## INTERROGATORIES TO DEFENDANT VANTAGE BANK TEXAS

1.      Identify all persons with knowledge regarding the Loan, underwriting, SOVs, Draws, disbursements, conditions to funding, Foreclosure activities, and communications with RELLIS or S&P, and state each person's role and topics of knowledge.

2.      Describe all representations made by You to S&P regarding the availability, sequencing, and sufficiency of equity and Loan funds to pay construction costs, including the September 21, 2023 correspondence from Cody Cannon of Vantage and Mr. Jess Arnold, together with any subsequent updates.

3.      Explain the criteria, policies, and procedures You used to review and approve Draws and SOV reallocations, including required documentation and verification of on-site incorporation of goods.

4.      For each Draw approved or disbursed, identify the date, amount, categories funded, supporting documentation reviewed, the approving personnel, and the recipients of funds.

5.      Describe all communications with Rellis regarding reallocation of Loan proceeds to soft costs, network design, network hardware, physical security, fiber, leasing commissions, or administration.

6.      State all facts supporting any contention that You did not know and could not reasonably have known of any misapplication of loan trust funds by Rellis.

7.      Identify all steps You took to ensure that construction funds were applied to Project costs before non-project or non-construction items were funded.

8.      Describe Your role, if any, in conditioning, directing, or sequencing disbursements in a manner that affected S&P's payments.

9.      State all facts supporting any contention that S&P's liens are junior to Your deed of trust by reason of any subordination document, including identification of the specific instruments and the dates of execution and recordation.

10.      Identify any Foreclosure-related actions undertaken, including the decision-makers, dates of postings or notices, and communications with trustees or counsel.

## REQUESTS FOR PRODUCTION TO DEFENDANT VANTAGE BANK TEXAS

1.      The complete Loan file, including the construction loan agreement, notes, communications, deeds of trust, assignments, guaranties, title policies, escrow agreements, disbursement agreements, SOVs, budgets, and all amendments.

2.      All underwriting, credit-approval, and risk memoranda addressing the Project, including analyses of budget sufficiency, equity requirements, and funding sequences.

3.      All Draw Requests and supporting documentation reviewed or relied upon in funding, including invoices, lien waivers, delivery tickets, site-inspection reports, and any third-party draw-inspector reports.

4.      All communications with Rellis concerning SOV revisions, reallocations to soft costs, or additions of network design, network hardware, physical security, fiber, leasing commissions, or administration.

5.      All communications with S&P regarding financing assurances, proof of funds, or the September 21, 2023 letter from Cody Cannon to Mr. Jess Arnold, and related statements.

6.      All documents reflecting Your policies, procedures, and checklists for construction loan disbursements and verification of use of proceeds, including any guidance related to Texas trust-fund compliance.

7.      All records reflecting disbursements, including wire confirmations, payee details, bank statements for any disbursement accounts, and reconciliations.

8.      All documents concerning any holdbacks, retainage, denials, or deferrals of funding and the reasons therefor.

9.      All communications and documents relating to Foreclosure decisions, postings, trustee appointments, and schedules for sale.

10.     All communications and documents concerning the Contractor's Subordination Agreements and the Contractor's Consent and Agreement, including negotiations, approvals, and reliance analyses.

11.     All internal analyses regarding lien priority, the effect of S&P's constitutional lien, and the impact of subordination instruments.

12.     All documents concerning allegations of misapplication of any loan proceeds, including any internal investigations or responses to S&P's notices under Property Code § 28.009.

13.     All insurance policies under which you are either the insured or additional insured in regard to the Project.

## <u>REQUESTS FOR ADMISSION TO DEFENDANT VANTAGE BANK TEXAS</u>

1.      Admit that You represented to S&P in or about September 2023 that equity requirements had been satisfied and that cash equity would be used to advance construction costs prior to loan draws.

2.      Admit that You approved Draws that included categories not in the original SOV provided to S&P.

3.      Admit that You approved or disbursed funds for network design and network hardware that were not included in the original loan documents.

4.      Admit that You approved or disbursed funds for physical security and fiber at a time when the Project had no vertical construction in place.

5.      Admit that the reallocation of SOV categories diminished funds available to pay S&P's construction costs.

6.      Admit that Loan proceeds for the Project are Trust Funds under Chapter 162 of the Texas Property Code.

7.      Admit that You had the ability to require documentation evidencing on-site delivery or incorporation of goods before disbursement.

8.      Admit that You noticed or scheduled a nonjudicial foreclosure for November 4, 2025.

9.      Admit that S&P submitted proper pay applications that were not fully paid.

CAUSE NO. 25-003074-CV-85

| | | |
|---|---|---|
| SATTERFIELD & PONTIKES CONSTRUCTION, INC., | § § § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | BRAZOS COUNTY, TEXAS |
| RELLIS CAMPUS DATA AND | § | |
| RESEARCH CENTER, LLC, | § | |
| VANTAGE BANK TEXAS, and | § | |
| SAMUEL TENORIO, individually, | § | |
|     *Defendants.* | § | 85th  JUDICIAL DISTRICT |

---

## PLAINTIFF'S SUPPLEMENTAL REQUEST FOR PRODUCTION TO DEFENDANT VANTAGE BANK TEXAS

---

To:    Vantage Bank Texas, by serving its registered agent, VBT Services Corporation, 601 NW Loop 410, Suite 100, San Antonio, Texas 78216, or wherever it may be found.

Plaintiff Satterfield & Pontikes Construction, Inc. ("Plaintiff" or "S&P") serves the following supplemental expedited discovery pursuant to Texas Rules of Civil Procedure 190.4, 192–199, 196–198, and 205, and as authorized by the Court in connection with Plaintiff's Verified Application for Temporary Restraining Order and Temporary Injunction.  Given the imminent temporary-injunction hearing, Plaintiff requires the responses and production to these Supplemental Requests, as well as the First Amended Requests for Production provided to Vantage Bank Texas on November 5, 2025, be provided on an expedited basis consistent with the Court's Order Authorizing Expedited Discovery dated October 30, 2025, as amended by that certain Rule 11 Agreement by and between Plaintiff Satterfield & Pontikes Construction, Inc. and Vantage Bank Texas dated November 5, 2025, or as otherwise further ordered by the Court.

Defendant shall answer separately and fully, under oath as required, and shall produce responsive documents and electronically stored information ("ESI") as instructed below.

Respectfully submitted,

COKINOS | YOUNG

/s/ *Gregory M. Cokinos*        -
GREGORY M. COKINOS
Texas Bar No. 04527250
CRAIG H. CLENDENIN
Texas Bar No. 04375000
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Telephone: (713) 535-5500
Facsimile: (713) 535-5533
gcokinos@cokinoslaw.com
cclendenin@cokinoslaw.com

***Attorneys for Satterfield & Pontikes
Construction, Inc.***

## DEFINITIONS AND INSTRUCTIONS

### A. DEFINITIONS

1. "You," "Your," and "Defendant" mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

2. "Project" means the RELLIS Data and Research Center project located in Brazos County, Texas, as described in Plaintiff's petition.

3. "S & P" means the Satterfield & Pontikes Construction, Inc., its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

4. "TAMU" means The Texas A&M University System, its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

5. "Contract" means the parties' AIA A133–2019 with incorporated A201–2017 General Conditions, together with all GMP Amendments, change orders, directives, addenda, and modifications.

6. "Loan" means any construction financing provided or committed by Vantage to or for RELLIS related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related notes, deeds of trust, assignments, guaranties, subordination agreements, consents, loan agreements, budgets, schedules of values, escrow agreements, and amendments, or any other agreements between Vantage and RELLIS or Tenorio.

7. "Loan Proceeds" means any construction financing provided by Vantage related to the Project, including the approximately $16,560,000 loan closed on or about October 31, 2023, and any increases (including the $1,000,000 increase) or related financing.

8. "Draw," "Draw Request," or "Disbursement" means any request for, approval of, or release of Loan proceeds or owner funds related to the Project, including any revisions to the schedule of values ("SOV"), soft-cost allocations, or changes to budget categories.

9. "Trust Funds" means funds defined as trust funds under Chapter 162 of the Texas Property Code, including loan proceeds and owner funds paid to or for the benefit of Rellis for the improvement of the Project.

10. "SOV" means any schedule of values used for the Loan or the Project, including original and revised schedules and any allocations or re-allocations of Loan proceeds.

11. "Soft Costs" is defined as indirect expenses not directly tied to the physical construction of the Project, including fees for services, permits, and insurance, among others.

12. "Communications" means every manner of transmitting or receiving information, including oral conversations, telephone calls, meetings, emails, text messages, chats, collaboration tools, letters, memoranda, or notes.

13. "Documents" and "ESI" have the broadest meaning under Rules 192.3 and 196, including emails, native files, spreadsheets, databases, text messages, chats, and metadata.

14. "Foreclosure" means any posting, noticing, scheduling, or conduct of a foreclosure sale under any deed of trust, assignment of leases and rents, or other security instrument encumbering the Project.

15. "Subordination Agreements and Consents" means the Contractor's Affidavit and Subordination Agreements (including those dated October 9, 2023 and May 2025) and the Contractor's Consent and Agreement (2023), and any related negotiations, drafts, or correspondence.

16. "Tenorio" means Samuel Tenorio, III and any manner in which he conducts business, either individually or through an entity over which he has influence, control, or discretion to act.

17. "RELLIS" means RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, as well as its Administrative Manager TENTECH-3 HOLDINGS, LLC, a Nevada limited liability company, in any manner in which either conducts business, either individually or through an entity over which it has influence, control, or discretion to act. mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf including, but not limited to: Tenorio, TenTech-3 Holdings, LLC, Seamless Advanced Solutions LLC, SAS-US, LLC, OPTIMUS TECHSERVICES, LLC, and/or Optimus Communications, LLC

18. "Guarantors" means any guarantors to that certain promissory note(s) from Vantage Bank Texas to RELLIS, including Samuel Tenorio, III, OPTIMUS DATACENTERS, LLC, a Delaware limited liability company, and/or TENTECH-3 HOLDINGS, LLC, in any manner in which any guarantor conducts business, either individually or through an entity over which it has influence, control, or discretion to act. mean the specific responding Defendant, including its/their agents, officers, directors, managers, employees, representatives, subsidiaries, parents, affiliates, predecessors, successors, and anyone acting on its/their behalf.

## B.  INSTRUCTIONS

1. Time Period. Unless otherwise specified, respond for the period January 1, 2021 to the present.

2. ESI Protocol. Produce ESI in reasonably usable form. Emails and electronic documents should be produced with metadata fields (at minimum: custodian, sent/received dates and times, from/to/cc/bcc, subject, file name, file path, file type, and hash) and with family relationships preserved. Spreadsheets and databases shall be produced in native format with a corresponding placeholder image.

3. Privilege. If any document is withheld on a claim of privilege, produce a privilege log compliant with Rule 193.3 identifying authors, recipients, date, general subject matter, privilege asserted, and the basis for the claim.

4. Continuing Duty. This discovery is continuing. Supplement pursuant to Rule 193.5.

5. Definitions Construed Broadly. The singular includes the plural and vice versa; "including" means "including without limitation."

6. Authentication. Where a document is maintained in the ordinary course of business, produce a business-records affidavit under Rules 803(6), 902(10), and 902(11) sufficient for hearing use.

7. Expedited Schedule. Given the imminent hearing, Plaintiff requests rolling production beginning within five (5) days and completion within ten (10) days, and deposition availability for key custodians immediately following document production as permitted by the Court's Order.

## SUPPLEMENTAL REQUESTS FOR PRODUCTION
## TO DEFENDANT VANTAGE BANK TEXAS

1.      The complete Loan file, including the construction loan agreement, notes, communications, deeds of trust, assignments, guaranties, title policies, escrow agreements, disbursement agreements, SOVs, budgets, and all amendments for that certain Promissory Note dated executed by Rellis and payable to the order of Vantage, in the original principal sum of ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS (the "2nd Note").

2.      All draw requests and documents reflecting any amendments and/or adjustments to Vantage's Loan Schedule of Values related to the Project.

3.      All Inspection Reports provided to, or performed by, the Bank for any purpose regarding the Loans or the Project, including but not limited to determining the level of completion, or amount of disbursement of Loan Proceeds.

4.      All Bills Paid affidavits utilized by Vantage to support the Bank's twenty percent (20%) equity requirement regarding the funding provided Rellis in regard to the Project.

5.      All Lender Liability, Bankers Bond, Errors and Omissions, Officer's and Director's, Lender's Insurance, Professional Liability, Commercial General Liability and/or any other policy of insurance in which Vantage, its officers, directors, and/or employees is either the insured or additional insured.

6.      All documents upon which Vantage relied to disburse any monies to Rellis, Tenorio, or the Project.

7.      All Vantage Loan Committee Meeting minutes related in any way to the Loan, Rellis, Tenorio, or the Project.