**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>RELLIS CAMPUS DATA AND RESEARCH CENTER, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-90666<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION AND RESPONSE TO EMERGENCY MOTION OF SCUTI INVESTMENTS LLC FOR ENTRY OF AN ORDER (I) ESTABLISHING A RESERVE FROM SALE PROCEEDS; (II) PRESERVING SCUTI'S ASSERTED ADMINISTRATIVE EXPENSE CLAIM; AND (III) PRESERVING SCUTI'S CONTRACTUAL CLAIMS**
**[Relates to ECF # 237]**

RELLIS Campus Data and Research Center, LLC ("RCDRC") and Optimus DataCenters, LLC, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this objection and response (the "Objection") to the *Emergency Motion of SCUTI Investments LLC for Entry of an Order (I) Establishing a Reserve from Sale Proceeds; (II) Preserving SCUTI's Asserted Administrative Expense Claim; and (III) Preserving SCUTI's Contractual Claims* [ECF # 237] (the "Motion") filed by SCUTI Investments LLC ("SCUTI"), and respectfully state as follows:

## I. PRELIMINARY STATEMENT

1. SCUTI asks this Court to impound an unstated portion of the proceeds of a $40 million sale for the benefit of a party that has never filed a proof of claim, never applied for allowance of an administrative expense, and never sought retention in these cases. It filed that

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: RELLIS Campus Data and Research Center, LLC (9113), and Optimus DataCenters, LLC (1582). The Debtors' service address is 5010 Doss Road, Austin, Texas 78734.

request on the Friday before closing[2], nearly four months after first asserting the same claim in writing, and after the Sale Order had become final and unappealable. The relief SCUTI seeks—impounding estate property, declaring that its asserted interests survived the sale, and enjoining the Debtors' use of the funds—is relief Bankruptcy Rule 7001 requires be sought by adversary proceeding, and SCUTI does not say how much it wants reserved, asking instead for "an amount the Court deems sufficient." Mot. ¶ 24. The Motion should be denied on those grounds alone.

2. It fails on the merits as well, at every step. Mr. Arioto swears that SCUTI's only claimed service—introducing Marathon to the RELLIS project—occurred "[b]efore the Debtors filed for bankruptcy." Arioto Decl. ¶ 6. A prepetition service rendered under a prepetition contract is not an administrative expense, whenever the asserted contingency is said to have matured, and SCUTI identifies no postpetition act of any kind. SCUTI was never retained under section 327 and could not have been. The December 1, 2025 Amendment adding Marathon to the Agreement was executed after the Petition Date without notice, hearing, or approval under section 363(b), and rested on no consideration, because it purported to buy an introduction SCUTI had already made. The Agreement was never triggered in any event: it pays a percentage of "funds financed," and Marathon Capital Markets, LLC financed nothing—the estates paid Marathon, not the reverse—while the asserted three-percent position vests only upon a closing or funding of the RELLIS project that never occurred. And because SCUTI claims transaction-based compensation for capital-raising activity while warranting that it is not licensed to engage in it, the Agreement is void under 15 U.S.C. § 78cc.

3. What the Motion omits matters as much as what it asserts. On May 22, 2026, the Debtors told SCUTI's then-counsel in writing that SCUTI had not been approved to be engaged

---

[2] At the time SCUTI filed it's Motion, closing was scheduled to occur on or before August 31, 2026. The outside closing date has since been extended by agreement of the parties.

by the Debtors, would not be compensated, and should file a claim in this Court if it believed it held one. SCUTI answered by withdrawing its "cooperation" and then went silent for three months. It did not object to Marathon's retention, to the bidding procedures, or to the sale; it did not appear at the sale hearing; and it did not appeal the Sale Order. The Motion tells this Court only that SCUTI "retained undersigned counsel after entry of the Sale Order," Mot. ¶ 46, and says nothing of the May 2026 correspondence in which prior counsel pressed this same claim and was directed to the claims process. A party that declines the claims process cannot bypass it by emergency motion on the eve of a closing. The Motion should be denied in its entirety, and SCUTI's asserted administrative expense claim should be denied.

## II. BACKGROUND

4. On October 29, 2025—one week before the Petition Date—RCDRC and SCUTI executed the SCUTI Agreement, a two-page finder's agreement under which SCUTI agreed to use best efforts to introduce RCDRC to "hedge funds, lenders and similar persons engaged in assisting companies with financing." Mot. Ex. A, Recital (c), § 1. The Agreement identified exactly two covered introductions: Sandton and Corbel. *Id.* § 2.

5. Compensation under the Agreement is triggered only if RCDRC "enters into any agreement with any Financier to invest in, lend for, or finance or otherwise participate in data center development," and is calculated as "one and a half percent (1.5%) of the amount of any funds financed to be paid in year 1 and one and half percent (1.5%) of the amount of any funds financed to be paid in year 2." *Id.* The Agreement further provides that "[SCUTI] shall receive its Fee when RCDRC has the unrestricted right to use the amounts provided by Financier(s)," and that the fee "shall be based upon the initial participation of Financier." *Id.* The asserted three-

percent ownership position likewise arises only "after closing or funding o[f] the RELLIS Campus Data Center project." *Id.*

6. The Agreement expressly disclaims any agency or brokerage relationship: SCUTI "is an independent contractor and shall not act as an employee, agent, or broker of RCDRC." *Id.* § 5. SCUTI separately warranted that it "shall not engage in any activity pursuant to this Agreement that requires licensing under state or federal law securities laws," and that it is "engaged solely to make introductions." *Id.* § 6(b)–(c). The Agreement mandates JAMS mediation and, failing resolution, litigation in Clark County, Nevada, to which the parties "irrevocably consent to sole and exclusive jurisdiction and venue." *Id.* § 9.

7. The Debtors commenced these cases on November 5, 2025. Mr. Arioto testifies that his introduction of Marathon to the RELLIS project occurred "[b]efore the Debtors filed for bankruptcy," and that "[f]ollowing that introduction, Marathon communicated with representatives of the project concerning potential financing, investment, and development opportunities." Arioto Decl. ¶¶ 6–7.

8. On December 1, 2025—after the Petition Date—RCDRC and SCUTI executed the Amendment, which adds "Marathon Asset Management LP/ Marathon Capital" to the list of introductions and states that all other provisions of the Agreement remain in effect. Mot. Ex. B. The Amendment was not disclosed to this Court, was not the subject of any motion, and was never approved under section 363(b) or any other provision of the Bankruptcy Code.

9. On April 30, 2026, the Debtors engaged Marathon Capital Markets, LLC as investment banker, and on May 8, 2026, the Court approved that retention. *See* Docket Nos. 172, 177. Marathon Capital Markets, LLC was retained to market and sell the Debtors' assets. It did not provide capital to the Debtors. The Debtors' postpetition financing was provided by Twelve

Bridge Capital, which SCUTI did not introduce. The purchaser is ThisWay Global, Inc., which SCUTI did not introduce.

10. On the very day the Court entered the Marathon Retention Order, SCUTI's then-counsel, David G. LeGrand, sent a letter directly to RCDRC's chief executive officer asserting that Marathon, "is poised to provide funding to Rellis in the context of its Chapter 11 bankruptcy proceeding," demanding compensation, threatening "additional action to enforce the Agreement," and observing that, "[i]t would be disturbing for Marathon to learn that Rellis is reneging on any agreement." Letter from David G. LeGrand to Sam Tenorio III (May 8, 2026), attached as **Exhibit A**. Thus, SCUTI knew of every fact underlying the Motion no later than May 8, 2026—two months before entry of the Sale Order.

11. What followed was a documented, two-week exchange between counsel that the Motion does not mention. A true and correct copy of that correspondence is attached as **Exhibit B**. On May 12, 2026, the undersigned counsel wrote to Mr. LeGrand, identified the Debtors' chapter 11 cases, directed that future correspondence be sent to counsel rather than to the Debtors' principals, and requested a copy of the December 2025 amendment. Mr. LeGrand transmitted the executed Amendment the same day, stating: "This is a rather disappointing situation, wherein my client *provided* the service and expects the agreed upon compensation." Ex. B (emphasis added).

12. On May 20, 2026, Mr. LeGrand wrote again, stating: "Marathon is asking Scuti Investments to continue its assistance for Rellis!" Ex. B. On May 22, 2026, the undersigned counsel responded in writing and told SCUTI exactly where it stood:

> To be clear, Scuti Investments/Mark Arioto (collectively, "Scuti") has not been approved by the bankruptcy court to be engaged by the Debtors, will not be compensated by the Debtors, and, as far as I can surmise, has not provided any compensable goods or services to the Debtors or the bankruptcy estate. . . . If Scuti believes that it has a compensable claim against the Debtors arising from its pre-petition

> "agreement" (or otherwise), they should file a claim in the bankruptcy court. The Debtors reserve all right(s), interest(s) and/or claim(s) they have against Scuti.

Ex. B (E-mail from J. Oldham to D. LeGrand, May 22, 2026).

13. Mr. LeGrand replied that same afternoon: "Well, then Rellis have no further cooperation from Scuti/Mark Arioto pen[d]ing any such approval." *Id.* SCUTI thereafter went radio silent until filing the Motion on August 28, 2026.

14. SCUTI did not object to Marathon's retention. SCUTI did not object to the bidding procedures. SCUTI did not object to the sale. SCUTI did not appear at the sale hearing. SCUTI did not appeal the Sale Order entered July 6, 2026. ECF # 219. SCUTI has never filed a proof of claim and has never filed an application for allowance of an administrative expense. SCUTI filed the Motion on Friday, August 28, 2026, three days before the anticipated closing.

## III. ARGUMENT

### *A. The Relief Requested Cannot Be Granted by Motion.*

15. SCUTI asks the Court to impound estate property, to declare that its asserted rights survive the sale, and to enjoin the Debtors from using the sequestered funds. Each of those is relief that Bankruptcy Rule 7001 requires be sought by adversary proceeding: a proceeding to recover money or property, Fed. R. Bankr. P. 7001(1); to determine the validity, priority, or extent of an interest in property, *id.* 7001(2); to obtain an injunction, *id.* 7001(7); and to obtain a declaratory judgment concerning the foregoing, *id.* 7001(9). SCUTI recognizes the problem and asks the Court to grant "interim relief" anyway, Mot. ¶ 7, but a party cannot obtain by motion the very relief the Rules require it to obtain by complaint.

16. Section 105(a) supplies no answer. Section 105 authorizes orders necessary to carry out the provisions of the Bankruptcy Code; it does not create substantive rights or authorize a court to grant relief that the Code and Rules otherwise withhold. SCUTI cites sections 363, 503(b)(1)(A),

507(a)(2), 1107(a), and 1108 as "statutory predicates," Mot. ¶ 6, but none of those provisions authorize a non-creditor to freeze estate assets pending its own hypothetical future lawsuit.

17. The Motion is also fatally indefinite. SCUTI does not identify the amount of the reserve it seeks, asking instead that the Court impound "an amount the Court deems sufficient." Mot. ¶ 24. It concedes that it "presently lacks access" to the information needed to quantify its claim. *Id.* A movant seeking to sequester estate assets must, at a minimum, establish what it is owed and why. SCUTI asks the Court to do that work for it.

***B. SCUTI Has No Administrative Expense Claim.***

18. To qualify as an administrative expense under section 503(b)(1)(A), a claim must arise from a transaction with the debtor in possession and the consideration supporting the claim must have been both supplied to and beneficial to the estate in the operation of its business. *See In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Administrative priority is narrowly construed because it comes at the direct expense of general creditors. *See In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001).

19. SCUTI supplied nothing to these estates postpetition. The only service SCUTI claims to have performed—introducing Marathon to the RELLIS project—occurred before the Petition Date, by Mr. Arioto's own sworn account. Arioto Decl. ¶ 6. SCUTI does not allege that it made a single telephone call, sent a single e-mail, attended a single meeting, or performed a single act of any kind after November 5, 2025, other than signing the Amendment and, months later, retaining counsel to demand money.

20. That a prepetition contingent right may have matured postpetition does not convert it into an administrative expense. The relevant inquiry is when the services were rendered and

whether they were rendered to the estate, not when the payment obligation is said to have accrued. On SCUTI's own pleading, the answer to both questions defeats administrative priority.

21. Nor did SCUTI confer any benefit on these estates. The benefit SCUTI points to is Marathon's work—work the estates commissioned, supervised, and will pay for at full freight under a Court-approved engagement. The estates are already set to compensate Marathon for the value Marathon is delivering. SCUTI seeks a second payment, from the same proceeds, for the asserted act of having pointed at Marathon before the case began.

***C. SCUTI Was Never Retained and Could Not Have Been.***

22. A professional who provides services to a chapter 11 estate must be employed under section 327 and compensated under sections 330 and 331. SCUTI never applied for employment, never disclosed connections under Bankruptcy Rule 2014, and was never approved by this Court. A party that renders services to a debtor in possession without Court approval is not entitled to compensation from the estate.

23. The point is not a technicality. Had SCUTI sought retention as a finder or placement agent, its compensation structure and its qualifications would have been subject to scrutiny by the United States Trustee, the Committee, and this Court. SCUTI cannot bypass that process, remain silent through the retention of the Debtors' actual investment banker, and then claim a transaction fee out of the sale proceeds after the fact.

***D. The Postpetition Amendment Is Unenforceable Against the Estates.***

24. The Amendment was executed on December 1, 2025, after the Petition Date. To the extent it purported to obligate RCDRC to pay a transaction fee and convey a three-percent equity interest on account of an introduction that had already been made, it was an extraordinary, non-ordinary-course transaction that required notice and a hearing under section 363(b). No such

notice was given and no such approval was obtained. An unauthorized postpetition transfer or obligation is not enforceable against the estate and is avoidable under section 549.

25. The Amendment independently fails for want of consideration. Under Nevada law, as under Texas law, past performance is not consideration for a new promise. "A benefit conferred or detriment incurred in the past is not adequate consideration for a present bargain." *Cty. of Clark v. Bonanza No. 1*, 96 Nev. 643, 650, 615 P.2d 939, 943 (1980); citing *Smith v. Recrion Corp.*, 91 Nev. 666, 541 P.2d 663 (1975). Mr. Arioto testifies that the Marathon introduction was complete before the Petition Date and that Marathon was already "communicat[ing] with representatives of the project" as a result. Arioto Decl. ¶¶ 6–7. SCUTI gave up nothing, promised nothing, and did nothing in exchange for the Amendment. It memorialized a completed act and demanded a fee for it.

***E. The Agreement Was Never Triggered.***

26. Even if the Amendment were valid and even if SCUTI's claim were somehow administrative, the Agreement's compensation provisions were never triggered.

27. First, Marathon is not a "Financier" within the meaning of the Agreement. The Agreement contemplates introductions to "hedge funds, lenders and similar persons engaged in assisting companies with financing," Mot. Ex. A, Recital (c), and pays a fee when RCDRC "enters into any agreement with any Financier to invest in, lend for, or finance or otherwise participate in data center development." *Id.* § 2. SCUTI invokes *ejusdem generis* to expand "otherwise participate in," Mot. ¶ 29, but the canon cuts the other way: a general term following an enumeration is limited to the class the enumeration describes. "Invest in," "lend for," and "finance" all describe the *provision of capital*. Marathon Capital Markets, LLC provided no capital. It rendered professional advisory services, for a fee paid by the estates, to help the Debtors sell assets.

A sell-side banker is the opposite of a financier: money flowed *from* the estates *to* Marathon, not the reverse.

28. Second, the fee formula produces zero. SCUTI's fee is "1.5% of the amount of any funds financed to be paid in year 1" and the same percentage of funds financed in year 2, payable "when RCDRC has the unrestricted right to use the amounts provided by Financier(s)." Mot. Ex. A § 2. Marathon provided no amounts. There are no "funds financed" to which the percentage can attach. SCUTI never states what it contends it is owed, and its silence on that point is telling.

29. Third, the asserted three-percent ownership position arises only "after closing or funding o[f] the RELLIS Campus Data Center project." *Id.* The project was never funded and never closed. The Debtors sold substantially all of their assets in a section 363 sale after a marketing process that produced no competing qualified bid. There is no "RCDRC data center development" in which a three-percent position could vest.

30. Fourth, SCUTI has not established that the entity it named is the entity the Debtors retained. The Amendment identifies "Marathon Asset Management LP/ Marathon Capital," Mot. Ex. B. The Debtors retained Marathon Capital Markets, LLC, through Gerry Willinger. ECF # 172, 177. Marathon Asset Management LP and Marathon Capital Markets, LLC are distinct organizations. Mr. Arioto's assertion that the individuals involved "were affiliated with the Marathon organization that I introduced," Arioto Decl. ¶ 13, is conclusory and unsupported. SCUTI bears the burden and has not carried it.

***F. SCUTI's Refusal to File a Claim.***

31. This is not a case in which a claimant was left to guess at its rights. On May 22, 2026, the Debtors told SCUTI in writing that it had not been approved to be engaged by the Debtors, that it would not be compensated by the Debtors, that it had provided no compensable

goods or services to the estates, and that if it believed it held a compensable claim "arising from its pre-petition 'agreement' (or otherwise), they should file a claim in the bankruptcy court." Ex. B. SCUTI received that instruction, understood it, and answered it by announcing the withdrawal of its "cooperation." *Id.*

32. SCUTI then did nothing for three months. It filed no proof of claim. It filed no administrative expense application. It sought no retention. It did not move to compel or to lift any deadline. It reappeared on the Friday before closing, through new counsel, seeking to freeze estate proceeds in an unstated amount for the same claim it had been invited to assert through the ordinary claims process in May.

33. A party that declines the claims process cannot bypass it by emergency motion on the eve of a closing. The bar date exists so that a debtor, its creditors, and this Court can know what the estates owe before value is distributed. SCUTI's position—that it may sit out the claims process entirely and then impound the proceeds by motion—would make the claims process optional for anyone willing to wait long enough to create leverage.

34. SCUTI's May 2026 correspondence also undercuts the substance of its claim. Its counsel wrote on May 12 that "my client *provided* the service"—past tense, describing a completed prepetition act. Ex. B. And the premise of the May 8 demand was that Marathon "is poised to provide funding to Rellis." Ex. A. Marathon never provided funding to anyone. When that prediction failed, SCUTI recast the same demand as a claim arising from Marathon's retention as the Debtors' sell-side banker. The "contract" SCUTI signed pays on funds financed, not on professionals retained.

***G. The Sale Order Is Final and Was Never Challenged.***

35. The Sale Order was entered on July 6, 2026, more than eight weeks after SCUTI's counsel first asserted the claim SCUTI presses today. ECF # 219. SCUTI did not object, did not appear, and did not appeal. The Sale Order is final, and the sale is being consummated in reliance on it. To the extent SCUTI asserts an "ownership position" constituting an interest in the Debtors' assets, that interest was extinguished by the free-and-clear provisions of the Sale Order and section 363(f), and any challenge is barred by section 363(m).

36. SCUTI's explanation—that it "retained undersigned counsel after entry of the Sale Order," Mot. ¶ 46—is no explanation at all, and it is materially incomplete. SCUTI had counsel in May 2026. That counsel wrote to RCDRC's chief executive officer on May 8, 2026, corresponded with undersigned counsel between May 12 and May 22, 2026, and was told in writing to file a claim. Exs. A, B. The Motion discloses none of this. A change of lawyers does not restart the clock, and SCUTI's delay has prejudiced the estates and every creditor whose recovery depends on the timely distribution of sale proceeds.

***H. The SCUTI Contract is Void.***

37. SCUTI describes itself as the party that introduced financing sources to the RELLIS project, and claims transaction-based compensation measured as a percentage of capital raised. Persons who solicit investors and receive transaction-based compensation for capital-raising activity generally must register as brokers under section 15(a)(1) of the Securities Exchange Act of 1934 or associate with a registered broker-dealer. Failure to do so renders the "contract" void.

> [E]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract … the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract…

15 U.S.C. § 78cc.

38. SCUTI's own contract anticipates the issue and disclaims it. SCUTI represented and warranted that it "shall not engage in any activity pursuant to this Agreement that requires licensing under state or federal law securities laws" and that it was "engaged solely to make introductions." Mot. Ex. A § 6(b)–(c); *see also id.* § 5 (SCUTI "shall not act as an employee, agent, or broker of RCDRC"). SCUTI is therefore caught between two positions. If it did no more than make an introduction, it did not earn a transaction fee under a contract that pays only on funds actually financed. If it did more—soliciting, negotiating, or structuring capital for compensation—it breached its own warranty and may have engaged in activity requiring registration, which would render the compensation provision unenforceable. Either way, the estates owe it nothing.

***I. The Arioto Declaration Does Not Support the Relief Requested.***

39. The Declaration establishes almost nothing that matters. Paragraphs 11, 12, and 14 recite what Mr. Arioto "understand[s]" from reviewing the Court's docket—that is argument about public filings, not testimony from personal knowledge. Paragraph 13 asserts, without identifying a speaker, a date, or a communication, that unnamed "representatives of RCDRC" said SCUTI "would be taken care of." That is inadmissible hearsay offered to vary the terms of a fully integrated written agreement. *See* Mot. Ex. A § 16 ("This Agreement contains the entire understanding of the parties . . . it may not be changed or amended except in writing signed by the parties.").

40. What the Declaration does establish is dispositive against SCUTI: the introduction was prepetition, ¶ 6; Marathon's communications with the project followed immediately and likewise preceded the bankruptcy, ¶ 7; and SCUTI has never received the compensation it claims, ¶ 16—because none was ever earned.

## IV. RESERVATION OF RIGHTS

41. The Debtors reserve all rights under Bankruptcy Rule 9011, section 105(a), and the Court's inherent authority. The Motion was filed on the Friday before a Monday closing, on a meritless claim that SCUTI had alleged in writing as early as May 8, 2026, without a completed conference, without a stated amount, without a proof of claim, and without any legal basis for the relief requested. The Motion further omits any mention of the May 2026 correspondence in which SCUTI's prior counsel pressed this same claim and was expressly directed to the claims process, and instead represents to the Court only that SCUTI "retained undersigned counsel after entry of the Sale Order." Mot. ¶ 46; Exs. A, B. The Debtors do not seek sanctions by this Objection, which would not satisfy the safe-harbor requirements of Bankruptcy Rule 9011(c)(1)(A), but they reserve the right to do so by separate motion.

42. Finally, the Debtors reserve all rights and defenses with respect to any claim SCUTI may hereafter assert, including as to allowance, amount, priority, characterization, timeliness, setoff, recoupment, subordination, and avoidance, and reserve the right to supplement this Objection and to present evidence at any hearing on the Motion.

## V. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) deny the Motion in its entirety; (ii) deny SCUTI's asserted administrative expense claim under sections 503(b)(1)(A) and 507(a)(2); and (iii) grant the Debtors such other and further relief to which they may be justly entitled.

Respectfully submitted this 16th day of September, 2026.

**OKIN ADAMS BARTLETT CURRY LLP**

By: */s/ John Thomas Oldham*
Christopher Adams
Texas Bar No. 24009857
Email: cadams@okinadams.com
John Thomas Oldham
Texas Bar No. 24075429
Email: joldham@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2026, a true and correct copy of the foregoing Objection was served on all parties registered to receive electronic notice in these chapter 11 cases through the Court's CM/ECF system, and on counsel for SCUTI Investments LLC by electronic mail.

By: */s/ John Thomas Oldham*
John Thomas Oldham